## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

| | |
|---|---|
| CONNECTED GLOBAL SOLUTIONS, LLC,    ) | |
|     ) | |
|     Plaintiff,    ) | **Redacted Version** |
|     ) | **9.8.2022** |
|     and    ) | |
|     ) | |
| AMERICAN ROLL-ON ROLL-OFF    ) | |
| CARRIER GROUP, INC.,    ) | |
|     ) | |
|     Plaintiff,    ) | |
|     ) | |
|     v.    ) | No. 22-292C |
|     ) | (Judge Tapp) |
| THE UNITED STATES,    ) | |
|     ) | |
|     Defendant,    ) | ▮▮▮▮▮▮ |
|     ) | |
|     and    ) | |
|     ) | |
| HOMESAFE ALLIANCE, LLC,    ) | |
|     ) | |
|     Defendant-Intervenor.    ) | |

---

### DEFENDANT'S CONSOLIDATED RESPONSE TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT ON THE AMINISTRATIVE RECORD

---

OF COUNSEL:

ERIKA WHELAN RETTA
Chief, Bid Protests
AARON WEAVER
Trial Attorney
Commercial Litigation Field Support Center,
The Judge Advocate General's Corps,
United States Air Force
1500 W Perimeter Road, Ste 4100
Joint Base Andrews, MD 20762

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA MCCARTHY
Director

DOUGLAS K. MICKLE
Assistant Director

Of Counsel:
ROBERT J. DEPKE
TODD P. FEDERICI
ADAM J. KOUDELKA
PETER B. RIES
Attorney-Advisors
Office of the Staff Judge Advocate
United States Transportation Command

ELIZABETH ANNE SPECK
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 307-0369
Facsimile:  (202) 514-7965

OF COUNSEL:
MILES K. KARSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Dated:  June 16, 2022

Attorneys for Defendant

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES..................................................................................1

STATEMENT OF THE FACTS ................................................................................1

SUMMARY OF THE ARGUMENT ..........................................................................4

ARGUMENT ............................................................................................................4

I.  Standard Of Review ...............................................................................4

II.  CGSL's Protest Is Without Merit .........................................................5

    A.  As Recommended By The GAO, USTC Conducted A New Technical Evaluation, Which Replaced Its Prior Evaluation ...................4

    B.  USTC Rationally Evaluated HSA's Proposal........................................8

        1.  HSA's Approach To ██████████████ ...................................9

        2.  Commitment To Subcontract To Small Businesses................................11

    C.  USTC's Discussions Were Neither Misleading Nor Unequal ...............12

        1.  ███████████████████ ........................................................13

        2.  ██████████████████████ ...................................................15

        3.  ██████████████████████ ...................................................18

        4.  General Allegations Of Unequal Treatment .............................................20

    D.  USTC Fairly Evaluated Proposals ........................................................21

    E.  USTC's Tradeoff Analysis Is Rational ..................................................24

    F.  CGSL's Remaining Claims Fail Because It Has Not Proven Agency Error ........31

III.  ARC's Protest Is Without Merit ..........................................................31

    A.  HSA's Proposal Did Not Contain Misrepresentations...........................31

        1.  The Agency Was Entitled To Rely On HSA's Representations................31

        2.  HSA Did Not Make Any Misrepresentations .............................................33

i

3.    ARC Cannot Show Materiality Or Prejudice.............................37

B.    ARC's Challenges To The Agency's Price Analysis Lack Merit.........................39

1.    The Agency's Price Evaluation Was Rational And In Accordance With The Solicitation And Procurement Regulations .............................39

C.    USTC Lawfully And Rationally Evaluated Proposals............................................44

1.    USTC Rationally and Reasonably Evaluated HSA's Technical Proposal Under SF 1 (Operational Approach)............................................44

2.    The Agency Evaluated SF 3 In Accordance With The RFP.....................46

3.    USTC Lawfully And Rationally Evaluated Proposals Under SF 4 ..........48

D.    The Agency Conducted Meaningful And Equal Discussions...............................52

1.    USTC Conducted Meaningful Discussions With ARC ............................52

2.    USTC Conducted Equal Discussions With ARC .....................................54

E.    The Agency Conducted A Reasonable Best Value Decision ...............................55

F.    USTC Rationally Evaluated HSA's Responsibility.............................................55

IV.    Injunctive Relief Is Not Warranted........................................................................58

CONCLUSION.................................................................................................................60

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                  **Page(s)**

*Advanced Data Concepts, Inc. v. United States,*
   43 Fed. Cl. 410 (1999) , *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000) ................................................ 12

*Allied Tech. Grp., Inc. v. United States,*
   649 F.3d 1320 (Fed. Cir. 2011) ............................................................................................... 37

*AM General, LLC v. United States,*
   115 Fed. Cl. 653 (2014) ........................................................................................................... 42

*AT&T Corp,*
   B-200542.3, 2007 WL 5085804 (Comp. Gen. Nov. 16, 2007).................................................. 17

*AvKARE, Inc.,*
   B-417250, 2019 WL 3202586 (Comp. Gen. Apr. 18, 2019) ................................................... 41

*Banknote Corp. of America, Inc. v. United States,*
   56 Fed. Cl. 377 (2003) ............................................................................................................. 27

*Banknote Corp. of America, Inc. v. United States,*
   365 F.3d 1345 (Fed. Cir. 2004) ............................................................................................... 46

*Bender Shipbuilding & Repair Co. v. United States,*
   297 F.3d 1358 (Fed. Cir. 2002) ............................................................................................... 56

*Blackwater Lodge & Training Center, Inc. v. United States,*
   86 Fed. Cl. 488 (2009) ............................................................................................................. 25

*Blue Origin Fed'n, LLC v. United States,*
   157 Fed. Cl. 74 (2021) ............................................................................................................. 31

*CCL Serv. Corp. v. United States,*
   48 Fed. Cl. 113 (2000) ............................................................................................................. 46

*Centech Grp., Inc. v. United States,*
   554 F.3d 1029 (Fed. Cir. 2009)........................................................................................... 7, 32

*CRAssociates, Inc. v. United States,*
   103 Fed. Cl. 23 (2012) ............................................................................................................. 59

*D&S Consultants, Inc. v. United States,*
   101 Fed. Cl. 23 (2011) ............................................................................................................. 13

*Dell Federal Sys., L.P. v. United* States,
   906 F.3d 982 (Fed. Cir. 2018) ............................................................. 6, 58

*DMS All-Star Joint Ventures v. United States*,
   90 Fed. Cl. 653 (2010) ............................................................................ 20

*Dyncorp Int'l LLC*,
   2015 WL 12915511 (Comp. Gen. May 13, 2015) ..................................... 7

*Dyncorp Int'l v. United States*,
   10 F.4th 1300 (Fed. Cir. 2021) ................................................................ 7

*DZSP 21 LLC v. United States*,
   139 Fed. Cl. 110 (2018) ............................................................................ 7

*E.W. Bliss, Co. v. United States*,
   77 F.3d 445 (Fed. Cir. 1996) ................................................................... 25

*EFW, Inc.*,
   B-412608.2, 2016 WL 6919877 (Comp. Gen. Apr. 7, 2016) ................... 17

*FCC v. Fox Television Stations*,
   556 U.S. 502 (2009) ................................................................................. 7

*FirstLine Transp. Sec., Inc. v. United States*,
   100 Fed. Cl. 359 (2011) ........................................................................... 27

*Galen Med. Assoc., Inc. v. United States*,
   369 F.3d 1324 (Fed. Cir. 2004) ............................................................... 25

*GTA Containers, Inc. v. United States*,
   103 Fed. Cl. 471 (2012) ...................................................................... 35, 37

*Guardian Moving & Storage Co., Inc. v. United States*,
   122 Fed. Cl. 117 (2015) ........................................................................... 33

*Gulf Group, Inc. v. United States*,
   61 Fed. Cl. 338 (2004) .............................................................................. 8

*Huffman Bldg. P, LLC v. United States*,
   152 Fed. Cl. 476 (2021) ........................................................................... 32

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
   238 F.3d 1324 (Fed. Cir. 2001) ............................................................... 56

iv

*John C. Grimberg Co., Inc. v. United States,*
  185 F.3d 1297 (Fed. Cir. 2002) ................................................................ 56

*Kerr Contractors, Inc. v. United States,*
  89 Fed. Cl. 312 (2009) ............................................................................. 55

*Kiewit Infrastructure West Co. v. United States,*
  137 Fed. Cl. 689 (2018) ........................................................................... 48

*KSC Boss All., LLC v. United States,*
  142 Fed. Cl. 368 (2019) ..................................................................... passim

*LABAT-Anderson, Inc. v. United States,*
  65 Fed. Cl. 570 (2005) ............................................................................. 60

*Lifecycle Constr. Servs.,*
  B-406907, 2012 WL 5194140 (Comp. Gen. Sept. 27, 2012) ............... 40, 41

*Lyon Shipyard, Inc. v. United States,*
  113 Fed. Cl. 347 (2013) ..................................................................... passim

*Marcola Meadows VA LLC,*
  B-407078.2, 2013 WL 2468753 (Comp. Gen. June 4, 2013) .................... 6

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139 (2010) ................................................................................. 58

*Mortgage Contracting Servs. LLC, v. United States,*
  153 Fed. Cl. 89 (2021) ............................................................................. 41

*NetCentrics Corp. v. United States,*
  145 Fed. Cl. 158 (2019) ....................................................................... 35, 37

*North South Consulting Group, LLC v. United States,*
  141 Fed. Cl. 549 (2019) ........................................................................... 30

*OAO Corp. v. United States,*
  49 Fed. Cl. 478 (2001) ............................................................................. 59

*Office Design Grp. v. United States,*
  951 F.3d 1366 (Fed. Cir. 2020) ............................................................... 48

*Overstreet Elec. Co., Inc. v. United States,*
  59 Fed. Cl. 99 (2003) ................................................................................. 8

*Per Aarsleff A/S v. United* States,
    829 F.3d 1303 (Fed. Cir. 2016) ............................................................ 32

*PGBA, LLC v. United States*,
    389 F.3d 1219 (2004) ............................................................................ 58

*Pitney Bowes Gov't Solutions, Inc. v. United States*,
    94 Fed. Cl. 1 (2010) .............................................................................. 46

*Planning Research Corp. v. United States*,
    971 F.2d 736 (1992) ................................................................... 35, 36, 37

*Poplar Point RBBR, LLC v. United States*,
    147 Fed. Cl. 201 (2020) ............................................................ 22, 23, 24

*Regents of the Univ. of* Cal,
    140 S. Ct. 1891 (2020) ......................................................................... 6, 7

*Sabre Systems, Inc.*,
    B- 402040.2, 2010 WL 2294133 (Comp. Gen. June 1, 2010) .................. 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .............................................................. 8

*Sotera Defense Solutions, Inc. v. United States,*
    118 Fed. Cl. 237 (2014) .......................................................................... 6

*Standard Comms., Inc. v. United States*,
    101 Fed. Cl. 723 (2011) ................................................................. 13, 54

*Statistica, Inc. v. Christopher*,
    102 F.3d 1577 (Fed. Cir. 1996) .................................................... passim

*System Studies & Simulation, Inc. v. United States*,
    22 F.4th 994 (Fed. Cir. 2021) ....................................................... 11, 53

*Thoma-Sea Marine Constr., LLC v. United States*,
    141 Fed. Cl. 185 (2018) ....................................................................... 32

*Vectrus Systems Corp. v. United States*,
    154 Fed. Cl. 29 (2021) ......................................................................... 41

*Vertex Aerospace, LLC v. United States*,
    2020 WL 5887750 (Fed. Cl. Sept. 21, 2020) ...................................... 33

*Volvit, LLC v. United States*,
  151 Fed. Cl. 678 (2020) ............................................................. 23

*WorldTravelService v. United States*,
  49 Fed. Cl. 431 (2001) ......................................................... 20, 21

**Statutes**

5 U.S.C. § 706 ......................................................................... 4

28 U.S.C. § 1491 ..................................................................... 4

**Regulations**

FAR § 4.000 ........................................................................... 57

FAR § 15.101 ......................................................................... 13

FAR § 15.306 ......................................................................... 53

FAR § 2.000 ........................................................................... 57

FAR § 2.101 ........................................................................... 57

FAR § 4.1801 ......................................................................... 57

FAR § 9.104 ........................................................................... 56

FAR § 15.306 ................................................................... passim

FAR § 15.308 ......................................................................... 30

FAR § 15.404 .................................................................... 41, 43

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this consolidated cross-motion for judgment on the administrative record, and response to plaintiff Connected Global Solutions LLC's (CGSL) motion for judgment on the administrative record (CGSL Br.) (ECF No. 62) and consolidated plaintiff American Roll-On Roll-Off Carrier Group, Inc.'s (ARC Br.) (ECF Nos. 61 and 61-1) motion for judgment on the administrative record. The Court should deny plaintiffs' motions and grant judgment in the Government's favor because the Department of Defense (DoD), U.S. Transportation Command (USTC) has established a lawful and rational basis for its decision to award the contract under Request for Proposals (RFP) No. HTC711-19-R-R004 to HomeSafe Alliance, LLC (HSA). In support of our motion and opposition, we rely upon the corrected administrative record (AR) filed on May 23, 2022 (ECF No. 63).

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

1. Whether the AR demonstrates that the agency's decision to award HSA the contract has a rational basis and otherwise is in accordance with law.

2. Whether either plaintiff is entitled to injunctive relief.

## STATEMENT OF THE CASE

CGSL and ARC have commenced post-award bid protests that are consolidated in this action. Plaintiffs each challenge USTC's decision to award HSA the contract under the RFP, and each plaintiff seeks a permanent injunction of all contract performance.

## STATEMENT OF FACTS

On September 13, 2019, USTC, a unified combatant command of the DoD, issued the RFP seeking a qualified contractor to perform complete global household goods relocation

services for DoD service members, DoD civilians, and U.S. Coast Guard members, the Global Household Goods Contract (GHC). *See* Tab 7 at AR121; Tab 7b1 at AR461-462; Tab 134b1 at AR21077.

The RFP sought a single indefinite delivery, indefinite quantity (IDIQ) contract after conducting discussions with offerors having proposals determined to be within the competitive range. Tab 7 at AR135. USTC advised offerors that the offeror must represent the best value to the Government, price and other factors considered. *Id.* The agency advised offerors that this may "result in an award to a higher rated, higher priced offeror." *Id.*

The RFP required offerors to submit proposals in four volumes corresponding to four evaluation factors: (1) Business; (2) Technical Capability; (3) Past Performance; and (4) Price. Tab 7 at AR135 and AR197; Tab 134 at AR 21030-31. Factor 2 - Technical Capability - had four subfactors (SF): (1) operational approach (SF 1); (2) capacity and subcontractor management (SF 2); (3) transition/volume phase-in (SF-3); and (4) information technology (IT) services (SF 4). Tab 7 at AR199-201. Each SF was "of equal importance." *Id.* at AR135.

USTC provided a technical rating for each of the Technical Capability SFs. *Id.* at AR136. The technical ratings were based on the offeror's approach and understanding of the requirements and an assessment of the strengths, weaknesses, significant weaknesses, and deficiencies of the proposal. *Id.* The agency described the Technical Capability ratings as Outstanding, Good, Acceptable, Marginal, or Unacceptable. *Id.* The agency also explained how strengths, weaknesses, significant weaknesses, and deficiencies would be evaluated. *Id.* The agency further advised that after assigning technical ratings, it would assign a technical risk rating for each SF. *Id.* at AR136-137.

████████████████████████████     ████████████████

With respect to Factor 4 – Price – the agency advised offerors that price would be evaluated for completeness, but not rated. *Id.* at AR138. USTC informed offerors that to be considered for award, the offeror's total evaluated price (TEP) must be determined fair and reasonable. Non-TEP prices were also required to be fair and reasonable. *Id.* Price was also evaluated for balanced pricing. *Id.*

This protest follows USTC's third award decision in this procurement following multiple protests at the Government Accountability Office (GAO). Initially the agency awarded ARC the contract; following that award decision the agency voluntarily took corrective action. Tabs 80 and 85. Following that corrective action, the agency again awarded ARC the contract and CGSL and HSA protested at GAO. After GAO issued two decisions recommending that the agency conduct a new technical evaluation and best value tradeoff analysis, the agency took corrective action. Tabs 118 and 133.

After all discussions and evaluation of all final proposal revisions, the Source Selection Evaluation Board (SSEB) assigned technical and technical risk ratings to each of the four technical SFs as follows: ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████. Tab 198 at AR31401; Tab 200 at AR34112; Tab 201 at AR34654. All offerors received low risk ratings for each SF. *Id.* CGSL had the lowest price at ████████████████, HSA had the next lowest price at ████████████████, and ARC had the highest price at ████████████████. *Id.* All prices were found to be fair and reasonable. *Id.*

After the Source Selection Advisory Council (SSAC) conducted a comparative analysis, the Source Selection Authority (SSA) issued the Source Selection Decision Document (SSDD)

███████████████████████████████████████████████

in which he concluded that CGSL and HSA's ███████████████████████ Tab 201 at

AR34656.  The SSA concluded that, while CGSL had the lower-priced proposal, HSA had the

higher-rated technical proposal.  Based on the SSA's best-value tradeoff analysis, the SSA

determined that HSA's proposal represented the best value to the Government.  *Id.* at AR34673.

In November 2021, the agency awarded HSA the contract.  Tab 205 at AR35238.  Following the

award, CGSL and ARC filed protests at GAO, which GAO denied, and then CGSL and ARC

filed protests before this Court.

## SUMMARY OF THE ARGUMENT

The agency's decision to award to HSA was litigated extensively at GAO, and

GAO correctly concluded there was no merit to ARC's or CGSL's protest.  The protestors'

revamped claims before this Court similarly fail to satisfy their "heavy burden" of proving the

decision lacked a rational basis or was contrary to law.  *KSC Boss All., LLC v. United States*, 142

Fed. Cl. 368, 380 (2019) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United

States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)).  Nor has either protestor established entitlement to

injunctive relief.  The harm caused to military Servicemembers, DoD civilians and their families,

and the compelling public interest of providing an improved move experience outweighs any

harm to the protestors.

## ARGUMENT

### I.    Standard Of Review

The proper standard of review in a bid protest is whether the agency action was arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C.

§ 1491(b)(4); 5 U.S.C. § 706(2)(A); *Impresa Construzioni*, 238 F.3d at 1332.  To prevail, a

plaintiff must demonstrate: (1) that the procurement decision "lacked a rational basis"; or (2) "a

clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1332-33 (citation omitted).

II.    **CGSL's Protest Is Without Merit**

    A. **As Recommended By The GAO, USTC Conducted A New Technical Evaluation, Which Replaced Its Prior Evaluation**

        There is no merit to CGSL's argument that USTC's award decision lacks a rational basis because, in adopting GAO's recommendation that "the agency reevaluate technical capability proposals," USTC's new technical evaluation did not replicate its prior flawed evaluation. Tab 118 at AR19481; Tab 133 at AR 21019; CGSL Br. at 12-16.

        CGSL emphasizes strengths that USTC assigned in its initial evaluation. CGSL Br. at 14. Following the agency's initial round of corrective action, in which the agency awarded the contract to ARC, CGSL and HSA then filed new protests. GAO issued decisions in both protestors' favor in which, among other things, it identified errors in the agency's technical capability evaluation and recommended a new evaluation. Tab 118 at AR19473-19477, AR19481; Tab 133 at AR21012-21014, AR21018-21019. In accordance with GAO's recommendations and based upon issues identified during the agency's internal review, USTC conducted an entirely new assessment. Tab 258a at 37644. In doing so, the agency substantially restaffed the Technical Capability evaluation team. *Compare* Tab 68 at AR15669 (original team), *with* Tab 200 at AR 34111 (team on remand). And, for the first time, USTC provided detailed training to the SSEB, which included a new 10-step process instructing evaluators on how to assess and document strengths and weaknesses so that the evaluation adhered to the definitions in the RFP. Tab 269.63; Tab 258a at AR37642-37645; Tabs 198j-198m (revised technical worksheets); Tabs 198p-198s (revised technical worksheets). Further, the team was

███████████████████████████████████████████████████

"specifically advised not to consider the previous technical evaluation" and did not have access to any prior documentation.  Tab 269.236 at AR 58106; Tab 258a at AR37644.

███████████████████████████████████████████████████

██████████████ CGSL complains that ██ strengths were "erased" but received ██ fewer total strengths as part of the agency's corrective action evaluation.  ████████████████████

███████████████████████████████████████████████████

████████████████████████ *Compare* Tab 68 at AR15670 (initial round) *with* Tab 198p at AR32074-32076; Tab 198q at AR32220-32221; Tab 198r at AR32268-32269; Tab 198s at AR32328-32330; Tab 194.

Agencies possess the discretion to determine the scope of corrective action, which will be sustained so long as it is reasonable.  *Dell Federal Sys., L.P. v. United* States, 906 F.3d 982, 991-993 (Fed. Cir. 2018).  Here, given GAO's decisions recommending a new technical evaluation as well as the agency's conclusions from its own internal review, it was reasonable for the agency to conduct a comprehensive reevaluation, to include the assignment of strengths.

CGSL also ignores recent Supreme Court precedent.  *DHS v. Regents of the Univ. of* Cal, 140 S. Ct. 1891, 1907 (2020).  As explained in *Regents*, when a court remands a matter, the agency can either elect to provide further explanation and clarification for the reasoning contained in the prior decision, *or* it can examine the issue "afresh" and take new action.  *Id.* at 1908.  Here, the agency's decision to take corrective action in response to GAO's recommendations suggests that the agency would have even more discretion as it demonstrated an intent to take new action.  *IAP Worldwide Services, Inc. v. United States*, No. 21-1570C, 2022 WL 1671697, at *11 n.29 (Fed. Cl. May 25, 2022) (defining the term "remand").  When an agency takes new action, as USTC did here, it "is not limited to its prior reasons."  *Id.* at 1908.

Thus, USTC's prior evaluation is irrelevant.  Nor were the evaluators under any obligation to

explain differences in the evaluations.  *Id*; *see also Sotera Defense Solutions, Inc. v. United*

*States,* 118 Fed. Cl. 237 (2014) ("[A] re-evaluation of proposals may rationally result in a

different award outcome.") (citing *Marcola Meadows VA LLC*, B-407078.2, 2013 CPD ¶ 141,

2013 WL 2468753, at *7 (Comp. Gen. June 4, 2013) (noting the overriding concern in a

reevaluation is "not whether point scores are consistent with an earlier set of point scores but

whether they reasonably reflect the relative merit of offerors")).  GAO has repeatedly recognized

the fact that a reevaluation differing from an original evaluation "does not constitute evidence

that the reevaluation was unreasonable."  *DynCorp Int'l, LLC*, B-409874.2, 2015 WL 12915511,

at *6 (Comp. Gen. May 13, 2015) (citing *Sabre Sys., Inc.*, B-402040.2, B-402040.3, 2010 WL

2294133, at *3 n.3 (Comp. Gen. June 1, 2010)).[1]

The cases CGSL cites do not indicate the agency's decision on reevaluation was

irrational.  Citing *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009), CGSL erroneously

contends that USTC was required to reconcile the corrective action evaluation with the prior

evaluation.  CGSL Br. at 13.  But CGSL ignores that USTC elected to perform an entirely new

reevaluation based on its own internal review and GAO recommendations.  Tab 258a at

AR37644; Tab 269.63 at AR51370, AR51375.  Thus, USTC reasonably found that its prior

evaluation was flawed and required a comprehensive new technical evaluation.  *Dyncorp Int'l v.*

*United States*, 10 F.4th 1300, 1313-14 (Fed. Cir. 2021).  There would be no point in permitting

an agency "to deal with the problem afresh" if the agency was tied to the reasoning in its prior

---

[1] GAO decisions are not binding upon the Court of Federal Claims.  But the Federal Circuit has recognized that GAO possesses significant expertise in resolving contested procurement decisions.  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009)).

flawed decision and forced to justify all departures from that decision. *Regents*, 140 S. Ct. at 1898. The only other case CGSL cites where an agency conducted a reevaluation is *DZSP 21 LLC v. United States*, 139 Fed. Cl. 110 (2018). That ruling was before the Supreme Court's decision in *Regents*. But even setting that aside, in *DZSP*, the agency did not conduct an entirely new reevaluation and did not empanel the cost and technical teams, as done here. *Id.* at 114.

Nor is there merit to CGSL's claim that even if the agency conducted a comprehensive reevaluation of technical capability that the ultimate result should have been the same because the SSA was the same. CGSL Br. at 15. Although the SSA's decision represents his "independent judgment," the SSA also is entitled to rely on "reports and analyses prepared by others." FAR § 15.308. Given the entirely new evaluation, and entirely new comparative analysis, producing a new SSEB Report and a new SSAC Report, it logically follows that there would also be an entirely new best value determination. There is no reason the SSA would not be free to conduct a new best value determination unencumbered by the prior flawed evaluation.

CGSL's assertion that any deviation from the prior evaluation constituted a *per se* violation of the RFP is similarly flawed. CGSL Br. at 16. In response to the GAO decisions and its own internal review, USTC conducted a new evaluation of technical merit. Further, by failing to identify any errors in the agency's assessment of strengths to CGSL in its opening brief, CGSL has waived any arguments it could raise. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

**B. USTC Rationally Evaluated HSA's Proposal**

Contrary to CGSL's assertions, the agency rationally evaluated HSA's proposal. CGSL Br. at 29-31. When a negotiated procurement is involved and the protest concerns the agency's technical or past performance evaluation, "the greatest deference possible is given to the

███████████████████████████████████████████████████████
████████████████████

agency—what [the] Court has called a 'triple whammy of deference.'" *Gulf Group, Inc. v.*

*United States*, 61 Fed. Cl. 338, 351 (2004) (quoting *Overstreet Elec. Co., Inc. v. United States*,

59 Fed. Cl. 99, 117 (2003)).  Under this highly deferential standard, the Court will not "second

guess" the agency's decision making, *Overstreet*, 59 Fed. Cl. at 102, or delve into the "minutiae

of the procurement process." *E.W. Bliss, Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).

1.  **HSA's Approach To** ████████████████████████

There is no merit to CGSL's claims that the agency irrationally evaluated HSA's

proposal under SF 2.  CGSL Br. at 29-31; Tab 267 at AR38322-38323.

Contrary to CGSL's assertions, HSA's proposal did not contain inconsistencies.  In its



written proposal, HSA proposed both an ████████████████ *and* an ████████████████.

Tab 267 at AR38322-38323  Specifically, HSA proposed what USTC referenced as a

"███████" pursuant to which HSA's "███████████████████████████

█████████████████████████████████████████████."  Tab

269.159 at AR54889.  HSA's proposal explained that ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████  *Id.*  Thus, ████████████████████

███████████████████████████████████████████████

██████████████████████████████  *Id.*  Using different verbs to

explain HSA's ████████████████ is not an inconsistency but rather an explanation of

how it intended to ███████████.

As the SSAC report demonstrates, the agency understood this process to mean that HSA

would ███████████████████████████████████████████████████████



. Tab 200 at AR 34573. In reaching this conclusion, the SSAC identified HSA's

, Tab 269.159 at AR54890-54893, as

. Tab 200 at AR34573. As the SSAC explained,

*Id.* The SSA's comments also demonstrate that he "understood this approach," stating

Tab 201 at

AR34662-34663. The SSA also recognized that

. *Id.*

at AR34663.

Finally, there is no merit to CGSL's assertion that USTC relied upon HSA's explanation

of its                                  during its oral presentation. CGSL Br. at 30-31. The SSEB

Report indicates that HSA's written proposal "takes precedence" over its oral presentations. Tab

269.221 at AR 57100-57101, AR57103-57104. Neither the SSAC's nor the SSA's reports

reference HSA's oral presentation. Tab 200 at AR34570-34574; Tab 201 at AR34659-34664.

Further, although USTC

for consistency purposes, (Tab 269.221 at AR57100-57101, AR57103-57103),

HSA's process remains the same regardless of what verb is used. Tab 264 at AR 38129-38130.



Indeed, HSA proposed the exact same process for ███████████ in its initial and final proposal. *Compare* Tab 269.118 at AR53652, AR53655 (initial proposal), *with* Tab 269.159 at AR54889, AR54892 (final proposal). Thus, CGSL cannot prove that USTC's evaluation was "clearly unreasonable." *KSC Boss*, 142 Fed. Cl. at 380 (citation omitted).

### 2. Commitment To Subcontract To Small Businesses

Nor is there merit to CGSL's claims that USTC erred in its evaluation of HSA's commitment to subcontract to small businesses, an argument that GAO also rejected. CGSL Br. at 31-32; Tab 267 at AR38321-38322.

HSA's proposal committed to subcontracting "███ ████████████████ ████████████ to small businesses, which is what the agency evaluated. Tab 269.159 at AR54890. USTC assigned both CGSL and HSA a strength for exceeding the 40% subcontracting commitment required from Performance Work Statement (PWS) paragraph 1.2.1.2.2. Tab 200 at 34568. Because both offerors proposed to exceed the 40% threshold – HSA by ███ and CGSL by ███ – the SSAC reasonably concluded that there was not a "discernible difference between the Offerors' proposals." *Id.*

Although CGSL asserts that ████████████████████████████ ████████████████████, which CGSL claims required the agency to reduce HSA's commitment to small businesses, ████████████████████████████████ ████████████████████████████████████. Tab 264 at AR38132. Thus, ████████████████████████████ ████████████████████████████████████████. *Id.* Regardless, CGSL fails to explain how the nominal difference between the proposals would have made any difference in the agency's evaluation. *System Studies & Simulation, Inc. v. United*

*States*, 22 F.4th 994, 997 (Fed. Cir. 2021) (prejudicial error is a required element).  Even if the Court concludes that HSA's small business participation commitment is ▮▮▮, CGSL's and HSA's approach would still be roughly equivalent.  Based on the SSAC's determination that HSA's commitment of ▮ percent and CGSL's commitment of ▮▮▮ (a difference of ▮▮▮) were roughly equivalent, it is reasonable to ascertain that the SSAC would come to the same conclusion based on CGSL's alleged difference of ▮▮▮.

### C.  USTC's Discussions Were Neither Misleading Nor Unequal

As the GAO correctly concluded, USTC conducted fair and equal discussions.  CGSL Br. at 17-29; Tab 267 at AR38316-38321.

USTC conducted extensive discussions in its second round of corrective action.  In 2021, USTC conducted discussions by issuing evaluation notices (ENs).  Tab 198 at AR31392; Tab 267 at AR38315.  USTC issued two types of technical capability ENs: (1) "Technical Capability Deficiencies," which identified proposal deficiencies (*e.g.*, Tab 269.72); and (2) "Technical Capability Other than Deficiency," which identified strengths, weaknesses, significant weaknesses, and discussion items (*e.g.*, Tab 269.91).  When an offeror sufficiently addressed USTC's stated request or concern, USTC treated the issue as resolved.  Tab 269.215 at AR56618-56716; Tab 269.220 at AR56943-57063.

Discussions "maximize the Government's ability to obtain the best value, based on the requirement and evaluation factors in the solicitation."  FAR § 15.306(d)(2).  Under FAR § 15.306(d) agencies must conduct "meaningful" discussions with responsible offerors in the competitive range.  *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999), *aff'd* 216 F.3d 1054 (Fed. Cir. 2000) (discussions should "generally lead offerors into the areas of their proposals requiring amplification or correction...").  During discussions, the

contracting officer (CO) must indicate deficiencies, significant weaknesses, and adverse past

performance information to which the offeror has not yet had an opportunity to respond. FAR

§ 15.306(d)(3). But the meaningfulness requirement "'does not mean that an agency must

spoon-feed an offeror as to each and every item that must be revised, added or otherwise

addressed to improve a proposal.'" *Standard Comms., Inc. v. United States*, 101 Fed. Cl. 723

(2011). So long as the agency "leads" the offeror to the general area of concern, the agency

fulfills its obligations. *D&S Consultants, Inc. v. United States*, 101 Fed. Cl. 23, 40-41 (2011).

As the GAO correctly concluded, there is no merit to CGSL's claims that USTC failed to

conduct meaningful discussions regarding CGSL's proposal for ▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇ Tab 267 at AR38315-38316; CGSL Br. at 19-20.

USTC initially identified a significant weakness based upon CGSL's proposal to ▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Tab 269.73 at

AR51569. CGSL revised its proposal to indicate that CGSL would ▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇. Tab 269.216 at AR56744. The SSEB stated that the revision "is sufficient to

resolve the significant weakness and enables the evaluation team to ascertain that CGSL will

▇▇▇▇▇▇▇ in a way that is no longer likely to appreciably increase the risk of

unsuccessful contract performance." *Id*. Thus, it resolved the significant weakness. By

discussing a significant weakness with CGSL and providing it an opportunity to respond, USTC

satisfied the requirements of FAR § 15.306(d)(3).

As described at pages 9-10, above, unlike CGSL, HSA proposed ▇▇▇▇▇▇

▇▇▇▇▇▇▇. Tab 267 at AR38317; Tab 269.221 at AR57076-57077.

CGSL's arguments misconstrue the SSAC's and the SSA's roles in the source selection process relative to the SSEB. The RFP states that "[s]ubjective tradeoff procedures will be utilized in accordance with FAR 15.101-1 and DoD Source Selection Procedures [(DoD SSP)]." Tab 136 at AR21147.[2] Under DoD SSP, the SSEB "evaluate[s] proposals 'related to technical and risk matters.'" Tab 263 at AR38072; *see also* Tab 2c at AR105. The SSAC "provide[s] a written comparative analysis of proposals and an award recommendation in an SSAC report for the SSA's consideration." DoD SSP at 34; *see also* Tab 2c at AR104. And the SSA performs an "independent assessment" to determine best value in which it "compar[es] the strengths, weaknesses, and the cost/price of the competing proposals to determine which proposal represents the best value to the Government." *Id.* Thus, it is not inconsistent or unreasonable for the SSEB to evaluate proposals against the solicitation and find an approach to be technically acceptable and then for the SSAC, when conducting its comparison, and then for the SSA, when conducting its best value determination, to conclude that another offeror's approach is more advantageous. Tab 263 at AR38072. That the SSEB determined that CGSL's approach no longer met the solicitation's definition of a significant weakness does not render CGSL's approach equivalent to, or more advantageous than, HSA's approach. Tab 267 at AR38317; Tab 263 at AR38072; Tab 200 at AR34558-34564; Tab 201 at AR34662-34664.

Contrary to CGSL's assertions, the SSAC and SSA did not continue to assess the significant weakness or assess a new significant weakness. CGSL Br. at 21-22; Tab 267 at AR38317; *see also* Tab 263 at AR38072. The SSAC's evaluation stated that the "viability of said approach is contingent upon CGSL's ███████████████████" but

---

[2] DoD Source Selection Procedures are available at:
https://www.acq.osd.mil/dpap/policy/policyvault/USA004370-14-DPAP.pdf

███████████████████████████████████████████████████████████████

also stated that "███████████████████████████████████████████████

████████████████" Tab 200 at AR34562. Nor did the SSA indicate that he considered CGSL's

approach to be a significant weakness. Tab 267 at AR38317. The SSA compared CGSL's

approach to ████████████████████ with HSA's approach. Tab 201 at 34662-34664. The

fact that the SSA noted that in his experience ████████████ would occur under CGSL's

approach does not mean that USTC did not appropriately credit CGSL for revising its proposal

to ████████████ *Id.* Put differently, the fact that the SSA and the SSAC found HSA's

approach to be more advantageous does not mean that either the SSAC or the SSA maintained a

significant weakness or conducted unequal discussions. Tab 200 at AR34558-34564; Tab 201 at

AR34662-34664; Tab 263 at AR38072-38073.

USTC was not required to notify CGSL that it could further improve its proposal.

Whether to reopen discussions is left to the agency's discretion. *Lyon Shipyard, Inc. v. United*

*States*, 113 Fed. Cl. 347, 357 (2013). The SSAC appropriately conducted a comparative

analysis ***after*** USTC closed discussions with all offerors. Further, FAR § 15.306(e)(2) prohibits

the agency from disclosing the details of HSA's novel approach.

       **2.** ██████████████████████████████

Nor is there merit to CGSL's claim that USTC engaged in misleading discussions with

CGSL regarding its ████████████████████, or that in its evaluation USTC identified an

"independent flaw" that the agency never previously identified. CGSL Br. at 22-25. GAO

correctly rejected these claims. Tab 267 at AR 31318-38319.

CGSL initially proposed permitting ████████████████████████████████

████████" to ███████████████████████████████████████████

████████████ Tab 269.66 at AR51439. USTC identified CGSL's approach as a

████████████████████████████████████████████████████████
████████████████████████████

significant weakness, concluding that "████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████" Tab 269.73 at

AR51571; Tab 269.216 at AR56747-56748. CGSL revised its proposal indicating that it would

still utilize this approach and explaining why it would be beneficial. Tab 269.72 at AR51546;

Tab 269.216 at AR56747-56748. After CGSL made this revision, the SSEB concluded that

CGSL's approach was "sufficient to address the ***evaluation team's*** concerns with respect to

CGSL's approach and enables the evaluation team to ascertain how said approach will be

utilized during GHC performance to ██████████████████████████." Tab 269.216 at

AR56747-56748 (emphasis added). This resolved the SSEB's concern that CGSL's approach

would highlight to the customer that ████████████████████████████.

Conducting a comparative analysis, the SSAC found that "ultimately, CGSL met the

requirement to ████████████████████ due to its approach to ██████████████████

█████████" Tab 200 at AR34574. The SSAC also concluded that both CGSL and HSA

"████████████████████████████████████'" *Id.* At the same time, the SSAC

also noted that there were drawbacks to CGSL's approach, such as the fact that CGSL's method

was not as advantageous because it "████████████████████████████████████,"

and that its approach was not "noteworthy" or "innovative." *Id.* Thus, the SSAC found that

although both offerors met the requirement, ████████████████████████████ *Id.* The

SSA similarly concluded that CGSL's approach of "██████████████████████████████

████████" was found "to be an effective method of ████████████████████████." Tab 201

at AR34662; Tab 267 at AR38318. This demonstrates that the SSA had no "lingering concerns

about the ██████████████████ in CGSL's proposed approach, which was the basis for the

assignment of the significant weakness." Tab 267 at AR38318. But in conducting the best value determination, the SSA concluded that HSA's approach was more advantageous and explained his reasoning. Tab 201 at AR34663-34664.

Again, CGSL's arguments ignore the different roles of the SSEB, the SSAC, and the SSA. The fact that the SSEB found CGSL's approach to satisfy the requirement, but the SSAC and the SSA found HSA's approach more advantageous does not mean that USTC concluded that CGSL's approach constituted a weakness or a significant weakness.

There is also no merit in CGSL's claim that USTC "documented an independent flaw with CGSL's ███████████ ─ ██████████████████████ CGSL Br. at 24. CGSL alleges that the agency's discussions "fail[ed] to alert [CGSL] to the true nature or breadth of the agency's concerns." *Id.* Contrary to CGSL's assertions, the SSEB did not identify this approach as a weakness (or a significant weakness), nor was it treated as such in reaching CGSL's SF 2 rating. Tab 269.216; Tab 263 at AR38070-38071. The SSEB stated that CGSL's proposal "indicates an adequate approach and understanding of the RFP requirement." *Id.*; Tab 269.216 at AR56730-56731. Also, nowhere in the SSAC or the SSA's documentation does the agency state that CGSL received (or should have received) a weakness or significant weakness on this basis. Indeed, nothing in any of the statements that CGSL cites indicates that the agency considered this aspect of CGSL's proposal as "a flaw in the proposal that increases the risk of unsuccessful contract performance," Tab 269.3 at AR50749 (defining "weakness"), much less a significant weakness. Again, the SSA specifically stated that "both [HSA and CGSL] set forth an effective method of ██████████████████" but that HSA's approach was more advantageous. Tab 201 at AR34663-34664.

██████████████████████████████████████████████████

Nor do the GAO's decisions in *AT&T Corp*, B-200542.3, B-299.542.4, 2008 CPD ¶ 65, 2007 WL 5085804 (Comp. Gen. Nov. 16, 2007), and *EFW, Inc.*, B-412608.2, 2016 CPD ¶ 304, 2016 WL 6919877 (Comp. Gen. Apr. 7, 2016) advance CGSL's position.  In each case, GAO found that the agency's discussions were misleading because they failed to alert the offeror to a *significant weakness* that remained after discussions.  Here, as explained above, the ██████████ ██████████████ was never identified as a significant weakness nor was it a significant weakness that arose during the agency's comparative analysis or best value determination.  *Lyon Shipyard*, 113 Fed. Cl. at 357 (discussing *AT&T* and noting that discussions do not have to be reopened unless a significant weakness arises).

   **3.**   ██████████████████████████████████████

There is also no merit to CGSL's claims that "USTC never informed CGSL that its ████████████████████████████████████████████████████████ ████" and thus constituted a weakness or significant weakness.  CGSL Br. at 24.

The SSEB sought clarification regarding CGSL's use of the ██████████████████ ████████████████████████████████.  Tab 269.85 at AR51773.  Although CGSL responded to the question, the agency raised the issue again, and CGSL removed the reference to the ██████████ and indicated that it would "████████████████████████ ████████████████████████████████████" Tab 269.91 at AR52209-52210; Tab 269.97 at AR52548-52549; Tab 267 at AR38319.  This was "sufficient to resolve the discussion item."  Tab 269.216 at AR56768-56769.

Contrary to CGSL's assertions, the evaluation documentation indicates that CGSL was not assessed a weakness, significant weakness, or a deficiency for its ██████████████████

███████████████████████████████████████████████████

████████, and that no weaknesses, significant weaknesses, or deficiencies factored into

its technical rating under SF 2.  Tab 269.216; Tab 198 at AR31393.

As explained at page 14 above, the SSEB, the SSAC, and the SSA all perform different

roles.  In performing their respective roles, the SSAC and SSA did not find CGSL's approach

carried more risk, or that it was a weakness, significant weakness, or a deficiency.  In fact,

CGSL's proposal received a low-risk rating for each of the four technical capability SFs.  Tab

267 at AR38319; Tab 201 at AR34654.  Instead, the SSAC compared CGSL's approach to

HSA's and concluded that HSA's approach had ███████████████ by '███████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████" Tab 200 at AR34572.  Thus, the SSAC concluded that HSA's approach

███████████████████████████████████████ and

determined "HomeSafe's ███████████ to be more advantageous than CGSL's ████████

████████" *Id.*  The SSA stated HSA's approach would ███████████████████████

████████████████████████████ Tab 201 at AR34664; Tab 267 at

AR38320.

Further, although CGSL claims that the SSAC and the SSA both determined that its

approach to ███████████████ ███████████████████████████

███████████████████████████ ███████████████████

███████████████████████████," this is not an accurate interpretation

of either report.  CGSL Br. at 25.  The SSAC and the SSA were addressing ███████████

███████████████, in determining that ███████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Tab 200 at

AR34572; Tab 201 at AR34664; Tab 267 at AR38320.

Finally, CGSL discusses the agency's assessment of the benefits of HSA's novel

approach, but, again, the FAR does not require agencies to inform an offeror that its acceptable

approach is less advantageous than an approach proposed by another offeror.  FAR

§ 15.306(d)(3); s*ee also DMS All-Star Joint Ventures v. United States*, 90 Fed. Cl. 653, 669

(2010) (explaining that in discussions "'agencies need not . . . identify relative weaknesses in a

proposal that is technically acceptable but presents a less desirable approach than others.'")

(quoting *WorldTravelService v. United States*, 49 Fed. Cl. 431, 439 (2001)).  Also, the FAR

prohibits the agency from revealing another "offeror's technical solution."  *Id.* at § 15.306(e)(2).

### 4.  General Allegations Of Unequal Treatment

Further, there is no merit to CGSL's conclusory claims that USTC engaged in

unequal discussions.  CGSL Br. at 23.  CGSL argues that USTC apparently erred in ███

████████████████████████████████████████ like it did with HSA in "other

areas."  *Id.*  CGSL's only example of this purported disparate treatment is the fact that the

agency ██████████████████████████████ about ██████████████, an

area in which the SSAC ultimately found no discernible difference between the proposals.  Tab

200 at AR34636.  Otherwise, CGSL relies upon general citations to the record without

explanation.  Conclusory citations without argument are insufficient to meet CGSL's "heavy

burden" of establishing that USTC acted irrationally or unfairly in conducting discussions.

*Volvit, LLC v. United States*, 151 Fed. Cl. 678, 689 (2020) (quoting *Banknote Corp. of America,*

*Inc.*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).  As explained above, the agency resolved all of the

weaknesses, significant weaknesses, and deficiencies with CGSL, and the fact that issues arose

when the agency engaged in its comparative analysis and subsequent best value determination

did not require it to reopen discussions. *Lyon Shipyard*, 113 Fed. Cl. at 357.  Also, this Court has

recognized in order to conduct meaningful discussions an agency "should tailor . . . discussions

to each offer, since the need for clarifications or revisions will vary with proposals."

*WorldTravelService*, 49 Fed. Cl. at 384.  CGSL shows nothing irrational about the agency's

discussions based on this isolated example and general citations to the record.

### D.  USTC Fairly Evaluated Proposals

CGSL's allegations of inconsistent or unequal treatment based upon purported

differences in detail between its proposal and HSA's proposal merely second-guess the agency's

rational evaluation.  CGSL Br. at 26-29.  Further, the distinctions that CGSL attempts to draw to

establish "discernible differences" are the epitome of the "minutiae of the procurement process"

that the Court does not "second guess." *E.W. Bliss*, 77 F.3d at 449.

With respect to ███████████████, CGSL asserts the agency evaluated its

proposal unfairly because CGSL provided "additional details" or "more detail" about its

proposal.  CGSL Br. at 27.  But the agency did not merely look for "more detail."  It examined

each offeror's approach to determine the requisite approach and understanding (*i.e.*, exceptional,

thorough, adequate, not adequate, or does not meet the requirement) for each requirement

evaluated.  *E.g.*, Tab 200 at AR34521.  CGSL does not explain why the details contained in its

proposal would have resulted in a better approach and understanding when compared to HSA's

proposal.  Thus, CGSL's conclusory assertions are insufficient to meet its "heavy burden" of

establishing that USTC acted irrationally. *Volvit*, 151 Fed. Cl. at 689.

Turning to ███████████████, Tab 269.32 at AR51158, CGSL contends

that the agency ignored that ████████████████████████

████████████████████████████████████████████████████
████████████████████████████

████████████████████████. Tab 196a at AR31301; CGSL Br. at 27.  CGSL's

statement regarding ██████ merely restates the PWS requirement.  Tab 269.32 at AR51158;

Tab 7 at AR197 ("Proposals shall not rephrase or restate the Government's requirements.").  In

any event, HSA's proposal ████████████████████████████████

██████████████████████████████████████████████

███████████████ Tab 178b at AR28101.  It logically flows that ████████████████

█████████████████████████████████████████████

███████████████████████. There is nothing irrational about USTC finding both

proposals "met the requirement" and neither included details that "indicate a thorough or

exceptional approach and understanding of the requirement."  Tab 200 at AR 34513.  CGSL's

"mere disagreement" does not render the evaluation irrational.  *Poplar Point RBBR, LLC v.*

*United States*, 147 Fed. Cl. 201, 212 (2020).

    With respect to ██████████, Tab 269.32 at AR51162, CGSL contends that HSA

███████████████████████████████████████████████████

██████████████████████████████████ CGSL Br. at 28.  HSA's

proposal states that it will ████████████████████████████████ Tab 178b at

AR 28098.  It also states that "███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ " *Id.* at AR28104.

The references to █████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████
██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Also, CGSL

argues that HSA ████████████████████████████████████████

████████████████████████. CGSL Br. at 28.  CGSL is misconstruing the language of the

PWS, as there is no PWS (or RFP) requirement that the contractor ████████████████████

████████████████████. Tab 134b1.  As such, the agency reasonably concluded that HSA

satisfied ███████████ Tab 178b at AR28104.  CGSL's "mere disagreement" does not

establish that USTC acted irrationally.  *Poplar Point*, 147 Fed. Cl. at 212.

For ███████████, Tab 269.32 at AR51166, CGSL did not ████████████████

████████████████████████████████████ CGSL Br. at 28.  It stated only that ████████████

████████████████████████████. Tab 196a at AR31307.  Conversely, HSA

████████████████████████████████████████████████ Tab 178b at

AR28108.  CGSL has shown nothing irrational about the agency's determination that both

offerors satisfied the requirement.  Tab 200 at AR34551-34552.  Again, CGSL's "mere

disagreement" does not establish irrational action.  *Poplar Point*, 147 Fed. Cl. at 212.

Turning to the SF 3 requirement, ████████████████████████████████████,

CGSL contends that the agency erred in finding no discernible differences between the proposals

because "CGSL discussed ████████████████████████." CGSL Br. at 28.  Again, CGSL does

not explain why its additional discussion demonstrated a thorough or exceptional approach and

understanding of the requirement.  *Volvit*, 151 Fed. Cl. at 689 (conclusory allegations fail to

demonstrate the agency acted irrationally).  In any event, HSA's ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████ " Tab 178b at AR28141.  This includes "████████████████████

████████████████████████████████████████

████████████████████ " and "██████████████████████

██████ " *Id.*  The agency reasonably concluded that this satisfied the requirement because

HSA ███████████████████████████████████ .  Tab 200 at

AR34574-34579.  Although CGSL references ████████████ and states it "████████

█████████████████████████ " the agency had no actual understanding of "████

████████████ Tab 196a at AR31342 (emphasis added).  HSA specifically

states that ████████████ .  Yet again, CGSL's subjective disagreement does not establish

irrational action.  *Poplar Point*, 147 Fed. Cl. at 212.

     Finally, with respect to ████████████ , Tab140a at AR21188, CGSL complains

that it did not receive extra credit for specifying the ██████████████████████

████████████████████ .  CGSL Br. at 28.  Specifying the ██████████

is not an additional detail because the requirement already states that the ██████████

████████████████ *Id.*  Here, the agency was satisfied that CGSL satisfied the

requirement, and that HSA satisfied the requirement by offering ████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████ Tab 178b at AR28146; Tab 200 at AR34594.  Again, the agency reasonably

concluded that both offerors satisfied the requirement.  CGSL's disagreement does not render the

agency's assessment irrational.  *Poplar Point*, 147 Fed. Cl. at 212.

    **E.  USTC's Tradeoff Analysis Is Rational**

    CGSL attacks both the SSAC's comparative analysis in which it concluded that

HSA presented a more advantageous technical approach, and the SSA's ultimate conclusion that

HSA's "superior technical solution warrants the minimal ███ difference between the Offerors'

proposals." Tab 201 at AR34671; CGSL Br. at 6-12, 33-34. Contrary to CGSL's assertions, the

agency conducted a proper comparative analysis that was in accordance with the RFP. CGSL's

subjective disagreement with the analysis does not establish that the agency's decision lacked a

rational basis, as required. *KSC Boss*, 142 Fed. Cl. at 380-81.

The agency has even greater discretion in a best value procurement than if the contract

were awarded upon the basis of cost alone. *Galen Med. Assoc., Inc. v. United States*, 369 F.3d

1324, 1330 (Fed. Cir. 2004); *E.W. Bliss*, 77 F.3d at 449. Thus, the relative merit of competing

proposals is primarily a matter of administrative discretion. *E.W. Bliss*, 77 F.3d at 449 (quotation

omitted). So long as the agency documents its final award decision and includes the rationale for

any business judgments and tradeoffs, the Court should not disturb the agency's

decision. *Blackwater Lodge & Training Ctr., Inc. v. United States* 86 Fed. Cl. 488, 514 (2009).

The RFP called for an evaluation of four factors. Tab 269.3 at AR50748. Technical

Capability was evaluated based upon four equally weighted SFs and was "approximately equal

to price." *Id.* Of the technical capability SFs, for SF 1 (consisting of 38 requirements), ███

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████. Tab 200 at AR34112, AR34553-34554. For SF 2

(consisting of five individual requirements), ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. *Id.* at AR34112, AR34571. As

explained further below, for SF 3 (which consisted of 11 requirements), CGSL and HSA ███

███████████████████████████████████████
████████████████

████████████████████████████████████████████████

███████████████████████████████. *Id.* at AR34112, AR34600.  Finally,

for SF 4 (consisting of 16 ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████. *Id.* at AR34112, AR34641.  The SSA reasonably concluded that

when taking all four SFs into account, HSA's technical proposal, taken as a whole, represents

"superior technical capability."  Tab 201 at AR34670.

CGSL contests the SSA's (and the SSAC's comparative analysis) best value

determination of the proposals.  But it is apparent from the SSA's (and the SSAC's)

documentation that the agency conducted precisely the type of evaluation required under FAR

§ 15.308, the RFP, and DoD SSP.  HSA had higher adjectival ratings under ███████████  But the

agency did not rely on adjectival ratings or a rote counting of strengths and weaknesses.  Indeed,

"there are nearly 200 pages of documentation demonstrating that USTC appropriately went

behind the adjectival ratings in conducting a qualitative analysis between CGSL and HSA that . .

. supports its best value determination."  Tab 258a at AR37780.

As discussed above, the RFP incorporated DoD SSP, which require the SSA "compar[e]

the strengths, weaknesses, and the cost/price of the competing proposals to determine the best

value to the Government." DoD SSP at 34; Tab 2c at AR105.   He possesses "broad discretion"

so long as his assessment is in accordance with the RFP.  *Id.*  Also, the SSA must document the

supporting rationale for the award decision and any tradeoffs, including benefits to the

Government associated with additional costs.  DoD SSP at 35.  Both DoD SSP and the RFP

provide that award could be made to a "higher rated, higher priced Offeror, where the decision is

consistent with the evaluation factors and the [SSA] reasonably determines that the superior

technical capability of the higher priced offeror outweighs the cost difference." Tab 269.3 at

AR50747; DoD SSP at 34. Also, the SSAC prepares a comparative analysis of proposals for the

SSA. DoD SSP at 39; Tab 2c at AR105.

CGSL claims that because all SFs are weighted equally an offeror's approach to one SF

cannot be more valuable during the best value determination than another offeror's approach to a

different SF. CGSL Br. at 9-10. CGSL also appears to claim that the agency erred in comparing

CGSL's advantage in ▬ with HSA's advantage in ▬ *Id.* As detailed above, however,

there is not a designated way for conducting a best value determination and nothing requires the

agency to adopt CGSL's preferred approach. An agency is given broad discretion to conduct a

reasonable determination that is consistent with the solicitation. Here, in accordance with the

RFP, USTC extensively evaluated proposals, conducted a thorough comparative analysis of their

advantages and disadvantages, and documented that HSA's higher-rated proposal represented the

best-value to the Government. Tab 201. CGSL's disagreement with the agency's approach does

not render the agency's best value analysis unreasonable. *Banknote Corp. of America, Inc. v.*

*United States*, 56 Fed. Cl. 377, 384 (2003). Nor is USTC's evaluation analogous to the agency's

analysis in *FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 379 (2011), in which

the agency "essentially conducted [a best value procurement] on a lowest-price technically

acceptable basis." CGSL Br. at 11.

CGSL also relies heavily on the flawed argument that the agency failed to adhere to the

RFP's evaluation scheme because it downplayed CGSL's slight "superiority" for ▬

▬ CGSL Br. at 7, 9-10. But this argument is based on the incorrect premise that SF 3 had

only two requirements when it involved an analysis of ***11 requirements*** (nine related to transition

and two related to phase-in).  CGSL Br. at 7, 9-11; Tab 200 at AR34574; Tab 201 at AR34664-

34665; Tab 269.3 at AR50814; Tab 222a at AR36182; Tab 200 at AR34600; Tab198e at

AR31550; Tab 198l at AR31923; Tab 198r at AR32252; Tab140a at AR21189-21194

(identifying the phase-in requirements).  Indeed, CGSL explicitly stated "CGSL understands that

"other requirements" relevant to "the establishment of successful IT system connections are

outlined in Appendix A paragraphs A.2.2.1, A.2.2.2, A.2.2.3, A.2.2.4, A.2.2.4.1, A.2.2.4.2,

A.2.2.4.3, A.2.2.5."  Tab 154a2 at AR23045.  Of those 11 requirements, the SSA noted that

█████████████████████████████████████████████ . . . were determined to be

roughly equivalent."  Tab 201 at AR34666; Tab 200 at AR34575-34600, AR34600.  Thus, there

is no merit to CGSL's argument that the agency should have given CGSL's slight advantage in

█████████████████████████ any dispositive weight.  In fact, if CGSL's logic was applied it only

further highlights the propriety of award to HSA because ████████████████████████████

██████████████████████████████████████████████████ . Tab

201 at AR34656, AR34659, AR34665, AR34667.

        CGSL's remaining arguments are based upon a selective and misleading reading of the

SSDD.  CGSL claims that the SSA ignored the advantages of CGSL's proposal relating to point

of contact and delivery requirements.  CGSL Br. at 8.  But the SSA specifically noted that CGSL

was more advantageous with respect to ████████████████████████████ . Tab

201 at AR34657-34658.

        Nor is there merit to CGSL's claim that the SSA "downplayed" its ████████████████

████████████████████ . CGSL Br. at 8.  The SSA, however, did not "downplay"

the advantage of CGSL's approaches; instead, he made a logical determination that improved

claims processes, while beneficial, ████████████████████████████████

██████ Tab 201 at AR34658. CGSL's subjective disagreement does not render the SSA's analysis irrational. *KSC Boss*, 142 Fed. Cl. at 381 (explaining that "naked claims of disagreement" do not establish arbitrary and capricious action) (cleaned up).

Turning to CGSL's arguments regarding the agency's purported ████████████ ████████████████████ regarding ████████, CGSL Br. at 9, the SSA addressed ████████ not because he prioritized it but because it was ██████████████████ █████████████████████████████████. Tab 201 at AR34667-34671. And just as the SSA addressed ████████, he also addressed the ████████ ████████████████████████████ in which there was a discernible difference favoring CGSL. *Id.* Further, although CGSL criticizes the SSA's discussion for focusing on ██████████████, the RFP specifically states that ████████████████████ ██████████████████████████████████████████████████████ Tab 136 at AR21142. CGSL also complains that the agency overemphasized HSA's advantage related to ████████ under ████ as compared to CGSL's advantage related to ████████████ under ████ CGSL Br. at 10, but CGSL's disagreement with the best value determination does not render the agency's decision arbitrary. Also, to the extent CGSL attempts to downgrade ████████ because it was only a ████████████████████████████ CGSL's slight advantage for ████ was also based ██████████████████████.

There is also no merit to CGSL's claim that the SSA deviated from the RFP's evaluation scheme in making his best value determination. CGSL Br. at 10. Contrary to CGSL's assertions, the SSA was not treating individual PWS requirements as more important than others. Instead, the SSA was discussing the differences in competing proposals and

documenting his supporting rationale for business judgments and tradeoffs made as required by the DoD SSP. Merely because all SFs are of equal importance for evaluation purposes does not mean that an offeror's approach to one SF cannot be more valuable during the best value determination than another offeror's approach to a different SF. Equally important requirements is not the same thing as equally valuable approaches.

CGSL is also wrong that the agency's best value determination was flawed because it placed too much weight on HSA's technical capability and failed to explain why the advantages in HSA's technical proposal merited a $⬛ price difference. CGSL Br. at 34-35. Essentially, CGSL contends that USTC could not award a contract to a higher-priced, technically superior offeror, which is contrary to FAR § 15.308, DoD SSP, and the RFP CGSL Br. at 34; Tab 7 at AR135; DoD SSP at 34-36. Under the RFP Technical Capability "will be evaluated on a basis approximately equal to price." *Id*. Even assuming the SSA's determination weighed technical capability as slightly more important than price, the best value determination still would not have been contrary to the RFP because these factors were *approximately* equal, they were not equal.

Nor was anything lacking in the SSA's documentation. The SSA devoted nearly 17 pages to discussing the technical merit of HSA's proposal. Tab 201 at AR 34664; AR34671. He also explained that there was only a ⬛% difference in price, thus he found CGSL's price proposal to be only "minimally advantageous." *Id*. at AR34671. There is also no merit to CGSL's argument that the agency erred in concluding that ⬛ ⬛. The RFP did not state that the agency would evaluate technical merit based solely upon the number of strengths, and the Court has rejected arguments that a proposal was superior based upon a mechanistic counting of

strengths in other cases. *North South Consulting Group, LLC v. United States*, 141 Fed. Cl. 549, 557 (2019). CGSL's remaining arguments reiterate arguments that we have already addressed, so we do not address them again. CGSL Br. at 33-34. Thus, CGSL has failed to identify any error in the agency's tradeoff analysis.

### F. CGSL's Remaining Claims Fail Because It Has Not Proven Agency Error

CGSL's claims that USTC breached its duty to consider offers fairly and that it committed prejudicial error merely reiterate arguments already refuted above. CGSL Br. at 36-37. The agency did not commit *any* error much less a prejudicial error. *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996) (reciting prejudice standard). Thus, CGSL cannot satisfy the requirements to prevail in either a bid protest or an implied-in-fact contract theory. *Blue Origin Fed'n, LLC v. United States*, 157 Fed. Cl. 74, 113 (2021).

## III.   ARC's Protest Is Without Merit

### A.   HSA's Proposal Did Not Contain Misrepresentations

Contrary to ARC's assertions, in its proposal HSA did not make any material misrepresentations regarding the Federal Risk and Authorization Management Program (FedRAMP) status of ██. ARC Br. at 8-15. Even if these statements are construed as a misrepresentation, the agency was entitled to rely on HSA's representation that it complied with solicitation requirements.

#### 1.   The Agency Was Entitled To Rely On HSA's Representations

Under SF 4, offerors were to submit their technical approach on 16 IT requirements, one of which was "secure access." Tab 7 at AR201; Tab 201 at AR34667. HSA proposed using ██ products and services, stating that "██ has achieved FedRAMP High compliance," and HSA "would be able to take advantage of ██'s Authority to Operate (ATO) to ensure its own FedRAMP compliance." Tab 178b at AR28160. ARC contends that HSA's proposal contained

a misrepresentation because ▓▓▓▓'s rating on the GSA FedRAMP website is Moderate. ARC Br. at 8-9. But USTC acted within its discretion in relying on HSA's proposal.

ARC's argument is inconsistent with controlling precedent. *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330-31 (Fed. Cir. 2011). In *Allied Technology*, a disappointed bidder argued that an offeror's misrepresentations regarding its compliance with the RFQ's technical requirements required the agency to disqualify that offeror's proposal. *Id.* at 1330. The Federal Circuit disagreed, stating that an agency "is entitled to rely" on an offeror's representation that "it meets the technical requirements of a proposal" in determining whether to accept a bid, "and the offeror's potential failure to comply with the proposal requirements is ordinarily 'a matter of contract administration[.]'" *Id.* (citing *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1030 (Fed. Cir. 2009)). The exception is when an offeror's proposal "*on its face* should lead an agency to the conclusion that an offeror could not and would not comply with" the applicable requirement. *Id.* (emphasis in original).

Relying on *Allied Technology*, both the Federal Circuit and this Court have consistently found that purported misrepresentations are matters of contract administration if the agency accepts a proposal based on a misleading representation and there was nothing on the face of the offeror's proposal that should have led the agency to conclude that the offeror could not meet the contract's technical requirements. *See, e.g., Per Aarsleff A/S v. United* States, 829 F.3d 1303, 1315-16 (Fed. Cir. 2016) (upholding award where proposal on its face would not have led the agency to conclude the awardee could not comply with contract requirements); *Huffman Bldg. P, LLC v. United States*, 152 Fed. Cl. 476, 486-87 (2021) (Tapp, J.) (holding that agency was entitled to rely on awardee's representation of technical compliance based on the totality of the circumstances); *Thoma-Sea Marine Constr., LLC v. United States*, 141 Fed. Cl. 185, 214 (2018)

(denying protest arguing that agency acted arbitrarily and capriciously when it "failed to verify" awardee's claims because agency reasonably relied on representations in proposal where there was no facial evidence the proposal could not meet technical requirements).

Here, there was nothing on the face of HSA's proposal that led or should have led USTC to conclude that ██ had not achieved FedRAMP High compliance. Indeed, ARC does not argue here (nor did it at GAO) that anything on the face of HSA's proposal should have led the agency to conclude that ██ had not achieved FedRAMP High compliance. Thus, even if the Court determines that HSA's representation that ██ had achieved FedRAMP High compliance is a misrepresentation (which, as discussed below, it is not), USTC had no reason to believe that HSA's statement was inaccurate and, thus, USTC was entitled to rely on HSA's representation. Accordingly, this is an issue of contract administration.

### 2. HSA Did Not Make Any Misrepresentations

In any event, ARC's argument lacks merit because HSA did not make any misrepresentations. ARC Br. at 8-9. HSA's proposal indicated that ██ had achieved FedRAMP High compliance, and HSA could take advantage of ██'s ATO to ensure its own FedRAMP compliance. Tab 178b at AR28160. FedRAMP provides a standardized approach to security assessment for the federal government. Tab 231 at AR37116; Tab268.427 at AR50453. Federal Information Processing Standard (FIPS) 199 provides the standards for categorizing information and information systems, which is the process Cloud Services Providers (CSP) use to ensure their services meet the minimum-security requirements for the data processed, stored, and transmitted on them. Tab 268.427 at AR50453. Cloud Service Offerings (CSOs) and CSPs are categorized into one of three impact levels: Low, Moderate, and High; and across three security objectives: Confidentiality, Integrity, and Availability. *Id.* DoD leverages the

FedRAMP assessment and adds heightened security controls and requirements necessary to meet and assure DoD's specific critical mission requirements, as opposed to only assessing a system from the standardized, FedRAMP approach. *Id.* DoD uses the term information Impact Levels (IL) as defined in the DoD Cloud Security Requirements Guide (SRG). *Id.* DoD authorizes CSPs and CSOs at several levels: IL2, IL4, IL5, and IL6. *Id.*

██ holds DoD IL4 Provisional Authorization (PA) status. *Id.* In order to achieve DoD IL4 PA status, a company must first typically hold FedRAMP Moderate status at a minimum, and then implement the heightened DoD-specific controls. *Id.* at AR50454. ██'s DoD IL4 PA status exceeds FedRAMP moderate security requirements and fundamentally met the FedRAMP High requirements, which are less stringent than DoD-specific security requirements. *Id.*

At GAO's request, HSA submitted a declaration from the President of ██████, one of HSA's teammates. Tab 239a. This declaration explained that HSA relied on publicly-available information from ██'s website and closely tracked language in ██'s publicly available materials for configuring ██ to achieve FedRAMP compliance. *Id.* at AR37422-23, ¶ 10. Notably, GAO's evaluation determined that HSA made no misrepresentation. Tab 251 at AR37535.

ARC now challenges USTC's "logic" regarding ██'s security compliance as flawed. ARC Br. at 12-13. But it is ARC's logic that is flawed. ARC simply engages in a counting exercise, looking at the number of security controls included in FedRAMP High versus those in DoD IL4. The criticality of all security controls, however, is not equal. Depending on DoD mission requirements, security controls may be more stringent for IL4. Further, IL4 mandates DoD General Readiness and DoD Unique Requirements as defined in the DoD Cloud Security Requirements Guide (SRG) is above and beyond the FedRAMP Moderate and FedRAMP High

██████████████████████████████████████████████████████

baselines.  DoD Cloud Computing SRG, Ver. 1, Rel. 4 at ¶¶ 4.1, 5.7 (Jan. 20, 2022), *available at*
https://public.cyber.mil/dccs/dccs-documents/.[3]

Nor is there merit to ARC's claim that HSA could not have relied on ████ 's DoD IL4
provisional authorization for this contract because it was █████████████ under the granted
provisional authorization.  ARC Br. at 13-14.  ███████████████████████████

███████  As the contracting officer explained at GAO, ████████████████████

███████████████████████ that ████ *has successfully implemented the*
*heightened security controls and achieved IL-4 compliance*."  Tab 268.437 at AR50706.  This
supports that HSA's proposal did not contain a material misrepresentation and that ████

████████████████████████████████████████████████████

██████████████████████████ *Id.*

ARC relies on three cases to support its misrepresentation claim, each of which is
inapposite.  *See* ARC's Br. at 8 and 16, *citing Planning Research Corp. v. United States*, 971
F.2d 736 (1992); *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471 (2012); and
*NetCentrics Corp. v. United States*, 145 Fed. Cl. 158 (2019).  In *Planning Research Corp.*, a case
decided almost 20 years before *Allied Technology*, the Federal Circuit affirmed a decision by the
General Services Board of Contract Appeals (board) to sustain a protest based on a
misrepresentation in the awardee's proposal.  The facts of that case are easily distinguishable.  In
*Planning Research*, the agency solicited bids for the management and support of one of its

---

[3] Version 4 of this document is currently publicly available on the Government website
listed above and went into effect in January 2022.   Version 3, which was the version that was in
effect when the contract was awarded is no longer publicly available.  However, the relevant
language from paragraph 4.1 the same in both versions.  Also, section 5.1.7 is identical in both
versions.  Version 3 can be accessed at this non-Government website: https://rmf.org/wp-
content/uploads/2018/05/Cloud_Computing_SRG_v1r3.pdf.

facilities. 971 F.2d at 737. Planning Research Corporation (PRC) stated that, if awarded the contract, it intended to hire and rely on incumbent employees. *Id.* at 738. After the agency advised PRC that its plan constituted a weakness, PRC amended its plan and assured the agency that incumbent personnel would not be required. *Id.* The board concluded, however, that PRC always intended to use incumbent personnel should it win the contract. *Id.* at 738-39. The board found that (1) PRC offered the services of employees it never intended to provide; (2) the agency ignored evidence that should have made it aware of PRC's misrepresentations; and (3) immediately after award, the agency permitted and assisted PRC in making massive substitutions for the proposed personnel. *Id.* at 739. Agreeing with the board, the Federal Circuit found that the record established that PRC intentionally engaged in a "bait and switch" regarding its proposed personnel. *Id.* at 740-42. Also, the Court found that after contract award, the agency became complicit in the awardee's "bait and switch," by assisting PRC with massive personnel substitutions – the exact action the agency had told PRC would be a weakness. *Id.* at 741-743. These factors, combined with the board's finding that the agency ignored evidence that should have made it aware of PRC's misrepresentation, resulted in the Court affirming the board's decision. *Id.* at 743.

None of the factors present in *Planning Research Corp.* exist here. Unlike the board in that case, here, GAO found HSA's representations were not false at all. Tab 251 at AR37535. Also, USTC did not engage in any problematic post-award conduct and did not ignore evidence.

Similarly, *GTA Containers, Inc.* is an outlier. 103 Fed. Cl. 471 (2012). In *GTA Containers*, decided less than a year after *Allied Technology*, the Court did not cite to or address the Federal Circuit's holding in that case. Instead, the Court relied exclusively on *Planning Research* in analyzing whether an awardee made a material misrepresentation. *Id.* at 484. As

36

*Planning Research* is inapposite to our facts, *GTA Containers* is likewise of no help here.

Finally, in *NetCentrics Corporation*, it was the *agency* that sought to rescind an award and disqualify the awardee based on material misrepresentations the agency discovered post-award. 145 Fed. Cl. at 170-71. In that case, following discovery of the misrepresentations, the agency no longer had confidence that the awardee could adequately perform the contract. *Id.* Here, however, HSA did not make any misrepresentations in its technical proposals, and the agency has full confidence that HSA can perform under the contract.

### 3. ARC Cannot Show Materiality Or Prejudice

Even assuming the Court finds HSA's proposal contained a misrepresentation, the representation was not material and ARC cannot show prejudice. To show a material misrepresentation, a plaintiff must show: (1) the awardee made a false statement, and (2) the agency relied on that false statement in selecting the awardee's proposal. *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 483. As explained above, HSA did not make any false statements. Nor can ARC show that USTC relied on that statement in awarding to HSA or that ARC otherwise had a substantial chance at award but for the agency's reliance on that representation. *Id.*; *Statistica*, 102 F.3d at 1581 (to prove prejudice protestor must show a substantial chance at award but for the error).

Contrary to ARC's assertions, the FedRAMP level of the ▮ system was not meaningful in the SSA's best value determination. USTC found that HSA was more advantageous under SF 4 based on an evaluation of *16* requirements. Tab 201 at AR34667. In fact, the SSDD does not mention ▮. Tab 201. Even if the Court were to find that HSA's proposal contained a misrepresentation regarding ▮'s FedRAMP security, ARC demonstrates agency error only on 1/16th of the requirements in one of four SFs in only one of four factors

██████████████████████████████████████████████████
██████████████████████████████

considered for award.  Thus, ARC cannot establish that USTC relied on the statement in making

the award decision, much less that it had a substantial chance at award but for the alleged error.

*Statistica*, 102 F.3d at 1581; *GTA Containers*, 103 Fed. Cl. at 483.  Further, ███████████████

███████████████████████████ for ████, ARC's assertion that █████████████████████

would "require a new tradeoff decision" is both speculative and highly unlikely.  ARC Br. at

16. █████████████████████████████████████████, the SSAC would have had a

difficult time finding ARC's SF 4 more advantageous than HSA and CGSL's SF 4

proposals.  With regard to the comparative analysis between ARC and HSA, HSA provided the

Government with ████████████████████████████████████████████████████████

████████████████████████████████████████████, whereas ARC simply

provided the Government with ████████████████████████████████████████████

████████████████████████████████████████████  Tab 200 at AR34427-

34428.  This still would have resulted in a discernible difference between ARC and HSA's

proposals favoring HSA, so the SSAC would have determined HSA's approach to the ████████

████████ requirement to be more advantageous than ARC's approach.  Therefore, the SSAC would

have still assessed that HSA's SF 4 proposal was more advantageous to the Government in ████

████████████ SF 4 requirements and that ARC was more advantageous in ████████████ SF 4

requirements.  Tab 200 at AR34463-34464.  Thus, it is improbable that the SSAC would have

found ARC and HSA's SF 4 proposals to be roughly equivalent ████████████████████████

████████████.  Likewise, ARC's argument with respect to CGSL fails for the same reasons.

Consequently, it is all but impossible that ████████████████████████████████████

would have forced a new tradeoff under which would have given ARC a "substantial chance" at

award.  *Statistica*, 102 F.3d at 1581.



Further, the SSAC Report confirms that HSA's more advantageous approach under ███

███████████ by ARC's more advantageous approach under ██████ because the SSAC

compared HSA's said approaches and found ARC's overall ██████ approach to be ██████

███████████████████. Tab 200 at AR34470.  Thus, the agency ████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████. *Id.*  Accordingly, whether ██████ achieved FedRAMP High compliance

was not a determining factor in the agency's award decision.

### B. ARC's Challenges To The Agency's Price Analysis Lack Merit

#### 1. The Agency's Price Evaluation Was Rational And In Accordance With The Solicitation And Procurement Regulations

ARC asserts USTC's price reasonableness analysis was flawed because it was based on

the proposed prices of the ██████ initial offerors, some of which were excluded from the

competitive range, and which original proposals contained purported technical deficiencies. *See*

ARC Br. at 18.  ARC's argument is unsupported by the record, case law, and regulation.

Under the terms of the RFP, to be considered for award, the offeror's TEP must be

determined fair and reasonable.  Tab 7 at AR138.  Also, the RFP provided that prices not

included in the TEP would also be evaluated for fair and reasonableness. *Id.*  Further, the agency

advised offerors that proposed pricing would be evaluated using one or more of the techniques

set forth in FAR § 15.404-1(b)(2) to determine the fairness and reasonableness of prices. *Id.*

That is exactly what the agency did.

Under FAR § 15.404-1(b)(2), one tool to be used in price reasonableness analysis is the

"[c]omparison of proposed prices received in response to the solicitation.  Normally, adequate

price competition establishes a fair and reasonable price (see 15.403-1(c)(1)(i))."  FAR § 15.404-

1(b)(2)(i).  FAR § 15.404-1(b)(3) states that the comparison of proposed prices received in response to the RFP is one of two "preferred techniques."

USTC utilized the first technique described in FAR § 15.404-1(b)(2) and compared the prices of all ▮ offerors who submitted proposals for the GHC contract.  Tab 199 at AR32396-32399; Tab 199a at AR32460.  For comparing the TEPs received in response to the RFP, the agency determined an average TEP of all ▮ offerors and a one-half standard deviation therefrom.  *Id.*  Any offeror's TEP that was more than one-half standard deviation above the average TEP of all ▮ offerors was found not to be fair and reasonable.  *Id.*  All three offerors remaining in the competitive range submitted TEPs less than one-half standard deviation above the average TEP of all ▮ offerors.  Thus, all three were found to be fair and reasonable.

FAR § 15.404-1(b)(2)(i) allows the Government to use the "[c]omparison of proposed prices received in response to the solicitation" to ensure fair and reasonable pricing.  The FAR does not require the Government to recalculate fair and reasonable pricing thresholds after the competitive range is set, if an offeror removes itself from competition, or if the agency takes corrective action.  Thus, USTC was reasonable in its use of the proposed prices received in response to the solicitation for determining the fair and reasonable TEP threshold.

As discussed in the SSEB Report, USTC determined that recalculating the fair and reasonable TEP threshold would have likely eliminated at least one offeror from the fair and reasonable range even if that offeror provided a lower TEP than the TEP initially found to be fair and reasonable.  Tab 199 at AR32398.  Such a process is not sensible.  Thus, USTC was reasonable in its use of the proposed prices received in response to the solicitation to calculate the fair and reasonable thresholds.  *DynCorp*, 10 F.4th at 1311 (agency receives "broad discretion" in conducting a price reasonableness analysis).

40

ARC relies on two GAO decisions to support its argument, but both are inapposite.  ARC Br. at 17.  First, *Lifecycle Constr. Servs.*, B-406907, 2012 WL 5194140 (Comp. Gen. Sept. 27, 2012), is factually distinguishable because the procurement at issue was evaluated under a price realism analysis, not a price reasonableness analysis.  FAR § 15.404-1 sets forth different requirements for realism versus fair and reasonableness determinations.  A fair and reasonable price analysis is conducted to ensure the Government does not pay too high a price for a contract. *Vectrus Systems Corp. v. United States*, 154 Fed. Cl. 29, 48 (2021).  A price realism analysis, in contrast, assesses whether an offeror's low fixed-price reflects a lack of understanding of contract requirements or risk inherent in its approach.  *Mortgage Contracting Servs. LLC, v. United States*, 153 Fed. Cl. 89, 134 (2021).  Accordingly, *Lifecycle Constr. Servs.* is distinguishable.

ARC also relies on the GAO's decision in *AvKARE, Inc.*, B-417250, 2019 WL 3202586 (Comp. Gen. Apr. 18, 2019).  In *AvKARE*, the agency found AvKare's proposed price was not fair and reasonable.  *Id.* at *2.  The agency included in its price evaluation benchmark the Independent Government Cost Estimate (IGCE), based on prices from products prohibited from consideration and the price of one other offeror in the competitive range that was subsequently removed from competition for failing to comply with the RFP.  *Id.* at 1-2.  Unlike *AvKARE*, however, USTC compared the prices of ***all*** offers received, as outlined in the FAR, and did not consider the IGCE in its price analysis.

Even if the agency committed an error in its price reasonableness analysis (which it did not), ARC did not suffer any prejudice.  First, ARC argues that had USTC conducted a different price reasonableness analysis, ARC's TEP would have been found ▮▮▮▮▮, which would have allowed ARC ▮▮▮▮▮▮▮▮▮▮.  ARC Br. at 20.  ARC's contention is

████████████████████████████████████████████████████

pure speculation. ARC's TEP was over $██████ more than HSA's, Tab 199 at AR32458,

yet both the SSAC and SSA determined ARC and HSA had roughly equivalent technical

proposals. Tab 201 at AR34655. If ARC would have ██████████ like it claims it would

have, it goes without saying that ARC would have had to ████████████████████

██████████ to accommodate ████████████████. ARC ████████████

██████████████████ to match HSA's TEP would have likely resulted in the

SSAC and the SSA finding HSA's technical proposal to be more advantageous than ARC's.

Consequently, the SSA would have likely also found HSA's overall proposal to be a better value

to the Government than ARC's overall proposal because HSA's proposal offered the more

advantageous technical capability for the same price as ARC. Therefore, ARC's assertion that

"ARC would have been able to ████████████████ and dramatically improve

[its] standing in the best value trade off" is highly unlikely and speculative. Such speculative

assertions are not enough to establish prejudice. *AM General, LLC v. United States*, 115 Fed. Cl.

653, 679 (2014). ARC's contention is also inaccurate because ARC admitted that based on the

RFP requirements it ████████████████████████████████████

████████████████ Tab 214 at AR35367.

As discussed above, USTC complied with the FAR requirement on the fair and

reasonableness analysis. In conducting the comparison of the non-TEP prices received in

response to the RFP, the agency used the same methodology as it did for the TEP, as outlined

above. *Id.* As such, the agency incorporates all arguments made in support of its TEP fair and

reasonableness analysis in response to ARC's arguments related to its analysis of non-TEP

prices. ARC also argues that under its proposed price reasonableness analysis, "the agency

would have found that several of HSA's and CGSL's individual non-TEP rates were not fair and

reasonable, and thus their proposals were not, at least without further revisions, awardable."
ARC Br. at 20.  As demonstrated, the agency's fair and reasonableness analysis was proper.
ARC's argument that it would have found any offeror's non-TEP prices not to be fair and
reasonable is inaccurate.  Even if the agency erred in its analysis of non-TEP prices, ARC
neglects to point out that its price proposal would have also included non-TEP rates that ████
████████████████ if using the methodology that resulted in the figures in ARC's ███████
Thus, ARC would have received the same benefit from any alleged wrongdoing by the
Government and, therefore, suffered no prejudice.

     Finally, ARC asserts that the agency would have found that aspects of HSA's and
CGSL's pricing presented greater balance risk.  ARC Br. at 20-21.  Here again, FAR § 15.404-
1(g)(2) requires that "[a]ll offers with separately priced line items or subline items shall be
analyzed to determine if the prices are unbalanced."  The FAR does not require the Government
to recalculate the balanced pricing thresholds after the competitive range is set, if an offeror
removes itself from competition, or if the agency takes corrective action.  Thus, USTC was
reasonable in its use of the proposed prices received in response to the solicitation for calculating
balanced pricing thresholds and, therefore, reasonably determined that ██████████████
████████████████████████████.  Also, while ARC selectively points out
that HSA's pricing would have changed from balanced under the GHC methodology to
unbalanced under ARC's proposed methodology ███████████, and CGSL's pricing would
have changed from balanced under the GHC methodology to unbalanced under ARC's proposed
methodology in ████████ when utilizing pricing from only the three remaining offerors, ARC
neglects to inform the Court that its own pricing would have changed from balanced under the
GHC methodology to unbalanced under its proposed methodology in ██ categories.  Tab 199t

██████████████████████████████████████████████████

at AR33868; *see also* ARC Exhibit 1 (ECF No. 61-2) at 69.  Further, ████████████

███████████████████████████████████████████████████████

████████████████████████████████████████.  Tab 199t at AR33868.  Thus,

the pricing proposal that would have experienced the greatest increase in balance risk when

moving from the GHC methodology to ARC's proposed methodology is ARC's.  Accordingly,

ARC is unable to demonstrate any prejudice as a result of the agency's methodology.

### C.  USTC Lawfully And Rationally Evaluated Proposals

As discussed at pages 8-9 above, the agency receives significant deference when

evaluating technical merit and past performance.  Although ARC disagrees with the agency's

evaluation, that does not satisfy its burden of showing the evaluation lacked a rational basis.

Further ARC cannot demonstrate prejudice.

#### 1.  USTC Rationally and Reasonably Evaluated HSA's Technical Proposal Under SF 1 (Operational Approach)

ARC argues that USTC's evaluation of HSA's proposal under SF 1 was flawed, because

HSA's proposal did not comply with two PWS requirements ████████████████████████

and thus should have been found unacceptable.  ARC Br. at 21-22.  ARC's position is without

merit.  First, ARC takes exception to the agency's evaluation of HSA's proposal under ████

█████████████████.  Tab 134b1 at AR21083.  ARC alleges that HSA did not comply

with the requirement to ████████████████████████████████████████████████

████████████████████████████████████.  ARC Br. at 22.  Contrary to

ARC's assertion, HSA's proposal adequately meets this PWS requirement.  ████████████

████████████████████████████████████.  The requirement to ████

████████████████████████████████████████████████████████████████

████████████████████████ logically encompassed within HSA's proposal, which states that

it will "comply with ███████████████████████████." *Id.* (emphasis added)  Thus, the

evaluation team reasonably and rationally determined that HSA's proposal satisfied the

requirement.  Tab 198p. at AR32064.

 Further, ARC misstates the scope of ██████████████ by incorrectly asserting there is a

requirement to ████████████████████████████████████████████████████████

██████████  ARC Br. at 22.  From a plain reading of the requirement, while the contractor is

required to ██████████████████████████, it is not required to ██████████████████

████████.  Instead, the contractor must ██████████████████████████████████.  As

such, the evaluation team rationally and reasonably concluded that HSA met this requirement.

 Second, ARC takes exception with USTC's evaluation of HSA's approach to ██████

██████████████████.  Tab 134b1 at AR21087.  Under this requirement, ████████████

████████████████████████████████████████████████████  *Id.*  ARC asserts

that the PWS ████████████████████████████████████████████████ when

████████████████████ and alleges "HSA's proposal does not ██████████████████

████████████████  Tab 134b1 at AR21087; Tab 227 at AR36473.  The evaluation team

did not determine it was necessary for HSA to ████████████████████████████ in

order to meet it nor did the evaluation team find the wording of HSA's proposal to ████████

████████████████████████████████████.  Tab 198p at AR32069.  Further, in the

unlikely event the Court determines that neglecting specifically to ██████████████████

██████ rendered a proposal ineligible for award, then ARC would also be rendered ineligible

for award as it ████████████████████████████████████████████████████████

██████████████████████████████████.  Tab 198c at AR31444-31445.  Thus, USTC reasonably

determined that proposals which met the requirements for ██████████████████ did not also

███████████████████████████████████████████████

have to ███████████████████████████████████████. Accordingly, ARC

has established no error in the agency's evaluation, much less prejudicial error. *System Studies*

*& Simulation*, 22 F.4th at 997 (prejudice is a required element).

### 2. **The Agency Evaluated SF 3 In Accordance With The RFP**

ARC argues that USTC departed from the stated evaluation criteria in evaluating ARC

under SF 3 because the ████ ███████ used to describe the SF's ██████ required USTC

to assign strengths for any ████████████████████, but the agency did not do so.

ARC Br. at 24. ARC's argument, however, is undermined by the administrative record.

To prevail in a protest alleging an agency departed from the stated evaluation criteria, "a

protestor must show that (i) the procuring agency used a *significantly* different basis in

evaluating proposals than stated; and (ii) the protester was prejudiced as a result – that it had a

substantial chance to receive the contract award but for that error." *Banknote Corp. of Am. v.*

*United States*, 56 Fed. Cl. 377, 386-87 (2003) (emphasis added). Moreover, the court will not re-

evaluate the proposals when a plaintiff alleges such a deviation but "'will examine the agency's

evaluation to ensure that it was reasonable and in accordance with the evaluation criteria listed in

the solicitation.'" *Pitney Bowes Gov't Solutions, Inc. v. United States*, 94 Fed. Cl. 1, 11 (2010)

(quoting *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 120 (2000)).

With respect to SF 3, the RFP provided that the offeror "shall submit a detailed

Transition/Volume Phase-In Plan . . . which demonstrates how the Offeror will accomplish

transition requirements." Tab 7 at AR200. The RFP also advised that the offeror was required

to identify and describe its "approach to meet the required implementation and transition for

establishment of successful IT system connection between the Offeror's IT system and the

Government's system" and the "Offeror's approach and associated timelines to be fully

████████████████████████████████████████████████
█████████████████████████████

operational for complete global HHG relocation services for each of the service areas identified

in the RFP." *Id.* at AR200-01.

Subfactor 3 contains 11 requirements. *See* Tab 140a.; Tab 200 at AR34396. The RFP

did not identify any of these requirements as more important than others. Tab 7 at AR200. The

RFP established a ███████████████████████. Tab 140a at AR21187. Several of the

requirements provide ████████ for their implementation, many of which are ████████████

███████████. *See, e.g.*, Tab 140a at AR21187 ███████████████████████.

In conducting its evaluation, the SSEB determined that it "did not assess ███████

████████████████████ requirements as being advantageous to the Government. The tasks and

respective ████████ associated with █████████████████████████ coincide with the

Government's estimated ████████████████████████████████████ ███████████

███████████" Tab 198e at AR31554-31560. The SSAC determined that "████████████████

█████ ████████████████████ was . . . not . . . advantageous to the Government as the

████████████████████████████████ and therefore █████████████████ was not

evaluated to have a positive (or negative) impact on either ████████ or ultimately contract

performance." Tab 200 at AR34396. Put another way, the SSEB declined to assign strengths for

███████████████████████. USTC advised ARC in early 2021 that it was "not accepting

████████████████████████. As outlined in the RFP, the ████████████ will be for a

███████████████████████." Tab 181b2 at AR29515.

Contrary to ARC's contention, the agency's evaluation complied with the RFP's terms.

Simply because the agency did not find ████████████████████████ to be advantageous does

not equate to an evaluation in which no consideration was given to the offerors requisite

approach and understanding of said requirements. The SSEB Report specifically refutes this

███████████████████████████████████████████████
██████████████████

claim and demonstrates that the agency evaluated the approach and understanding of all

████████████████████. Tab 198e at AR31550-31613. Also, nothing in the RFP

prohibits the agency from exercising its discretion in determining that █████████████

████████████ was neither advantageous nor disadvantageous to the Government. The

agency established the tasks and respective ██████ associated with ██████ to coincide with

the Government's estimated ██████. The use of the ████ █████████ does not inherently

mean or imply that ████ performance would be beneficial or evaluated that way. The RFP

simply states that performance ████████████ is not acceptable.

　　　This is simply an example of a disappointed bidder asking the Court to re-evaluate its

technical proposal. The Court, however, is in no position to second-guess the agency's technical

evaluation. *Kiewit Infrastructure West Co. v. United States*, 137 Fed. Cl. 689, 702 (2018).

Further, ARC's argument that this alleged error prejudiced ARC because USTC would have

found ARC's purported █████████████ under ████ more valuable than HSA's superiority

under ████ is purely speculative, nor would it establish that ARC had a substantial chance at

award given ARC's ████████████. ARC Br. at 28-29. Thus, ARC cannot prove

prejudice. *System Studies & Simulation*, 22 F.4th at 997.

### 3.　USTC Lawfully And Rationally Evaluated Proposals Under SF 4

　　　ARC contends that the agency disparately evaluated its proposal as compared to HSA's

in three respects: (1) treatment of ████████████████; (2) treatment of ████████

█████████████████; and (3) treatment of █████████████████

████████. ARC Br. at 25-28. There is no merit to these claims.

　　　ARC's argument that the agency disparately evaluated its and HSA's proposals is

inconsistent with controlling Federal Circuit precedent. *Office Design Grp. v. United States*, 951

F.3d 1366, 1372-74 (Fed. Cir. 2020). In *Office Design Group*, the Federal Circuit held that to

prevail on a disparate treatment claim, "a protestor must show that the agency unreasonably

downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly

identical from those contained in other proposals." *Id.* at 1372-73; *see also id.* ("A protestor may

also prevail by showing that the agency inconsistently applied objective solicitation requirements

between it and other offerors, such as proposal page limits, formatting requirements, or

submission deadlines."). Here, ARC's contention that USTC disparately evaluated its and

HSA's SF 4 technical proposals does not satisfy those standards, because ARC's complaint is

simply a disagreement with the agency's subjective technical evaluation judgments.

ARC asserts USTC treated ARC unequally when it did not require HSA or CGSL to

explain how they ███████████████████████████████████████

███. ARC Br. at 26. ARC's contention is undermined by the administrative record, which

demonstrates that USTC equally evaluated the parties' proposals. HSA's proposal states, ███

████████████████████████████████████████████████████

█████████████████████████ Tab 178b at AR28161. ███████████████

████████ ███████████████ ████████████████████████.

Tab 268.427 at AR50455 (Section III). Similarly, with regard to CGSL, CGSL's proposal states

that ███████████████████████████████████████

███████████████████████████████████ Tab 196a at

AR31360. CGSL's proposal further states, █████████████████████████

████████████████████████████████████████████████

██████████████ Tab 196a at AR31361. The agency was reasonable in assigning CGSL█

████████████████████. Conversely, ARC was ██████████████████

████████████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████████████████ ██████████. Tab 198f at

AR31644.  Contrary to ARC's argument, ████████████████████████████████

████████████████████████.  Thus, ARC cannot establish disparate treatment.

ARC argues that USTC disparately evaluated its proposal vis-à-vis HSA's with respect to

their approaches ████████████████████████.  ARC Br. at 27.  Contrary to ARC's assertion

that it "also proposed ████████████████████████████ ██████████████," *id.*, ARC made no

mention of ████████████ in its proposal.  Instead of citing to its proposal to assert that it

proposed use of ████████████, ARC cites to an EN response.  *Id.*  In accordance with the

RFP, ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Tab 7 at AR136.  An EN is not part of an

offeror's proposal and ARC was notified that the Government is unable to evaluate any approach

that is not incorporated into the written proposal (*i.e.*, only answered in the EN response).  Tab

164a2 at AR24361.  Therefore, it would have been improper for USTC to ████████████████████

for mentioning ████████████ only in an EN response.  Thus, ARC cannot establish it was

subjected to disparate treatment.

Even if ARC was ████████████████████████████████████████████,

however, ARC's assertion that "the Agency would have realized that ████████████████████

████████████████████████████████, which would have forced a new tradeoff under

which ARC had a substantial chance of winning" (ARC Br. at 27) is not only speculative, but

also highly unlikely.  Even if the SSEB would have ████████████████████ for ██████

████████, the SSAC would have had a difficult time finding ████████████████████████

████████████████████.  With regard to the comparative analysis between ARC and

██████████████████████████████████████████████████

HSA, HSA ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████. Tab 200 at AR34427-34428. This would

have resulted in ███████████████ between ARC and HSA's proposals favoring HSA, so

the SSAC would have determined HSA's approach to the ████████████ requirement to be ████

███████ to the Government than ARC's approach. Therefore, the SSAC would have still

assessed that HSA's SF 4 proposal was █████████████ to the Government in ████ out of the

16 SF 4 requirements and that ARC was more advantageous in ████ of the 16 SF 4

requirements. Tab 200 at AR34283. Thus, it is highly improbable that the SSAC would have

found ARC and HSA's SF 4 proposals to be roughly equivalent even if ARC was assigned a

strength for ████████████. Likewise, ARC's argument with respect to CGSL fails for the

same reasons. Consequently, it is all but impossible that ██████████████ for use of

█████████████ would have forced a new tradeoff under which ARC had a substantial chance of

winning, and therefore ARC suffered no prejudice.

Finally, ARC asserts that USTC unequally treated its proposal vis-à-vis HSA's with

respect to ██████████████████████. ARC Br. at 27-28. ██████████████

specifically states ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Tab134b1 at AR21096. As

such, it is apparent from the Government's requirement that ARC knew, or should have known,

that ████████████████████████. Further, in response to the EN

issued pertaining to ████████████, ARC revised its proposal and stated, ██████████████



Tab177a

at AR27817.  As such, it is apparent from ARC's response, and subsequent proposal revisions,

that ███████████████████████████████████████, and ██████

███████████████████████████████████.  Further, there is no merit to

ARC's claims of prejudice due to USTC's evaluation of its ████████████████.  ARC Br.

at 28-29.  ARC ████████████████████████████, but it did ***not***

submit ██████████ in conjunction with this revised proposal as ████████████████████

████████ ████████████.  Tab 177b at 27908.  Consequently, ARC cannot associate its

$████ ██████████████████ when adding this approach because its ████ did not

change.  *Id.*  Thus, ARC cannot prove prejudice.  *Statistica*, 102 F.3d at 1582.

### D.  The Agency Conducted Meaningful And Equal Discussions

As noted above, USTC conducted fair and equal discussions with offerors.  Contrary to

ARC's assertions, the agency conducted meaningful and equal discussions with ARC, and it did

not fail to alert ARC to any significant weaknesses in its proposal.  *See, e.g.,* Tab 198 at

AR31390-392.

### 1.  USTC Conducted Meaningful Discussions With ARC

ARC contends that the agency failed to inform ARC of two "concerns" identified during

its evaluation.  ARC Br. at 29-30.  But as ARC accurately concedes, the agency did not identify

these so-called "concerns" as "significant weaknesses."  As discussed at pages 12-13,  and

contrary to ARC's allegations, the FAR does not require the CO to inform an offeror of all areas

of its proposal which may have room for improvement.   FAR § 15.306(d).

██████████████████████████████████████████████████████
████████████████████████

With respect to the first alleged concern, the ████████████████████ compared to

HSA's approach, the technical evaluation demonstrates that ARC's rating under ████████ was not

negatively impacted because of its ████████████████████. Tab 198d.  Turning to the second

alleged concern, that ARC's proposed ████████████████████ was ██████████████

████████████████████████████████, the technical evaluation demonstrates that

ARC misconstrues the evaluation team's assessment.  The evaluation team noted that the

"████████████████████████████████████████████████████████

████████████████████████." Tab 198d at AR31506.  ARC fails to acknowledge the

evaluation team's assessment that "████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████." *Id*.  The

evaluation documentation shows that the SSEB did not consider ARC's ████████████████

████████, ████████████████████████████ to give rise to the level of a deficiency or

a significant weakness.  Tab 7 at AR136.  ARC's arguments regarding both of these alleged

concerns ignores the different roles of the SSEB, the SSAC, and the SSA, which are detailed at

page 14, above.  Because there was no comparison of proposals during the SSEB's evaluation,

there could be no determination and subsequent discussions with ARC that HSA's ████████

██████████████████████████████████████████████████████.

Tabs 198d and 198q.  This determination was appropriately made following the SSAC's

comparative analysis in which the SSAC reasonably concluded that HSA had proposed ████████

██████████████████████.  Tab 200 at AR34395.  USTC was not required to reopen

discussions once it determined that HSA's approach was more advantageous.  *Lyon Shipyard*,



113 Fed. Cl. at 357. If USTC had advised ARC during discussions of aspects of HSA's ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, it would have run afoul of FAR §15.306(e)(1) by favoring ARC to HSA's competitive prejudice. Also, had USTC advised ARC that HSA of HSA's unique approach, it would have run afoul of FAR § 15.306(e)(2)(i).

Further, even if the Court finds error in the agency's evaluation related to ARC's



▮▮▮▮▮▮▮▮▮▮▮▮, ARC was not prejudiced by this evaluation. *System Studies & Simulation*, 22 F.4th at 997 (prejudice is a required element). ARC's TEP was still $▮▮▮ higher than HSA's and ARC, itself, acknowledged that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. Tab 214 at AR35367. It is highly speculative to conclude that a change in ARC's ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ would have drastically improved its technical capability. Thus, ARC and HSA's technical proposals still would have been "roughly equivalent," but ARC's price constituted a price premium that was disproportionate to its technical capability.

### 2. USTC Conducted Equal Discussions With ARC

ARC also claims that the agency's discussions with ARC about the ▮▮▮▮▮▮▮ of its proposal were unequal. ARC Br. at 30-33. ARC alleges that USTC identified some but not all areas of ARC's approach that it evaluated as ▮▮▮▮▮▮▮▮. *Id.* This misstates both the agency's requirements under the FAR and the RFP and as well as the agency's evaluation and the ENs it issued to ARC.

As discussed at pages 12-13, USTC was not required to inform ARC of all areas where its proposal demonstrated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or otherwise "spoon-feed an offeror as to each and every item" that could improve a proposal. *Standard Comms.*, 101 Fed. Cl. at 723.

Here, the RFP notified offerors that "proposals shall not rephrase or restate the

████████████████████████████████████ ████████████████

Government's requirements but shall provide convincing rationale to address how the Offeror intends to meet these requirements." Tab 7 at AR197. The instances ARC identifies as notice of its ████████████████████████ were actually USTC advising ARC of areas that the agency found ARC had ████████████████████. Tab 198c at AR31472-31473, AR31477-314478, AR31484-31490, AR31492-31496. Providing notice in these instances is distinct from providing general notice of areas where ARC's proposal was determined to demonstrate ████████████████████. USTC utilized the same approach during discussions with HSA. Tabs 198p-198s. As such, ARC's allegation that the agency engaged in misleading discussions is false. USTC never committed itself to notify offerors of areas where their proposals were determined to demonstrate █ ████████████████. Thus, the agency's decision not to provide a comprehensive list of requirements in which an offeror demonstrated ████████████████ ████████ is not misleading.

Further, ARC asserts USTC applied its approach unequally, because the agency informed CGSL of a higher percentage of times that its approach was ████████. ARC Br. at 32. But this argument misconstrues USTC's action with respect to these approaches. As explained above, USTC merely advised the offerors of areas in which their proposals ████████████████ ████████. This approach was taken consistently with respect to all three offerors. Thus, ARC cannot establish error, much less prejudicial error. *Statistica*, 102 F.3d at 1581.

### E. The Agency Conducted A Reasonable Best Value Decision

ARC argues that USTC's best-value decision is flawed, because of how the agency conducted its comparative analysis of the offerors' technical SFs. ARC Br. at 33-34. ARC's argument is without merit. ARC objects to the manner in which the agency performed its

tradeoff analysis. *Id.* But as explained at page 25 above, a protestor's disagreement with the manner in which the agency conducted its tradeoff analysis does not establish that the agency's analysis lacked a rational basis. ARC's remaining argument that the agency's tradeoffs were based upon an irrational evaluation have already been refuted above.

**F. USTC Rationally Evaluated HSA's Responsibility**

ARC also asserts USTC did not perform a rational responsibility determination. ARC Br. at 35-38. The GAO carefully evaluated and correctly concluded the agency appropriately considered all relevant information and rationally found HSA responsible. Tab 251 at AR37526-529.

Responsibility determinations are a matter of "business judgment" and COs are "generally given wide discretion" in making them. *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358 (Fed. Cir. 2002). Although the CO must possess "enough information to make a responsibility determination, the [CO] is the arbiter of what, and how much, information he needs." *John C. Grimberg Co., Inc. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 2002). The agency's responsibility determination is entitled to a "presumption of regularity," and the plaintiff "necessarily bears a heavy burden" in seeking to rebut the presumption of regularity. *Impresa Construzioni*, 238 F.3d at 1338.

Here, the agency went step-by-step through FAR § 9.104 to explain its responsibility determination. Tab 204. With respect to the issue of integrity and business ethics, the agency analyzed HSA's ownership structure, including having assessments conducted of, among others, "Sun Capital Partners." *Id*. at AR34713. And USTC rationally concluded there were no responsibility concerns relating to Sun Capital Partners. Sun Capital Partners is a United States based private equity firm into which numerous other funds invest capital from a range of both

domestic and foreign investors. Tab 204c at AR35137. Sun Capital Partners' fund, in turn,

invests money in, *inter alia*, Tier One Relocation LLC, which is one of the ▮▮ joint venture

partners of HSA. *Id.* USTC found no nexus between Sun Capital Partners' fund, and any

possible foreign-based influence, because of the wide distribution of both investors (more than

▮ alone in the source fund) and the entities receiving investments from this fund. *Id.* The

combination of these factors, the agency concluded, effectively eliminates any realistic

possibility of foreign control or influence over Sun Capital Partners, let alone Tier One

Relocation LLC, as recipient of capital from the fund. *Id.* Further, the agency concluded that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ *Id.* Under FAR § 2.101, a principal is defined as an "officer,

director, owner, partner, or person having primary management or supervisory responsibilities

within a business." Thus, the agency rationally concluded that, because Sun Capital Partners

does not have any management or supervisory responsibilities over HSA, it does not satisfy the

FAR's definition of "principal."

ARC points to a definition of "highest-level owner" from FAR Part 4 to argue that Sun

Capital Partners is a principal of HSA. ARC Br. at 37 (citing FAR § 4.1801). The definition of

"highest-level owner" from FAR Part 4, however, has no applicability in this protest. FAR Part

4 "prescribes policies and procedures relating to the administrative aspects of contract execution,

contractor-submitted paper documents, distribution, reporting, retention, and files." FAR §

4.000. FAR Subpart 4.18, Commercial and Government Entity Code, prescribes policies and

procedures for identification of commercial and government entities through the use of the

Commercial and Government Entity (CAGE) code system. The definitions in FAR § 4.1801

apply only to subpart 4.18 governing CAGE codes. Conversely, FAR Part 2, which is what

USTC applied, defines words and terms that are frequently used in the FAR; provides cross-references to other definitions in the FAR of the same word or term; and provides for the incorporation of these definitions in solicitations and contracts by reference. FAR § 2.000. Thus, USTC correctly analyzed HSA's ownership structure.

Moreover, the agency explained that, in addition to Sun Capital Partners not being a principal of HSA under FAR Part 2, the wide distribution of both investors and the entities Sun Capital Partners invests in eliminates any realistic possibility of foreign influence of Sun Capital Partners, let alone Tier One Relocation, as recipient of capital from the fund. Tab 204c at AR35137-35138. This is a rational and well-reasoned conclusion.

Finally, ARC references vague concerns about national security risks relating to HSA winning this procurement. ARC Br. at 37-38. But this is not a classified contract, and, as discussed above, there is no identified risk relating to HSA's ownership. The RFP relates to relocation services for household goods for military members, civilian employees, and their families. Tab 134b1 at AR21077 and AR21084. Simply put, there are no aspects of this contract that implicate national security concerns.

## IV.    Injunctive Relief Is Not Warranted

Neither ARC nor CGSL have demonstrated it is entitled to an injunction. And an "injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). Even if either plaintiff were to succeed on the merits in this case, before ordering a permanent injunction the Court must consider: (1) whether plaintiffs "will suffer irreparable harm if the court withholds injunctive relief;" (2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief;" and (3) "whether it is in the public interest to grant

injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (2004) (citations
omitted).

As demonstrated above, neither plaintiff can succeed on the merits and that factor alone
"precludes the possibility of an injunction." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982,
999 n.13 (Fed. Cir. 2018). Nor have plaintiffs established irreparable harm. ARC contends that
it will be harmed because it ███████████████████████████████████████████

████████  ARC Br. at 39. But ARC can obtain other business opportunities, nor does it explain
why the Government should be responsible for its business decisions. The RFP specifically
disclaims responsibility for any costs incurred with an offeror's ████████████████ . Tab
269.3 at AR50811. Otherwise, plaintiffs' allegations of irreparable harm amount to a lost
opportunity to compete for the GHC which is the type of claim raised in every bid protest. ARC
Br. at 38-39; CGSL Br. at 38; *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001) ("Mere
allegations of an unfair competitive bidding process are not sufficient to demonstrate an
irreparable injury," because "if they were [] any bid protest would involve an irreparable
injury[.]"); *see also CRA Assocs. v. United States*, 103 Fed. Cl. 23, 26 (2012) (rejecting
plaintiff's allegations of irreparable harm).

Finally, any purported harm to the plaintiffs is outweighed by the harm to the
Government and an injunction is not in the public interest. Thus, the balance of harms does not
favor the plaintiffs. The plaintiffs incorrectly contend that the Government will not suffer any
meaningful harm because the Government has an existing contract vehicle, the Defense Personal
Property Program (DP3). ARC Br. at 39-40; CGSL Br. at 38-39. As explained in the attached
declaration of General Jacqueline D. Van Ovost, a four-star General who is the Combatant
Commander of USTC, (Van Ovost Dec.), however, DP3 is a flawed program that has caused and

continues to cause substantial harm to Servicemembers and their families. *Id.* at ¶¶ 1-4 9.  The problems with the DP3 program are so extensive that military personnel have circulated a change.org petition with over 100,000 signatures and there have been several Congressional inquiries. *Id.* at ¶¶ 5-6.  Indeed, in 2020, the DoD issued over 35,000 letters of warning to the moving companies reflecting poor performance for Servicemembers and their families. *Id.* at ¶ 3.  Because it will "fundamentally . . . restructure" DoD's relationship with the private industry, DoD has concluded that the GHC program is the best way to solve the many issues that have plagued the DP3 program and made Servicemembers' and their families' lives more stressful during the already stressful time of moving. *Id.* at ¶¶ 3, 7.  Further the Government will realize approximately $▊▊▊▊ per year in cost savings related to the new contract. *Id.* at ¶ 8.  The harm to the Government if it cannot proceed with the award to HSA thus outweighs any alleged harm to ARC and CGSL who can compete for other contracts and opportunities.

As demonstrated above, the public interest weighs in favor of an improved move experience for Servicemembers and their families.  Van Ovost Dec. at ¶ 12. Also, there is a strong public interest in avoiding interference with the procurement process. *LABAT-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 581 (2005).  Thus, to the extent the Court finds prejudicial error, the Court should still allow this award to go forward while the agency endeavors to fix the error so that injunctive relief will be narrowly tailored.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's cross-motion for judgment on the administrative record and deny plaintiffs' motions.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

s/Elizabeth Anne Speck
ELIZABETH ANNE SPECK
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 307-0369
Facsimile:  (202) 514-7965

ERIKA WHELAN RETTA
Chief, Bid Protests
AARON WEAVER
Trial Attorney
Commercial Litigation Field Support Center,
The Judge Advocate General's Corps,
United States Air Force
1500 W Perimeter Road, Ste 4100
Joint Base Andrews, MD 20762

OF COUNSEL:
MILES K. KARSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Of Counsel:
ROBERT J. DEPKE
TODD P. FEDERICI
ADAM J. KOUDELKA
PETER B. RIES
Attorney-Advisors
Office of the Staff Judge Advocate
United States Transportation Command

Dated:  June 16, 2022

Attorneys for Defendant