Redacted Version

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

|  |  |
|---|---|
| CONNECTED GLOBAL SOLUTIONS, LLC )<br><br>and )<br><br>AMERICAN ROLL-ON ROLL-OFF<br>CARRIER GROUP INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>HOMESAFE ALLIANCE LLC, )<br><br>Defendant-Intervenor. ) | Case No. 1:22-cv-00292<br>Judge David A. Tapp<br><br>████████████ |

---

**DEFENDANT-INTERVENOR HOMESAFE ALLIANCE LLC'S MEMORANDUM OF
LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND IN SUPPORT OF CROSS-MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD**

Dated:  June 16, 2022

*Of Counsel:*

Stuart W. Turner
Sonia Tabriz
Amanda J. Sherwood
Thomas A. Pettit
Trevor Schmitt
Nicole Williamson
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Craig A. Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5722
Fax:  (202) 942-5999

*Attorney of Record for HomeSafe Alliance LLC*

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.    QUESTIONS PRESENTED.................................................................... 3

III.   STATEMENT OF FACTS .................................................................... 3

IV.   STANDARD OF REVIEW .................................................................... 6

V.    ARGUMENT ............................................................................................ 7

      A.     ARC Lacks Standing To Challenge The HomeSafe Evaluation. ........................... 7

      B.     HomeSafe Did Not Misrepresent The FedRAMP Authority To Operate Status Of Its ▇▇▇▇▇▇ Solution. [ARC § VI.A]............................... 8

            1.    The Federal Circuit Does Not Recognize Offeror Misrepresentation (Absent Agency Involvement or Indicia on the Face of a Proposal, Both Unalleged Here) as an APA Bid Protest Cause of Action. ................ 9

            2.    HomeSafe's Proposal Does Not Contain A Misrepresentation................ 11

                  a.    HomeSafe Did Not Make a False Representation. ........................ 12

                  b.    ARC Has Not Established Materiality........................................... 16

                  c.    No Evidence of Intent to Mislead Exists. ..................................... 19

            3.    The Challenged Proposal Statement (Even if Wrong, Which It is Not) Did Not Prejudice ARC and No Basis Exists to Disqualify HomeSafe................................................................................................. 21

      C.     Neither Protester Presents A Legitimate Basis To Disrupt The Agency's Thorough Technical Evaluation. [ARC § C; CGSL §§ A, B, D, E].................... 24

            1.    The Agency's Prior, Flawed Technical Evaluation Has No Relevance to the Agency's Latest Evaluation. [CGSL § B] .................... 24

            2.    The Agency Followed the RFP's Evaluation Scheme. [CGSL § A]........ 26

            3.    The Agency Did Not Disparately Evaluate the Offerors. [CGSL § D] ........................................................................................................ 29

            4.    The Agency Reasonably Evaluated HomeSafe's Proposal. [CGSL § E; ARC § VI.C]................................................................................. 32

                  a.    CGSL's Subfactor 2 Challenge to HomeSafe's Proposal

i

Fails. ................................................................................ 32

  b. ARC Errantly Challenges HomeSafe's Subfactor 1 Evaluation. ............................................................... 35

 5. The Agency Reasonably Evaluated ARC Under Subfactor 3. ............... 36

 6. The Agency Properly and Equally Evaluated ARC Under Subfactor 4 ............................................................................... 38

 7. Neither CGSL nor ARC Can Demonstrate Prejudice From the Alleged Technical Protest Arguments. [CGSL Section H] ................ 41

D. The Agency Conducted Meaningful And Equal Discussions With ARC And CGSL. [ARC § VI.D; CGSL § C] ................................................... 42

 1. The Agency Did Not Have to Engage in Comparative Discussions. ....... 42

 2. The Agency Did Not Have to Discuss All ████████ ARC Features. ........ 45

 3. The Agency Did Not Assign Weaknesses to CGSL's Proposal Meriting Additional Discussions. ............................................. 47

E. ARC's Price Evaluation Challenge Lacks Merit. [ARC § VI.B] ........................ 48

 1. ARC Waived Its Challenge to the Agency's Price Methodology. ........... 48

 2. ARC Premises Its Price Argument on a Misreading of the FAR. ........... 50

 3. The Alleged Price Evaluation Error Did Not Prejudice ARC. ................ 51

  a. ARC's Prejudice Claims Are Speculative. ................................... 51

  b. ARC Admitted It ████████████████████████ . ................ 52

  c. Unreasonably High Non-TEP Prices Would Not Render the HomeSafe or CGSL Proposals Unacceptable. .............................. 52

  d. The Unbalanced Pricing Analysis Did Not Prejudice ARC. ........ 53

F. The Agency's Best Value Determination Reflects A Reasonable Exercise Of Agency Discretion. [ARC § VI.E and CGSL § F] .......................... 54

G. The Agency Reasonably Considered HomeSafe's Responsibility. [ARC § VI.F] ............................................................................. 55

H. Neither Protester Is Entitled To An Injunction. ................................... 60

VI. CONCLUSION ................................................................. 60

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advanced Data Concepts, Inc. v. United States,*
216 F.3d 1054 (Fed. Cir. 2000)..................................................................................6

*Akal Sec., Inc. v. United States,*
87 Fed. Cl. 311 (2009)...........................................................................................60

*Alaska Structures, Inc. v. United States,*
144 Fed. Cl. 80 (2019).......................................................................................11, 19

*Alfa Laval Separation, Inc. v. United States,*
175 F.3d 1365 (Fed. Cir. 1999)...............................................................................41

*Algese 2 s.c.a.r.l. v. United States,*
127 Fed. Cl. 497 (2016) .........................................................................................23

*Allied Materials & Equip. Co., Inc. v. United States,*
81 Fed. Cl. 448 (2008) ...........................................................................................52

*Allied Tech. Grp., Inc. v. United States,*
649 F.3d 1320 (Fed. Cir. 2011)..........................................................................19, 16

*American Relocation Connections, LLC v. United States,*
147 Fed. Cl. 608 (2020) .........................................................................................28

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,*
568 U.S. 455 (2013).................................................................................................20

*Aurotech, Inc.,*
B-413861.4, June 23, 2017, 2017 CPD ¶ 205.........................................................25

*Banknote Corp. of Am., Inc. v. United States,*
365 F.3d 1345 (Fed. Cir. 2004)..................................................................................6

*Banknote Corp. of Am., Inc. v. United States,*
56 Fed. Cl. 377 (2003), *aff'd* 365 F.3d 1345 (Fed. Cir. 2004).................................45

*Bannum, Inc. v. United States,*
404 F.3d 1346 (Fed. Cir. 2005)...............................................................................41

*Bender Shipbuilding & Repair Co.,*
297 F.3d 1358 (Fed. Cir. 2002)...............................................................................56

*Blue & Gold Fleet, LP v. United States,*
    70 Fed. Cl. 487 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007)....................................11, 12, 16

*Chenega Healthcare Servs., LLC v. United States,*
    138 Fed. Cl. 644 (2018) ....................................................................................................60

*Coastal Int'l Sec., Inc. v. United States,*
    93 Fed. Cl. 502 (2010) ......................................................................................................55

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) ............................................................................................9

*COMINT v. United States,*
    700 F.3d 1377 (Fed. Cir. 2012)...........................................................................................8

*CRAssociates, Inc. v. United States,*
    102 Fed. Cl. 698 (2011), *aff'd*, 475 F. App'x 341 (Fed. Cir. 2012) ...........................25, 42, 47

*Cube Corp. v. United States,*
    46 Fed. Cl. 368 (2000) ......................................................................................................42

*Dell Fed. Sys., L.P. v. United States,*
    906 F.3d 982 (Fed. Cir. 2018)............................................................................................60

*DZSP 21, LLC v. United States*
    137 Fed. Cl. 38 (2018) ......................................................................................................26

*Enzo APA & Son, Inc. v. Geapag A.G.,*
    134 F.3d 1090 (Fed. Cir. 1998)...........................................................................................8

*Eskridge & Assocs. v. United States,*
    142 Fed. Cl. 410 (2019), *aff'd*, 955 F.3d 1339 (Fed. Cir. 2020)..........................................25

*Eskridge & Assocs. v. United States,*
    955 F.3d 1339 (Fed. Cir. 2020)...........................................................................................7

*Fulcra Worldwide, LLC v. United States,*
    97 Fed. Cl. 523 (2011) ......................................................................................................19

*Glenn Def. Marine (ASIA), PTE Ltd. v. United States,*
    720 F.3d 901 (Fed. Cir. 2013)..................................................................................6, 27, 55

*Golden IT, LLC v. United States,*
    157 Fed. Cl. 680 (2022) ....................................................................................................10

*Goldschmitt & Assoc., LLC v. United States,*
    149 Fed. Cl. 401 (2020) ....................................................................................................38

iv

*GTA Containers, Inc. v. United States,*
 103 Fed. Cl. 471 (2012) ...................................................................................................20, 23

*Guardian Moving & Storage Co., Inc. v. United States,*
 122 Fed. Cl. 117 (2015) ...........................................................................................................10

*Harmonia Holdings Grp. v. United States,*
 152 Fed. Cl. 97 (2021) ...........................................................................................................8, 41

*Harmonia Holdings Grp. v. United States,*
 153 Fed. Cl. 245 (2021) ..............................................................................................................37

*Honeywell, Inc. v. United States,*
 870 F.2d 644 (Fed.Cir.1989)......................................................................................................16

*Huffman Bldg. P, LLC v. United States,*
 152 Fed. Cl. 476 (2021) (Tapp, J.).............................................................................................10

*HVF West, LLC v. United States,*
 846 Fed. App'x 896 (Fed. Cir. 2021)........................................................................................7, 8

*In re Informatics, Inc.,*
 B-188566, Jan. 20, 1978, 78-1 CPD ¶ 53 ..................................................................................23

*Intuitive Rsch. & Tech. Corp. v. United States,*
 157 Fed. Cl. 1 (2021) .................................................................................................................29

*JWK Int'l Corp. v. United States,*
 49 Fed. Cl. 371 (2001), *aff'd* 279 F.3d 985 (Fed. Cir. 2002)....................................................42

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992).....................................................................................................................7

*Marcola Meadows VA LLC,*
 B-407078.2, et al., June 4, 2013, 2013 CPD ¶ 141 ...................................................................26

*Mortg. Contracting Servs. v. United States,*
 153 Fed. Cl. 89 (2021) ...............................................................................................................35

*MSC Indus. Direct Co. v. United States,*
 126 Fed. Cl. 525 (2016) .............................................................................................................48

*MVS USA, Inc. v. United States,*
 111 Fed. Cl. 639 (2013) ...............................................................................................................8

*Newimar S.A. v. United States,*
 No. 21-cv-1897, 2022 WL 1592813 (Fed. Cl. May 12, 2022) ..................................................55

*Northrop Grumman Corp v. United States,*
    50 Fed. Cl. 443 (2001) ..................................................................................11, 19

*Office Design Grp. v. United States,*
    951 F.3d 1366 (Fed. Cir. 2020).....................................................29, 31, 39

*Origin Medsystems, Inc. v. General Surgical Innovations, Inc.,*
    215 F.3d 1344 (Fed. Cir. 1999)...................................................................20

*Per Aarsleff A/S v. United States,*
    829 F.3d 1303 (Fed. Cir. 2016).....................................................................10

*Perspecta Enter. Sols. LLC v. United States,*
    151 Fed. Cl. 772 (2020) ..................................................................................17

*Phoenix Mgmt., Inc. v. United States,*
    107 Fed. Cl. 58 (2012), *aff'd*, 516 F. App'x 927 (Fed. Cir. 2013) .........................17

*Plan. Rsch. Corp. v. United States,*
    971 F.2d 736 (Fed. Cir. 1992)..............................................................10, 20, 23

*Poplar Point RBBR, LLC v. United States,*
    147 Fed. Cl. 201 (2020) ..................................................................................28

*SDS Int'l v. United States,*
    48 Fed. Cl. 759 (2001) ....................................................................................25

*Sealift, Inc. v. United States,*
    82 Fed. Cl. 527 (2008) ....................................................................................12

*Sotera Def. Sols., Inc. v. United States,*
    118 Fed. Cl. 237 (2014) ..................................................................................25

*Southgulf, Inc. v. United States,*
    30 Fed. App'x 977 (Fed. Cir. 2002).................................................................53

*Statistica, Inc. v. Christopher,*
    102 F.3d 1577 (Fed. Cir. 1996)..........................................................................7

*SupplyCore Inc. v. United States,*
    Case No. 12-1861C, 2021 WL 6340188 (Fed. Cl. Dec. 28, 2021)........................46

*Supreme Foodservice GmbH v. United States,*
    112 Fed. Cl. 402 (2013) ........................................................................19, 22, 56

*Synaptek, Inc. v. United States,*
    141 Fed. Cl. 443 (2018) ..................................................................................56

*Synetics, Inc. v. United States,*
  45 Fed. Cl. 1 (1999) ................................................................................................................20

*Sys. Stud. & Simulation, Inc. v. United States,*
  22 F.4th 994 (Fed. Cir. 2021) .................................................................................22, 41, 51

*Sys. Stud. & Simulation, Inc. v. United States,*
  No. 18-1494C, 2019 WL 912277 (Fed. Cl. Jan. 22, 2019)............................................. *passim*

*Tech. Innovation All. LLC v. United States,*
  149 Fed. Cl. 105 (2020) .......................................................................................25, 27, 54, 55

*Thoma-Sea Marine Constr., LLC v. United States,*
  141 Fed. Cl. 185 (2018) ...........................................................................................................10

*Ultra Electronics Ocean System Inc. v. United States,*
  139 Fed. Cl. 517 (2018) ...........................................................................................................26

*Vertex Aerospace, LLC v. United States,*
  No. 20-700C, 2020 WL 5887750 (Fed. Cl. Sept. 21, 2020) ...................................................10

## Statutes

5 U.S.C. § 706(2)(A)...............................................................................................................6, 9

28 U.S.C. § 1491(b) ...........................................................................................................6, 7, 9

31 U.S.C. § 3554(b)(1) ...........................................................................................................16

## Other Authorities

FAR 15.306..................................................................................................................43, 45, 50

FAR 15.403-1 ..................................................................................................................50, 51

FAR 15.404-1 ....................................................................................................2, 41, 50, 51, 53

Restatement (Third) of Torts: Liab. For Econ. Harm § 5 ..............................................................20

U.S. Court of Federal Claims Rule 54 .........................................................................................9

Defendant-Intervenor HomeSafe Alliance LLC ("HomeSafe") submits this Memorandum of Law in Opposition to the Motions for Judgment on the Administrative Record filed by Plaintiffs Connected Global Solutions, LLC ("CGSL") and American Roll-On Roll-Off Carrier Group Inc. ("ARC") and in Support of HomeSafe's Cross-Motion for Judgment on the Administrative Record.

## I.    INTRODUCTION

Following a mid-2020 contract award to ARC, GAO recommended that the United States Transportation Command ("TRANSCOM" or the "Agency") reopen the global household goods relocation services procurement, correct various procurement errors, and make a new award. The Agency took GAO's guidance seriously. The Agency reopened the competition, engaged in meaningful and equal discussions with all offerors, undertook an exhaustive evaluation of the technical and price proposals (documented by thousands of pages), prepared a thorough comparative assessment of the relative advantages and disadvantages of each proposal, and made a new award decision to HomeSafe. CGSL and ARC, nevertheless, filed plenary protests at GAO. GAO issued detailed decisions denying both protests. This Court too should deny both protests.

First, ARC lacks standing to challenge the Agency's evaluation of HomeSafe (at a minimum). ARC ranked ▮▮▮▮▮▮▮▮▮▮ due to its outsized price. ARC's Amended Complaint allegations against CGSL (the intervening offeror) cannot cure this defect.

Second, ARC's misrepresentation claims fail. ARC insists HomeSafe told the Agency that ▮▮▮ holds a FedRAMP High Authorization To Operate ("ATO"). But HomeSafe never said that, and the Agency never thought it had. The statements ARC declares false tie directly to the online (still available) technical manuals of the third-party, market-leading solution provider. The Agency's technical expert has confirmed the accuracy of the statements (and the solution). The HomeSafe subcontractor that made the statement has explained the statement. And CGSL (which

proposed ▮▮▮▮▮▮▮) independently made a near identical statement. GAO reviewed this matter closely and found no misrepresentation. Regardless, the RFP does not even contain a FedRAMP requirement rendering the issue a legal dead letter.

Third, neither ARC nor CGSL have identified any basis to overturn the Agency's exhaustive technical evaluation. CGSL (ignoring the law on reevaluations) seeks to reinstate findings from a prior evaluation CGSL itself attacked as unreasonable, while nitpicking discretionary Agency findings in the new record and claiming unequal treatment where none exists. ARC too invites the Court into the minutiae of the procurement process demanding (for example) downgrades because HomeSafe's proposal purportedly did not specifically mention two of the hundreds of PWS requirements. Even should the Court undertake the reevaluation demanded, such arguments fail because HomeSafe submitted an approach that (contrary to ARC's contrivance) addressed the PWS requirements. Regardless, ARC fails against its own standards.

Fourth, both protesters challenge the Agency's conduct of discussions. The record confirms that the Agency (a) engaged in full and appropriate discussions with ARC, including regarding the issues ARC now claims went unmentioned and notwithstanding ARC's claims of unequal treatment, and (b) engaged in full and meaningful discussions with CGSL, notwithstanding CGSL's (legally meritless) demands that the Agency identify every aspect of CGSL's proposal that suffered in comparison to the winning HomeSafe offer.

Fifth, ARC challenges the Agency's price evaluation, declaring the Agency's price reasonableness method flawed. This argument is untimely, as the evaluation methodology ARC challenges here has remained unchanged since the initial round. Regardless, the bulk of ARC's price challenge rests on its misunderstanding of FAR 15.404-1. The Agency conducted a fulsome, proper price evaluation of the offerors.

Sixth, both protesters take issue with the Agency's best value trade-off, arguing variously that the Agency had to accept the cheapest proposal or a pay the premium associated with a higher rated proposal.  These (conflicting) arguments disregard the discretion due the Agency.

Finally, ARC twists the report of the Agency's responsibility determination consultant Exiger.  But, the Agency assessed the Exiger report and found HomeSafe responsible.  Where the Agency assesses information regarding responsibility, the Court will not disturb the determination.

Neither protest provides any basis to overturn the award to HomeSafe.

## II.    QUESTIONS PRESENTED

1.    Whether ARC has standing to challenge the Agency's evaluation of HomeSafe.

2.    Whether the Agency reasonably evaluated the statement in HomeSafe's proposal that "█████ has achieved FedRAMP High compliance."

3.    Whether the Agency reasonably evaluated the offerors' technical proposals.

4.    Whether the Agency reasonably evaluated ARC's price proposal.

5.    Whether the Agency conducted meaningful and equal discussions with the offerors.

6.    Whether the Agency's best-value determination was rational.

7.    Whether the Agency reasonably found HomeSafe a responsible offeror.

8.    Whether ARC or CGSL has established entitlement to a permanent injunction.

## III.    STATEMENT OF FACTS[1]

TRANSCOM issued Solicitation No. HTC711-19-R-R004 (the "Solicitation" or "RFP") seeking a contractor to provide complete, global household goods relocation services worldwide for Department of Defense ("DoD") servicemembers, DoD civilians, and U.S. Coast Guard

---

[1] GAO's decisions and the Contracting Officers' Statements of Facts submitted in connection therewith amply summarize the factual and procedural history of this substantial procurement. (Tabs 222.a, 251, 258.a, 267.)  HomeSafe provides an abbreviated summary here.

members. The RFP seeks a contractor (among other things) to handle movement and storage-in-transit of household goods, subcontract with service providers to execute moves, counsel servicemembers on the move process, and resolve claims. (*See* Tab 7.)

The RFP requires the Agency to award the contract to the offeror whose proposal presents the best value based on four evaluation factors: Business Proposal (pass/fail), Past Performance (pass/fail), Technical Capability (rated), and Price (not rated). (*Id.* at AR135.) Technical Capability and Price are weighted equally. (*Id.*) The Technical Capability factor comprises four equally weighted subfactors (Operational Approach, Capacity and Subcontractor Management, Transition/Volume Phase-In, and IT Services) to which the Agency must assign ratings ranging from unacceptable to outstanding. (*Id.* at AR 135-36.) The Agency must assess offerors' pricing for fairness, reasonableness, completeness, and balance. (*Id.* at AR138). Offerors must submit four proposal volumes tracking the factors. (*Id.* at AR197.)

TRANSCOM initially awarded the contract to ARC in mid-2020. The ARC award was severely flawed and GAO sustained protests filed by CGSL and HomeSafe on a variety of grounds. (Tabs 118, 133.) The record here documents the Agency's extensive efforts to correct the shortcomings of the initial 2020 award process. The Agency changed the evaluation team, trained the evaluation team, and directed the team "not to consider the previous technical evaluation, to the point that the technical team did not have access to any previous source selection documentation." (Tab 269.236 at AR58106.) This process culminated in an over 1000-page Source Selection Evaluation Board ("SSEB") Report, a more than 2000-page Price Analysis, an over 500-page Source Selection Advisory Council ("SSAC") Report, a 20-page Source Selection Advisory Council ("SSAC") Report, and a 20-page Source Selection Decision Document ("SSDD"). (*See* Tabs 198, 200, 201.)

The SSEB first documented whether, for each PWS requirement, each proposal demonstrated an adequate, thorough, or exceptional "approach and understanding," detailing for each individual requirement the responsive portions of the proposal and the team's reasoning for the assigned approach rating. (Tabs 198c-f, 198j-m, and 198p-s.) Next, the SSEB separately examined the strengths, weaknesses, significant weaknesses, deficiencies and discussion items assigned to each offeror under each subfactor. (*Id.*) The SSAC took the SSEB's 1000-page report and conducted an independent comparative analysis of each offeror. (Tab 200 at AR34285-91 (comparing ARC and CGSL), AR34465-72 (comparing ARC and HomeSafe), AR34644-52 (comparing HomeSafe and CGSL).) After this exhaustive analysis, the SSAC concluded that HomeSafe's proposal offered the best value. (*Id.* at AR34652-53.)

The Source Selection Authority ("SSA"), in turn, reviewed the SSEB and SSAC Reports and detailed his own independent best-value determination in the SSDD. (Tab 201 at AR34654.) The SSA agreed with the following ratings assigned to the three remaining offerors:

| Offeror | Business Proposal Rating | Operational Approach Technical Sub-factor 1 | | | Capacity & Sub Mngt Technical Sub-factor 2 | | | Transition/Volume Phase-In Technical Sub-factor 3 | | | IT Services Technical Sub-factor 4 | | | Past Perf Rating | Total Evaluated Price (TEP) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Color Rating | Adjectival Rating | Risk Rating | Color Rating | Adjectival Rating | Risk Rating | Color Rating | Adjectival Rating | Risk Rating | Color Rating | Adjectival Rating | Risk Rating | | |
| ARC | A | | | Low | | | Low | | | Low | | | Low | A | |
| CGSL | A | | | Low | | | Low | | | Low | | | Low | A | |
| HomeSafe | A | | | Low | | | Low | | | Low | | | Low | A | |

A = Acceptable; U = Unacceptable

(*Id.*) The SSA determined that although "ARC's Technical Proposal was superior to CGSL's Technical Proposal," ARC's ███████████████████████████ ███████████████████████████████████████████████ (*Id.* at AR34655 ████████) ███████████████████████████████████████████████ ) The SSA found that "ARC

5

████████████████████████████████████████████████
████████████████████████████████████████

and HomeSafe had roughly equivalent Technical Proposals" but that HomeSafe represented the better value given ARC's ███████ price premium. (*Id.* at AR34656 ██████████████ ██████████████████████████████████████████████) The SSA thus ██████████████████ ██████████████████ and found HomeSafe presented the best value: "HomeSafe undoubtedly represents the best value of the Government in this acquisition. Therefore, I have determined that HomeSafe's superior technical capability ███████████ outweighs the minimal cost difference." (*Id.* at AR34673.)

ARC and CGSL filed protests with GAO, which GAO denied. (Tabs 251 and 267.)[2]

## IV.    STANDARD OF REVIEW

This Court reviews bid protests pursuant to the Administrative Procedure Act ("APA") standard of review and must affirm an award unless the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004).

Arbitrary and capricious review "is highly deferential"—the Court must "sustain an agency action evincing rational reasoning and consideration of relevant factors," even if the Court disagrees with the agency. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). "The protestor bears the burden of proving that a significant error marred the procurement in question." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). This burden increases as the contracting officer's discretion increases, and thus the protester must overcome a heavier burden when challenging a negotiated, best-value procurement. *Id.* at 907-08. A protester also must prove competitive prejudice (i.e., but for the

---

[2] ARC and CGSL blend legal assertions and argument into their statements of fact. (*See* Dkt. 61-1 at 4-7; Dkt. 62 at 2-6.) HomeSafe addresses this in the appropriate argument sections *infra.*

error it had a substantial chance at award).  *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581

(Fed. Cir. 1996).

## V.    ARGUMENT

### A.    ARC Lacks Standing To Challenge The HomeSafe Evaluation.

ARC came ███████████████████████.  ARC received ███████████████ as

HomeSafe, but offered a ████████ higher price.  ARC had ████████████████ ████CGSL,

but presented a████████ premium over CGSL.  Recognizing this, the SSA identified ARC as

███████████████ and made the final decision in this procurement ████████████████

████.  (Tab 201 at AR34655-56.)  The name "ARC" does not appear after page three of the

SSDD.  (*Id.* at AR34657-34673.)  ARC, which submitted an overpriced proposal and has stated it

███████████████, lacks standing to challenge the Agency's evaluation of HomeSafe (as

opposed to ARC's own evaluation), if not the entire procurement.

In bid protest actions, the Tucker Act only grants this Court jurisdiction "to render

judgment on an action by an interested party."  28 U.S.C. § 1491(b)(1).  To establish standing to

advance a particular argument the protester must show that it would have a substantial chance for

award if the court sustained the argument.  *Eskridge & Assocs. v. United States*, 955 F.3d 1339,

1345-46 (Fed. Cir. 2020) (no standing due to██████████).  Here, any sustained challenge

by ARC to HomeSafe's evaluation would ██████████████.  *See HVF West, LLC v. United*

*States*, 846 Fed. App'x 896, 899-900 (Fed. Cir. 2021) (no standing due to ██████████rs).

ARC's initial Complaint did not challenge CGSL's status as ████████████████.  ARC's

Amended Complaint allegations belatedly added for the purpose of arguing standing do not change

the outcome.  As a general rule, the Court must determine the standing of a party to bring a claim

at the inception of the action.  *See  Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992)

("[S]tanding is to be determined as of the commencement of suit."); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998) (similar).

Regardless, as discussed *infra*, the Amended Complaint challenges ARC now brings against CGSL are concoctions for standing purposes. As here, the protester in *HVF West, LLC* sought to raise speculative and incomplete allegations against ▮▮▮▮▮▮▮, but the court confirmed that such allegations could not save the protester from the consequences of ▮▮ ▮▮▮▮▮▮. *Id.* at 898-99. ARC's Amended Complaint allegations, brought to address ARC's standing problem, do not present a serious challenge to CGSL.[3] Moreover, ARC (before GAO) affirmatively asserted that it ▮▮▮▮▮▮▮▮▮. (Tab 214 at AR35367.)

The Court, accordingly, should dismiss ARC Counts I, III, V, and VI, if not now then immediately upon denying ARC's challenges to its own evaluations. *COMINT v. United States*, 700 F.3d 1377, 1384 (Fed. Cir. 2012) (finding lack of standing based on marginal rating and rejecting remaining challenges); *MVS USA, Inc. v. United States*, 111 Fed. Cl. 639, 653 (2013).

**B.    HomeSafe Did Not Misrepresent The FedRAMP Authority To Operate Status Of Its ▮▮▮▮▮▮▮ Solution. [ARC § VI.A].**

ARC first contends that HomeSafe materially misrepresented the FedRAMP Authority To Operate status of ▮▮▮, HomeSafe's proposed ▮▮▮▮▮▮ solution, as part of the Subfactor 4 submission. Specifically, ARC alleges that when HomeSafe indicated ▮▮▮ had achieved "FedRAMP High <u>compliance</u>" (Tab 178b at AR28160), HomeSafe *actually meant* that ▮▮▮ held a formal FedRAMP <u>authorization to operate</u> at FedRAMP High, and that because "▮▮▮

---

[3] ARC cites *Harmonia Holdings Grp. v. United States*, 152 Fed. Cl. 97, 106 (2021) as support for its standing. (Dkt. 61-1 at 3-4.) Yet, the court in *Harmonia* found that the protester in that case could ▮▮▮▮▮▮▮▮▮▮▮ because the protester's price was lower, and thus any change to the technical scoring would require a new best value award. (*Id.*) Here, ARC is ▮▮▮ ▮▮▮▮▮▮▮ than CGSL, a premium that the Agency confirmed ▮▮▮▮▮▮▮ ▮▮▮▮ (Tab 201 at AR34655-56.) *Harmonia Holdings* does not apply.

has not gone through FedRAMP's assessment and <u>authorization</u> process at the High impact level,"

HomeSafe's proposal statement regarding ▓▓▓ compliance with FedRAMP High security

requirements purportedly is false. (Dkt. 61-1 at 16-17). ARC's challenge fails for several reasons.

        1.     **The Federal Circuit Does Not Recognize Offeror Misrepresentation (Absent Agency Involvement or Indicia on the Face of a Proposal, Both Unalleged Here) as an APA Bid Protest Cause of Action.**

ARC's claim that HomeSafe materially misrepresented ▓▓▓ FedRAMP ATO status fails

to state a viable bid protest cause of action given the absence of agency involvement.[4]

The Tucker Act and APA require the Court to review "agency action"—not actions of

private parties. 5 U.S.C. § 706(2)(A); 28 U.S.C. 1491(b)(4) ("the courts shall review the agency's

decision pursuant to the standards set forth in section 706 of title 5"); *Cohen v. United States*, 650

F.3d 717, 723 (D.C. Cir. 2011) (allowing actions by "persons aggrieved <u>by agency action</u>"

(quotations and citations omitted)).  Thus, a material misrepresentation claim premised on the

conduct of an offeror, absent any specific error on the part of the agency, fails to state a bid protest

claim.  The Federal Circuit's holding in *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320

(Fed. Cir. 2011) necessitates this outcome.  The protester in *Allied* (like here) argued that the

awardee misrepresented the compliance of its technical solution with Section 508 of the

Rehabilitation Act.  The Circuit denied the appeal, explaining:

> Where an offeror has certified that it meets the technical requirements of a proposal, the Contracting Officer is entitled to rely on such certification in determining whether to accept a bid, and the offeror's potential failure to comply with the proposal requirements is ordinarily "a matter of contract administration," which does not go to the propriety of accepting the bid.

---

[4] HomeSafe recognizes that the Court's discovery rulings (Dkts. 42, 67) address the misrepresentation cause of action and relevance of intent.  However, given the dispositive nature of these motions and Rule 54(b)'s admonition that the Court may revise its position on argument, HomeSafe necessarily further argues its position on misrepresentation and intent here.

9

*Id.* at 1330 (citation omitted). The court explained that unless the face of the proposal indicates a false statement, the agency may rely on and evaluate the proposal as written. *Id.* at 1331 (citation omitted); *see also Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1315-16 (Fed. Cir. 2016).

As this Court recently held: "[T]he procuring agency is required to rely on the offeror's representations about its ability to perform as included in its proposal unless the proposal contains information that calls those representations into serious doubt." *Huffman Bldg. P, LLC v. United States*, 152 Fed. Cl. 476, 485-87 (2021) (dismissing protest ground; holding that offeror's proposal facially complied with the solicitation requirements, that "[n]othing more was required for [the agency] to find the offer technically acceptable" and that whether the offeror ultimately performs consistent with its proposal representation is a "contract administration issue[ ]"); *see also Thoma-Sea Marine Constr., LLC v. United States*, 141 Fed. Cl. 185, 214 (2018) (citing *Allied* and denying plaintiff's claim). Instead, the veracity of an offeror's representation—i.e., whether the offeror can ultimately comply with its proposal—is a matter of contract administration that exceeds the confines of a bid protest. *See Guardian Moving & Storage Co., Inc. v. United States*, 122 Fed. Cl. 117, 138-39 (2015) ("'[I]f the agency accepts a proposal based on a misleading representation, the dispute is solely between the agency and the awardee' as a matter of contract administration." (citations and quotations omitted)); *Vertex Aerospace, LLC v. United States*, No. 20-700C, 2020 WL 5887750, at *7 (Fed. Cl. Sept. 21, 2020) (same).[5]

Leaving aside that the challenged statement is accurate, the Agency here could rely on

---

[5] The *Golden IT, LLC v. United States*, 157 Fed. Cl. 680 (2022) decision, addressing this issue in *dicta* and seemingly suspicious that a misrepresentation cause of action could exist under the APA, did not address the thread through caselaw regarding agency involvement. The Federal Circuit decision, however, on which *Golden IT* relies did involve agency conduct. *See Plan. Rsch. Corp. v. United States*, 971 F.2d 736, 740-41 (Fed. Cir. 1992) (holding "misrepresentations of [awardee], together with the 'massive' personnel substitutions made by [the contractor] after award with the acquiescence and assistance of [the agency], tainted the bidding and evaluation process'").

10

HomeSafe's representation regarding ▓▓▓▓ solution. HomeSafe committed (with detail and support) to perform consistent with the RFP and its proposal by delivering the ▓▓▓▓▓▓▓▓▓ provided by ▓▓▓▓ and other IT providers. (*See infra* Section V.B.2.) Whether ARC agrees with the accuracy of HomeSafe's proposal is inapposite in an APA case that turns on agency action.

## 2.    HomeSafe's Proposal Does Not Contain A Misrepresentation.

More fundamentally, the Court should deny ARC's misrepresentation allegation because ARC has failed to establish that HomeSafe materially misrepresented ▓▓▓▓ FedRAMP status. To the contrary, the record demonstrates that another offeror (also ▓▓▓▓▓▓▓▓▓▓▓▓▓ ) independently made similar statements based on the public technical material of ▓▓▓▓—a market leading provider. And the Agency's technical expert too has affirmed the accuracy of the challenged statements. All of which led GAO also to correctly determine no misrepresentation had occurred. Thus, ▓▓▓▓—the solution provider, another independent offeror, the Agency's expert, the HomeSafe team, and GAO all believe the challenged statement accurate; only ARC's lawyers believe it a misrepresentation.

"To establish a material misrepresentation, plaintiff must demonstrate that (1) [the awardee] made a false statement; and (2) the [agency] relied on that false statement in selecting [the awardee's] proposal for the contract award." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007). The plaintiff bears the burden to prove a material misrepresentation. *Id.* at 496. The protester also must prove that the offeror intended to make the misstatement. *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 84 (2019) ("The bidder must also intend the incorrect statement."); *Northrop Grumman Corp v. United States*, 50 Fed. Cl. 443, 468 (2001) (requiring proof of "willful" misrepresentation). ARC has not (and cannot) meet its burden of proof.

██████████████████████████████████████████████████████
████████████████████████████████████████████

### a.    HomeSafe Did Not Make a False Representation.

HomeSafe did not make a false representation.  A plaintiff must demonstrate that the awardee "made a false statement" to establish a material misrepresentation.  *Blue & Gold Fleet*, 70 Fed. Cl. at 495; *Sealift, Inc. v. United States*, 82 Fed. Cl. 527, 538 (2008).  As to falsity, ARC proclaims that "[b]ecause ███ has not gone through FedRAMP's assessment and authorization process at the High impact level, it has not 'achieved FedRAMP High compliance.'"  (Dkt. 61-1 at 10.)  ARC's flawed argument reflects its refusal to meaningfully engage with HomeSafe's proposal, the record evidence (including the evaluation record, the Agency expert's declaration, the contracting officer statements, the declaration of HomeSafe's subcontractor ████████, the ███ technical guidance, and even CGSL's proposal), and FedRAMP.  Each evidence that no misrepresentation has occurred here.

First, ARC continues to misstate the nature of what HomeSafe actually said in its proposal—conflating compliance with FedRAMP High requirements (which is what HomeSafe's statement and the Agency's evaluation address) and ███████FedRAMP Authority to Operate, to argue that HomeSafe misstated ██████ FedRAMP authorization.  The plain language of HomeSafe's statement establishes otherwise.  HomeSafe (in response to an Agency question) sought to explain that its IT solution ██████████████ is "████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████."  (Tab 178b at AR28160.)  HomeSafe further stated: "As ███ has achieved FedRAMP High compliance, HomeSafe is able to take advantage of ███████ Authority To Operate (ATO) to ensure its own FedRAMP compliance."  (*Id.*)

ARC contorts this latter statement to allege that HomeSafe misrepresented ██████ authorization under FedRAMP as High impact level, when ███ has only received a Medium

ATO. HomeSafe does not dispute that ▨ held a Moderate ATO at the time of proposal submission. HomeSafe *does* dispute ARC's mischaracterizations of HomeSafe's proposal statement as stating that ▨ held a FedRAMP High ATO. To the contrary, HomeSafe's proposal spoke to ▨ ability to comply with the FedRAMP High security requirements and HomeSafe's resultant ability to leverage ▨ features.

The Agency (the party supposedly misled) also squarely rejects ARC's misinterpretation of the statement: "[w]hile ▨ may not have been awarded an independent FedRAMP High designation, this does not mean that its ▨ solution do[es] not comply with FedRAMP High requirements." (*See* Tab 238 at AR37378 (Agency response to GAO).)

ARC ultimately does not question whether ▨ or its software comply with FedRAMP High requirements, nor does ARC dispute that HomeSafe can configure ▨ as ▨ describes in its public technical material to comply with FedRAMP High (*see infra*). ARC instead repeats its claim that HomeSafe misrepresented that ▨ holds a FedRAMP High ATO, despite that HomeSafe made no such statement. (Dkt. 61-1 at 10.) ARC misperceives a discrepancy between HomeSafe's proposal, which addresses ▨ ability to comply and support compliance with security requirements, and formal FedRAMP authorization.

Second, ▨ publicly available technical information regarding ▨ ability to comply with FedRAMP High security requirements confirms the accuracy of the HomeSafe statements. ▨ is a technology company that sells a market-leading ▨ solution. ▨ maintains a website from which customers like the Government and HomeSafe can learn about ▨ offerings. ▨ website describes the capabilities of the ▨ solution that HomeSafe proposed, including that the solution complies with FedRAMP High security requirements. Specifically, ▨ website explains that users can "▨

13

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and further, that ▇▇▇▇ solution is "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇." (Tab 239a at AR37422-23, AR37424-26.) This language confirms HomeSafe's statement that it can configure the ▇▇▇▇ solution to comply with FedRAMP High security requirements. (*Id.* at AR37422-23.)[6]

Based in part on these publicly available ▇▇▇▇ technical materials, GAO concluded, after extensive briefing on this issue, that HomeSafe's proposal does not contain a misrepresentation. (Tab 251 at AR37535.) A holding by this Court that an offeror cannot rely on the representations made by leading ▇▇▇▇▇▇▇▇▇▇▇▇▇ vendors in the federal marketplace would disrupt how companies prepare proposals in many federal procurements. Offerors would have to independently test the veracity of every component subsumed into a technological solution. ARC also has presented no basis to question the veracity of ▇▇▇▇ public technical guidance.

Third, the accuracy of HomeSafe's representation is further supported by the fact that the Agency understood what HomeSafe proposed and never expressed any belief that HomeSafe represented ▇▇▇▇ as holding a FedRAMP High ATO. The Agency understood that HomeSafe's proposal spoke to ▇▇▇▇ "FedRAMP compliance":



(Tab 198s at AR32306 (SSEB analysis).) The record thus confirms that the Agency understood

_____

[6] HomeSafe also affirmed it relied on ▇▇▇▇ public website regarding ▇▇▇▇ capabilities in its response to ARC's interrogatories. (Dkt. 47-2 at 2-3.)

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

the distinction between compliance and authorization.  The same is true of CGSL's statement regarding ▓▓ (discussed below), which the Agency also understood to mean '▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ not that ▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓, likewise ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓.  (Tab 198m at AR32003.)

Fourth, both the Agency expert and Contracting Officer have affirmed that they understood the HomeSafe statement, believe it reasonable, and do not find it a misrepresentation.  In addressing this matter, the Agency has confirmed that ▓▓ had obtained a DoD Impact Level 4 authorization at the time of proposal submission.  (Tab 268.427 at AR50454.)  DoD uses a separate security classification that is commensurate with the FedRAMP High security requirements.  Thus, although ▓▓ does not hold a FedRAMP High ATO, ▓▓ users can configure ▓▓ to comply with FedRAMP High.  (Tab 239a at AR37422, AR37424-26.)

As the Agency's technology expert explained: "By holding DoD IL4 PA status, ▓▓▓ *exceeds* FedRAMP Moderate security requirements and fundamentally meets the FedRAMP High requirements which are less stringent than the DoD-specific security requirements.  While ▓▓▓ designation on GSA's FedRAMP website has not changed from Moderate to High, HomeSafe's assertion that ▓▓ has achieved FedRAMP High compliance' is nevertheless reasonable."  (Tab 268.427 at AR50454 (emphasis in original).)  Indeed, one of the FedRAMP documents that ARC sought to submit into the record confirms that an IL4 authorization equates to a "FedRAMP HBL" or "FedRAMP High Baseline."  (Dkt. 47-6 at 17.)

Fifth, independently corroborating the accuracy of the statement, CGSL (a different competitor also using the ▓▓▓ ▓▓▓ solution) stated in connection with its ▓▓▓▓▓▓ proposal that ▓▓ features '▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓'" (Tab 196a at AR31360.)  ARC realizing the CGSL statement and the Agency's treatment

severely undermine its assertion, asserts (without any record support) that the Agency must have considered HomeSafe's statement in ███████████████. (Dkt. 61-1 at 1, 16 (claiming HomeSafe's statement "inflated CGSL's evaluation").) But the record reflects that the SSEB ████████████, noting that ████ has "██████████████" and describing ████ as a "████████████████████████████████████████████████." (Tab 198m at AR32003.)[7]

The record establishes HomeSafe's proposal statement as accurate. To borrow from GAO: "Because the record does not demonstrate [HomeSafe's proposal statement regarding ████] to be false, this allegation is denied." (Tab 251 at AR37535.)[8]

### b.    ARC Has Not Established Materiality.

ARC also has not established the materiality of the alleged misrepresentation. To prevail, ARC must prove that the Agency actually relied on a misrepresentation to select HomeSafe for award. *Blue & Gold Fleet*, 70 Fed. Cl. at 495. The record confirms HomeSafe's FedRAMP statement lacked legal materiality per the RFP and factual materiality per the evaluation.

First, a misrepresentation is only material if it affirms an offeror's ability to meet a specific evaluation criteria or solicitation requirement. For example, this Court declined to find a material

---

[7] ARC errantly cites the October 2021 SSAC comparative evaluation of HomeSafe and CGSL to support ARC's suggestion that the Agency evaluators in May 2021 ███████████████ CGSL based on HomeSafe's statement. (*Compare* Dkt. 61-1 at 16 *with* Tab 200 at AR 34606 (comparing CGSL and HomeSafe as part of the selection process).) The SSAC comparison unsurprisingly notes that both offerors proposed ████. The May 2021 SSEB cite offered by ARC does not support the proposition at all – in fact it contradicts the assertion by identifying the basis of ████████ as CGSL's revised proposal. (Tab 198m at 32003.)

[8] "Though GAO opinions are not binding on this court, Congress has 'empowered [the Comptroller General] to determine whether the solicitation, proposed award, or award complies with statute and regulation,' *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed.Cir.1989) (citing 31 U.S.C. § 3554(b)(1)), and this court may draw on GAO's opinions for its application of this expertise." *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011)

misrepresentation regarding the credentials of the awardee's proposed staff members because the solicitation did not contain a key personnel requirement; the Federal Circuit affirmed the holding. *See Phoenix Mgmt., Inc. v. United States*, 107 Fed. Cl. 58, 70 (2012), *aff'd*, 516 F. App'x 927 (Fed. Cir. 2013); *Perspecta Enter. Sols. LLC v. United States*, 151 Fed. Cl. 772, 781 (2020). Here, ARC has not identified a RFP or PWS requirement regarding FedRAMP authorization or compliance for that matter. To the contrary, the RFP and PWS provide that, under Subfactor 4—Information Technology (IT) Services, the Agency would evaluate several areas, including how the offeror would ensure secure access to its IT system and the offeror's ability generally to "provide and maintain an easy to use, secure, web-based, mobile-device compatible IT system." (Tab 7 at AR201; Tab 134b1 at AR21078.) The provisions do not mention FedRAMP. ARC, thus, cannot claim that HomeSafe's representation regarding ▮▮▮▮ compliance impacted the Agency's determination that HomeSafe can meet the RFP requirements. Indeed, if a requirement existed that offerors maintain a FedRAMP High ATO, the Agency would have ▮▮▮▮▮▮▮. (Tab 177b at AR27908 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮) The PWS merely required each offeror to explain secure access for its IT solution. (*See* Tab 7 at AR201; Tab 134b1 at AR21078.)

Second, the record establishes that—as a matter of fact—the Agency's consideration of ▮▮▮▮ compliance with FedRAMP did not materially impact the Agency's Subfactor 4 rating or overall award decision. ARC would have this Court believe that the procurement outcome turned on a single proposed ▮▮▮▮▮▮▮▮ solution descriptor. Not so.

In discussing HomeSafe's secure access "approach and understanding," the SSEB considered HomeSafe's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and

17

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

concluded: ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████ (Tab
198s at AR32306.)   The SSAC Report identifies even more considerations that informed the
Agency's evaluation, e.g., HomeSafe's "████████████   ████████████████████
████████." (Tab 200 at AR34425-27.) HomeSafe's explanation regarding these numerous features
informed the Agency's evaluation of HomeSafe's approach and understanding as ████████ (*Id.*
at AR34424; *see also* Tab 268.427 at AR50455 (Agency confirming: ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████).) By contrast, ARC
demonstrated an "████████ approach and understanding"—not because of the FedRAMP status of
its IT solution as compared with HomeSafe, but because ARC provided ████████████████
████████████████████████████████████████████████████████
████████████████████████ (Tab 200 at AR34424.)

ARC also makes much of the Agency's ████████████████████████████
████████████████████ . As a preliminary matter, the Agency properly ████████████
on the basis that "████ ████████████████████████████████████████████
████████████ i.e., ████████ compliance with the FedRAMP High security requirements,
not its Authority to Operate.  (Tab 198s at AR32330.)  Regardless, as the Contracting Officer
affirmed before GAO: "████ *has successfully implemented the heightened security controls and
achieved IL-4 compliance.* . . . Ultimately, as stated in the SSEB Report, the evaluation team
reasonably determined that HomeSafe's use of ████ ████████████████████████████

18

████████████████████████████████████████████████████
████████████████████████████████████

███████████████████." (Tab 268.437 at AR50706 (bold and italics in original).)

Similarly, the Agency's IT Expert (after countering ARC's misstatement contention) noted: "Even

without noting █████ FedRAMP High compliance, HomeSafe's approach to the Secure Access

requirement demonstrated ██████ approach." (Tab 268.427 at AR 50454.) Thus, ████████

does not arise from the purported misrepresentation about █████ Authority to Operate. And even

if the Court ███████████████ HomeSafe ████████████████████

██████████████ while ARC ██████. (Tab 200 at AR34428.)

The Agency's conclusion that ████████████████████████

███████████████████████████████████████████████

███████████████████ (*Id.* at AR34470.) ARC, thus, makes no showing that

the alleged misrepresentation was material to or even impacted the award decision, let alone that

the alleged misrepresentation prejudiced ARC. (*See infra* Section V.B.3.)

### c.   No Evidence of Intent to Mislead Exists.

HomeSafe's position is further bolstered by ample evidence demonstrating that HomeSafe

had no intention of making a misrepresentation to the Agency. On this point, ARC proclaims only

that "HomeSafe's intent is irrelevant." (Dkt. at 61-1 at 11.) The case law provides otherwise.[9]

This Court has held that a false statement must be intentional for the court to find a material

misrepresentation. *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 84 (2019) ("The

bidder must also intend the incorrect statement."); *Supreme Foodservice GmbH v. United States*,

112 Fed. Cl. 402, 424-25 (2013) (same); *Fulcra Worldwide, LLC v. United States*, 97 Fed. Cl. 523,

541 (2011) (same); *Northrop Grumman Corp v. United States*, 50 Fed. Cl. 443, 468 (2001) ("The

bidder must intend to make the misstatement. . . . [I]t is not something to be punished unless the

---

[9] *See supra* at n. 4.

█████████████████████████████████████████████████
████████████████████████████████████████

errors were willful and egregious.").[10]  Intent (or lack thereof) may be proven by circumstantial

evidence.  *Planning Research*, 971 F.2d at 742; *see also Synetics, Inc. v. United States*, 45 Fed. Cl.

1, 16 (1999) ("[I]ntentional misrepresentation occurs when a party makes a 'false statement of a

substantive fact . . . *made with intent to deceive or mislead.*'" (emphasis in original)).  No action

for misrepresentation lies without intent to mislead or culpability.[11]

      Here, the record contains no evidence, circumstantial or otherwise, that HomeSafe intended

to deceive or mislead the Agency.  As HomeSafe explained through a declaration from its IT

subcontractor ████,[12] which works with ███ in the commercial context as well, █████

prepared the proposal statement at issue and had no intention of misrepresenting ███ FedRAMP

status or capabilities.  ██████████ explains: "As related to the statements regarding ███

compliance with FedRAMP, <u>we drew the assertions from ████ website</u>."  (Tab 239a at

AR37422.)  The explanatory materials on ████ website make clear that users can configure its

---

[10] In *NetCentrics Corp. v. United States*, cited by ARC to avoid this requirement, the Court recognized the precedent and in fact confirmed a procuring agency's discretion to assess whether a proposal should be excluded on the basis of a material misrepresentation.  145 Fed. Cl. 158, 169-70 (2019) (holding that an agency could elect to potentially exclude a proposal with an intentional or inadvertent misrepresentation where the agency relied on that misrepresentation to make an award).  The only other case ARC cites on intentionality speaks to the "subjective mindset *of the agency*," not the offeror.  *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 484 (2012).

[11] Intent is a core element of misrepresentation actions the law.  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 460 (2013) (plaintiff must prove scienter); *Origin Medsystems, Inc. v. General Surgical Innovations, Inc.*, 215 F.3d 1344 at *1-2 (Fed. Cir. 1999) (Table) (vacating summary judgment because the misrepresentation "inquiry requires a review of the facts implicating the applicant's intent" and "the involved conduct… must indicate sufficient culpability to require a finding of intent to deceive").  Even negligent misrepresentation (not the cause of action here) considers whether the party acted with reasonable care in obtaining or conveying the information.  Restatement (Third) of Torts: Liab. For Econ. Harm § 5.

[12] HomeSafe submitted this declaration in response to a GAO request regarding intent and remedy.  (Tab 239 at AR37405.)  GAO did not reach the issue of intent or remedy because GAO concluded that HomeSafe's proposal does not contain a false statement.  (Tab 251 at AR37535.)  HomeSafe's discovery responses submitted in this matter further affirm both that no misrepresentation occurred and that no intent to mislead could exist.  Instead, ███████ relied on public technical statements of the highly-regarded solution provider.  (Dkt. 47-2 at 2.)

██████████████ solution to comply with FedRAMP High security requirements. (*Id.*) Based on those materials, ████████—and in turn, HomeSafe—"intended to convey that HomeSafe can leverage ███████ solution to ██████████████████████████████████████ . . . . [and] did not intend to convey that ████ holds a FedRAMP High authorization to operate." (*Id.* at AR37423.) That CGSL (another competitor) independently also represented to the Agency that █████ ████████████████████████" (Tab 196a at AR3136), presumably having reviewed the same explanatory materials on ██████ website, only underscores the implausibility of any claim that HomeSafe intentionally, recklessly, or even unreasonably sought to mislead the Agency, in addition to underscoring the veracity of the statement itself.

Further, common sense belies any suggestion that HomeSafe may have benefitted from intentionally misrepresenting ██████ FedRAMP High ATO. As detailed above, the RFP did not mandate a FedRAMP High ATO. Thus, HomeSafe had no incentive to allegedly misrepresent ██████ ATO. Indeed, HomeSafe did not revise its proposal to incorporate information about ██████ FedRAMP status until late in the procurement process—specifically, in the final round of discussions, in response to the Agency's request for additional information regarding ██████████ ████████████. (Tab 183b1 at AR30535; *see also* Tab 239a at AR37422.) Moreover, no basis exists to presume that HomeSafe would deliberately seek to misrepresent to DoD the publicly available FedRAMP ATO of an IT vendor. ARC has failed to establish that HomeSafe acted with the intent necessary to prove material misrepresentation.

> **3.    The Challenged Proposal Statement (Even if Wrong, Which It is Not) Did Not Prejudice ARC and No Basis Exists to Disqualify HomeSafe.**

In a few conclusory sentences, ARC errantly declares itself prejudiced by the alleged material misrepresentation and demands that the Court disqualify HomeSafe from the competition.

████████████████████████████████████████████████
████████████████████████████████████████████

As to prejudice, ARC asserts only that: "Because correcting the evaluation error would disqualify HomeSafe, the Agency could not still select HomeSafe's proposal over ARC's." (Dkt. 61-1 at 16.) No basis exists for this argument. *E.W. Bliss Co.*, 77 F.3d at 448-49 (rejecting similar argument). Moreover, ARC was ████████████████ in this procurement and HomeSafe's supposed disqualification would benefit ████████████████████████. (*See supra* Section V.A.) Still further, ████████████████████████ allegedly resulting from the Agency's evaluation of ████ FedRAMP High compliance was ████████████ ████████████████████. (Tab 200 at AR34470 (concluding that ████████████████ ████████████████████████████████████████████ ████████████████████████████).) Indeed, the record reveals that the Agency reached the same conclusion as to CGSL—although CGSL was ████████████████████ ████████████ ARC's ████████████████████████████████████ ████████████████. Even if the Agency ████████████████████████████████████ ████████████ ████, ARC would simply maintain its existing technical advantage over CGSL, but would remain ████████████ due to its "significantly" higher price. (*Id.* at AR34285-91.)

ARC thus cannot show that it had a "substantial chance" to receive the contract but for the alleged error as to HomeSafe's or CGSL's evaluations. *Supreme Foodservices GmbH*, 112 Fed. Cl. at 433 (finding protester lacked prejudice because even if the awardee's technical subfactor rating "was reduced" it "would not have changed the award decision"). The very case to which ARC cites for the proposition that prejudice may be "readily apparent" in certain instances does not identify material misrepresentation as one of them, and confirms that "there is no starting point of presumed prejudice." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) (affirming lack of prejudice). ARC offers no basis to disrupt the Agency's evaluation,

22

or to believe that whatever advantage ARC would gain ████████████████████████

would overcome the ████████ price premium that ARC proposed.  (*See infra* Section V.E.3.)

ARC also offers no basis for asserting that, if this Court finds a material misrepresentation, the Court should disqualify HomeSafe.  To the contrary, the case law makes clear that the appropriate remedy in the event of a material misrepresentation falls within the Agency's discretion. *See, e.g., Algese 2 s.c.a.r.l. v. United States*, 127 Fed. Cl. 497, 504-05 (2016) (holding that agency's review on remand and conclusion that the awardee did not make a material misrepresentation, with all the facts before it, constituted a "rational review process," which is "all that is required for the Court to sustain the [agency's] conclusions").  The holding in *NetCentrics*, to which ARC cites, confirms that the agency has "<u>discretion</u> to disqualify a proposal that contains a material misrepresentation" and thus an agency "<u>may</u>," not shall, "reject such a proposal"—a judgment left to the agency's discretion.[13] *NetCentrics*, 145 Fed. Cl. at 169.

Curiously, despite confronting similar language in CGSL's proposal ███████████████ ██████), ARC claims that *HomeSafe's* alleged misrepresentation ("FedRAMP High compliance") somehow afforded ████████████████████████████████████ CGSL's proposal.  In other words, ARC argues (without basis) that the Agency relied upon HomeSafe's proposal statement when evaluating CGSL's proposal, and does not allege a material misrepresentation as

---

[13] ARC's citation to *Planning Research* misrepresents the quoted language, which does not reflect the Court's holding in that case, but rather block quotes a dated GAO decision. 971 F.2d at 741 (quoting *In re Informatics, Inc.*, B-188566, Jan. 20, 1978, 78-1 CPD ¶ 53); *see also GTA Containers*, 103 Fed. Cl. at 483 (similarly quoting from the GAO decision, with the "citation omitted").  As the GAO recognized in this procurement, disqualification is not the default outcome that ARC would have this Court believe.  To the contrary, disqualification is a rare remedy.  GAO considers numerous factors to assess the remedy in a material misrepresentation case, including "the degree of negligence or intentionality associated with the offeror's misrepresentations, as well as the significance of the misrepresentation to the evaluation."  (*See* Tab 239 at AR37405-18 (internal citation omitted; citing numerous GAO decisions on this point).)

to CGSL or advocate for CGSL's disqualification from the procurement, even though HomeSafe and CGSL employed similar, accurate language in representing ▓▓▓ capabilities. (Dkt. 61-1 at 15 ("ARC was prejudiced because, in any reevaluation, HomeSafe would be disqualified and CGSL would receive a lower rating.").)

If this Court finds HomeSafe intentionally made a misrepresentation material to the Agency's evaluation and award, a finding unsupported by the record, the facts, or the law, the only proper remedy would be to remand this issue to the Agency to confirm what the contemporaneous record establishes, and the Agency has explained numerous times in defense of its award—that it understood the statement, perceived no misrepresentation (let alone a material one), and that its award to HomeSafe remains correct.

### C. Neither Protester Presents A Legitimate Basis To Disrupt The Agency's Thorough Technical Evaluation. [ARC § C; CGSL §§ A, B, D, E]

ARC and CGSL attack the technical evaluation in several ways. The extensive record shows the Agency rationally exercised its broad discretion to make technical determinations, and the protesters have not proven prejudice. The Court should deny these challenges.

#### 1. The Agency's Prior, Flawed Technical Evaluation Has No Relevance to the Agency's Latest Evaluation. [CGSL § B]

CGSL first seeks to revive the Agency's initial evaluation of its proposal—i.e., the initial evaluation challenged by both CGSL and HomeSafe, overturned by GAO, and resulting in fulsome corrective action contemporaneously unchallenged by any participant. Specifically, CGSL claims the Agency had to either adopt the strengths awarded to CGSL during the prior competition or else "rationally explain why [the Agency's] 2020 determination[s] as to each of those attributes were in error." (Dkt. 62 at 14-16.) CGSL's claim, however, has no legal basis.

"[W]here a prior award has been set aside" and the agency conducts a second evaluation, the agency is not bound by the prior evaluation. *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 714 (2011), *aff'd*, 475 F. App'x 341 (Fed. Cir. 2012). The reevaluation may result in different processes and outcomes—particularly where, as here, that reevaluation resulted from sustained protests challenging the propriety of the earlier evaluation. *See Sotera Def. Sols., Inc. v. United States*, 118 Fed. Cl. 237, 264 n.17 (2014) ("re-evaluation of proposals may rationally result in a different award outcome"); *Aurotech, Inc.*, B-413861.4, June 23, 2017, 2017 CPD ¶ 205 ("a reevaluation can result in different findings and conclusions"). Further, "two sets of evaluators can reasonably reach different conclusions." *SDS Int'l v. United States*, 48 Fed. Cl. 759, 772 (2001); *see Tech. Innovation All. LLC v. United States*, 149 Fed. Cl. 105, 140 (2020) (similar).

As explained above, the Agency rationally, and consistent with GAO's recommendation, took corrective action by revising the RFP, soliciting revised proposals, empaneling and training a new technical evaluation team, conducting an entirely new evaluation, conducting discussions, and making a new source selection decision. The evaluators reasonably concluded that CGSL's proposal merited ▮ strengths under the Technical Capability factor. (*See* Tabs 198j–198m; Tab 200; Tab 201.) CGSL, nevertheless, insists that if the Agency found a strength in the prior evaluation, the Agency had to find the same strength in the reevaluation. CGSL ignores half of the definition of a strength, which requires a subjective determination of value to the government. (Tab 136 at AR21149.) That CGSL received a different number of strengths under a previous evaluation of its prior proposal conducted by a different set of evaluators lacks relevance to CGSL's current protest challenging the reasonableness of the Agency's latest evaluation. *See Eskridge & Assocs. v. United States*, 142 Fed. Cl. 410, 424 (2019), *aff'd*, 955 F.3d 1339 (Fed. Cir. 2020) (prior

evaluation "immaterial to the present case"); *Marcola Meadows VA LLC*, B-407078.2 *et al.*, June 4, 2013, 2013 CPD ¶ 141 (disregarding initial evaluation).[14]

### 2.    The Agency Followed the RFP's Evaluation Scheme.  [CGSL § A]

CGSL demands that the Agency did not adhere to the RFP's stated evaluation scheme. CGSL's various arguments lack merit.   The RFP lists four technical subfactors "of equal importance," and for each subfactor details areas that proposals must address.   (Tab 136 at AR21148.)   For example, the RFP lists ▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (*Compare id.* at AR21142-43 *with id.* at AR21143.)   Initially, CGSL argues that the Agency had to weight these areas mathematically, and that the Agency had to give lesser consideration to proposal benefits identified for subfactors with multiple areas listed, and greater consideration to proposal benefits under subfactors with fewer listed areas (such as ▮▮▮▮▮▮▮▮ where the Agency ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).   (Dkt. 62 at 6-12.)   CGSL reasons that each technical subfactor correlated to 25% of the overall Technical Capability factor, concluding this

---

[14] CGSL inappropriately applies precedent involving agency rulemaking in the bid protest context. (Dkt. 62 at 13-14.)  Relying on the Supreme Court's decision in *F.C.C. v. Fox Television Stations, Inc.*, which involved a rulemaking, CGSL declares the Agency bound to its previous "factual findings" and absent a "reasoned explanation for" reaching a different conclusion. (*Id.* (citing 556 U.S. 502, 515-37 (2009).)  This Court rejected a similar argument in *Ultra Electronics Ocean System Inc. v. United States*, 139 Fed. Cl. 517, 531 (2018). The *Ultra* Court held that "decisions of contracting officers are fundamentally different from the decisions reached in agency rulemaking proceedings and adjudications that are the subject of APA review" and that "contracting officers have no obligation to explain or distinguish past procurement decisions when making determinations under new procurements." *Id.*  CGSL's citation of *DZSP 21, LLC v. United States* 137 Fed. Cl. 38 (2018) is also misplaced. (Dkt. 62 at 13-14.)  The *DZSP* Court noted that a "reversal" of the Navy's previous evaluation "had to be accompanied by a rational explanation," as there had been no "further technical evaluation," the Navy had "decided against 'reconven[ing] the . . . cost evaluation and technical teams" for the reevaluation, and the SSA reassessed proposals on her own. *Id.* at 48. Here, the Agency conducted a new evaluation and advised the evaluators "not to consider the previous technical evaluation." (Tab 269.236 at AR58106.)

must mean ████████████████████ must be worth ██████ of the overall rating, whereas more numerous considerations under other subfactors represent much lower percentages. (*Id.*)

Neither the Solicitation nor procurement law support the CGSL-demanded, mechanistic point tallying scheme. *See Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 910 (Fed. Cir. 2013) (adjectival ratings "not subject to a mathematical calculation"); *Tech. Innovation All. LLC*, 149 Fed. Cl. at 159 (upholding evaluation because "SSA did not base his best value tradeoff analysis on a mechanical application of adjectival ratings"). To the contrary, the RFP states that "[a]ll Technical Capability sub-factors are of equal importance" and that "[t]o receive award, the Offeror must . . . represent a best value to the Government, price and other factors considered." (Tab 136 at AR21147-48.) The SSA met this requirement by qualitatively assessing each of the four Technical Capability subfactors over 15 single-spaced pages that directly compared CGSL's proposal to HomeSafe's under each subfactor, culminating in a substantial, supported evaluation process. (*See* Tab 201 at AR34656-73.) Lengthy SSAC and SSEB Reports underpin these findings. (*E.g.*, Tab 200 at passim.)

Next, CGSL mischaracterizes the Agency's assessment that HomeSafe provided a highly impactful, superior approach to the ████████ requirement under ████████ The SSA found:



(Tab 201 at AR34667.) CGSL takes issue with this conclusion, and asserts that its ████████ advantage should have received "***substantially more importance*** than HomeSafe's advantage under ████████" because "the RFP identified ████████ as just one of █ PWS requirements under ████████." (Dkt. 62 at 8-10 (emphasis in original).) CGSL believes that regardless of the

impact of HomeSafe's superior approach under any ▮▮▮▮▮ requirement—▮▮▮▮▮▮▮ included—CGSL's advantage under ▮▮▮▮▮ should have received greater weight because the RFP listed fewer "items" under that subfactor. Again, the RFP does not direct (or even permit) the Agency to engage in the evaluation CGSL demands. The RFP requires the Agency to equally weight the four subfactors and permits the Agency to find the "impact" of HomeSafe's ▮▮▮▮▮ ▮▮▮▮▮ greater than ▮▮▮▮▮▮▮ under other subfactors. (*See* Tab 201 at AR34667-68.)[15]

CGSL errantly twists this finding to argue that the Agency treated some PWS requirements as more important than others, thereby downplaying the features of CGSL's proposal that would ▮▮▮▮▮▮▮▮▮▮ under the Contract. (Dkt. 62 at 10-12.) The Agency's conclusion regarding the relative impact of the offerors' strengths did not create a new weighting scheme centered on ▮▮▮▮▮▮▮▮▮▮ by a particular proposal feature, but constituted an observation about the benefits to the government. Such statements are inherent to a best value tradeoff. *American Relocation Connections, LLC v. United States,* 147 Fed. Cl. 608, 617-19 (2020) (acknowledging agency "discretion—and duty—to analyze one offeror's superiority over another, especially their technical capabilities to perform the contract").

Further, CGSL nitpicks the Agency's best value tradeoff narrative description. The Federal Circuit has made clear that such determinations get substantial deference. *See Galen Med. Assocs., Inc.* 369 F.3d at 1330; *E.W. Bliss Co.,* 77 F.3d at 449. Nevertheless, CGSL excerpts a portion of

---

[15] CGSL's argument that the Agency could not find HomeSafe's approach to ▮▮▮▮▮▮ meritorious because ▮▮▮▮▮▮▮▮▮' was not an evaluation factor" also fails. (Dkt. 62 at 9.) The Agency ▮▮▮▮▮ requirement requires "▮▮▮▮▮▮▮▮." (*See* Tab 201 at AR34667; Tab 136 at AR21144; Tab 134b1 at AR21078 (▮▮▮▮▮ PWS requirement).) The Agency considered whether HomeSafe's ▮▮▮▮▮▮▮▮▮▮▮. The RFP emphasizes "▮▮▮▮▮▮▮." (Tab 136 at AR21142 (directing offerors to "▮▮▮▮▮▮▮▮▮▮▮"). The evaluation criteria too readily encompass ▮▮▮▮▮▮. *See Poplar Point RBBR, LLC v. United States*, 147 Fed. Cl. 201, 219 (2020).

28

a paragraph summarizing the Agency's substantial technical evaluation and alleges that the Agency impermissibly discounted CGSL's proposal benefits by not exhaustively restating each and every benefit, but instead choosing to highlight a select few. (Dkt. 62 at 8.) CGSL selectively omits introduction and conclusion sentences to that excerpted paragraph, which acknowledge "that there are areas in which CGSL's proposal provided benefits that HomeSafe's proposal did not also provide." (Tab 201 at AR34671.) The context reveals the Agency did not "downplay" or ignore CGSL's benefits, but merely summarized the Agency's conclusions and provided select examples given the voluminous record. None of CGSL's examples undermine the selection decision.

### 3. The Agency Did Not Disparately Evaluate the Offerors. [CGSL § D]

CGSL next argues the Agency disparately evaluated proposals, claiming CGSL "provided greater detail than HomeSafe" regarding certain PWS requirements, but the Agency found that there was "no discernible difference" between the proposals. (Dkt. 62 at 26-29.) The Court cannot second guess "the minutiae of the procurement process in such matters as technical rating . . . which involve discretionary determinations of procurement officials." *E.W. Bliss Co.*, 77 F.3d at 449. An agency may reasonably decide that an offeror merely met the solicitation's minimum requirements and therefore did not warrant a strength. *Intuitive Rsch. & Tech. Corp. v. United States*, 157 Fed. Cl. 1, 7 (2021); *Sys. Stud. & Simulation, Inc. v. United States*, No. 18-1494C, 2019 WL 912277, at *8 (Fed. Cl. Jan. 22, 2019). As the Federal Circuit recently held, the protester must prove it suffered downgrades for "substantively indistinguishable" proposal characteristics. *Off. Design Grp. v. United States*, 951 F.3d 1366, 1372-73 (Fed. Cir. 2020).

First, CGSL alleges that the Agency "deemed an offeror to have an enhanced understanding of requirements if it provided additional detail about its approach," but does not identify the source of this claim. (Dkt. 62 at 26-29.) Although the Agency rewarded details that exceeded the

29

requirement or described unique benefits, nothing in the RFP or source selection documents promised additional credit for offerors that simply listed more information.

CGSL claims that in various examples, it provided more "detail" than HomeSafe. (*Id.* at 27-28.) For several of CGSL's examples, CGSL summarily states that it "provided additional details that HomeSafe did not," but does not bother to explain why the purported "additional details" merited added credit (much less how CGSL has met the "substantively indistinguishable" standard). (*See, e.g., id.* at 27 (citing ███████████); 27-28 (citing ███████████).) Even where CGSL is specific, its argument fails. For example, CGSL claims it should have received an advantage over HomeSafe because CGSL's proposal addressed "███████████ ███████████" under ███████████, but HomeSafe's proposal did not. (Dkt. 62 at 28.) In fact, CGSL's proposal simply states that ███████████████████████████████████ ███████████. (AR Tab 196a at AR31303-04.)[16] HomeSafe, however, actually described how it will accomplish the requirement. (AR Tab 178b at AR28104 ███████████ ███████████████████████████████  ███████████████████████████████ ███████████..."). The Agency reasonably concluded that both were acceptable approaches. (Tab 200 at AR34536-38.)

In the few instances where CGSL identifies supposed advantages, these are deceptions. To take one example, CGSL claims it "███████████████████████████████ ███████████, while HomeSafe "███████████████████████████████," so it was unreasonable for the Agency to find the approaches equivalent. (Dkt. 62 at 28.) In fact, HomeSafe provided significant detail on ███████████, not only describing fully the ████

---

[16] Similarly, CGSL erroneously demands extra credit for ███████████████████████ ███████████ from ███████████. (Dkt. 62 at 28.)

████████████████████████████████████████████
████████████████████████████████████████

██████████████████████████████████████████████████████. (Tab 178b at AR28141, 28143.)  The CGSL proposal, which simply says that "████████████████ ████████, lacks such specifics.  (Tab 196a at AR31342.)  The Agency assessed the actual proposals, rather than CGSL's self-serving recastings.  (Tab 200 at AR34575-578.)

The remaining CGSL examples also fail.  CGSL demands extra credit for stating (with no evidence) that its ███████████████████████████ (Dkt. 62 at 28), but its proposal contains ███████████████, whereas HomeSafe ████████████████ ████████.  (*Compare* Tab 196a at AR31307 with Tab 178b at AR28108).  CGSL claims that it alone ████████████████████████████████ (Dkt. 62 at 28), but both proposals describe the method by which they will meet the PWS requirement of "██████████████████████████ (*Compare* Tab 196a at AR31351 *with* Tab 178b at AR28146; Tab 200 at AR34594-95.)

CGSL's counterexample—where the Agency supposedly gave HomeSafe extra credit for more detail—falls flat.  (Dkt. 62 at 29.)  HomeSafe's proposal went beyond the stated requirements, and proposed enhancements such as ██████████████████████████████ ██████████ not found in the PWS and not offered by CGSL.  (Tab 178b at AR28089, AR28100; *see also id*. at AR28139.)  The Agency found that these and other features of HomeSafe's approach merited the better finding.  (Tab 200 at AR34477.)  CGSL's approach to ██████████ does not compare to the HomeSafe approach.  (*See* Tab 196a at AR31289-90.)

The Agency accounted for the actual contents of the proposals and did not treat the offerors disparately.  To borrow from the Federal Circuit: "many of [CGSL's] various claims of disparate treatment amount to a request for this court to reevaluate [CGSL's] technical proposal . . . [The court is] in no position to do so."  *Off. Design*, 951 F.3d at 1374.

31
██████████████████████████████████████████████
████████████████████████████████████

4.    **The Agency Reasonably Evaluated HomeSafe's Proposal. [CGSL § E; ARC § VI.C]**

Both CGSL and ARC challenge the Agency's evaluation of HomeSafe's proposal. Neither protester has identified any basis for the Court to intervene and overturn the reasoned evaluation.

a.    **CGSL's Subfactor 2 Challenge to HomeSafe's Proposal Fails.**

CGSL disagrees with two elements of the Agency's evaluation of HomeSafe's proposal under Subfactor 2. The Court should deny both arguments.

First, CGSL alleges that the Agency misevaluated HomeSafe's approach to ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓. (Dkt. 62 at 29.) CGSL asserts that HomeSafe proposed ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓. (*Id.* at 29-30.) Based on this perceived inconsistency, CGSL concludes that the Agency "failed to consider HomeSafe's actual approach to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (*Id.* at 31.)

CGSL's accusations distort the record and misunderstand HomeSafe's proposal. HomeSafe proposed the ▓▓▓▓▓▓▓▓▓▓▓▓ recognized by the Agency. As HomeSafe explained in its proposal, its "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." (Tab 178b at AR28123.) ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓. This, presumably, is what CGSL misreads. But HomeSafe's proposal is clear that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓.

The Agency understood that HomeSafe's approach involved both ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

32

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

████████████████████████████████████████████████████████████████

████. In response to the same allegations before GAO, the Contracting Officer explained that HomeSafe's approach "████████████████████████████████████████████████████████████████████████████████." (Tab 264 at AR38130 (emphasis in original).) ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (*Id.* at AR38129-30; *compare* Tab 147b at AR22241 *with* Tab 178b at AR28123 (showing HomeSafe proposed the same process for ████████████████ in initial and final proposal).) The SSAC found HomeSafe's approach "more advantageous" because HomeSafe had, *inter alia*, ████████████████████████ and "phenomenally lays out ████████████████████." (Tab 200 at AR34572-73.) The SSA agreed, stating that HomeSafe

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(Tab 201 at AR34663.) Contrary to CGSL's misrepresentations, the Agency understood these and other beneficial HomeSafe ████████████ features.

Second, CGSL claims that ████████████████████████████ in the Small Business Commitment Document ("SBCD") imposed a requirement on offerors that they must ████████ ██████████████████████████████████████████. However, the SBCD did not impose any such requirement, and even by reference ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ The GHC RFP focuses on the percentage commitment of each offeror. The RFP states that the SBCD must "identify the Offeror's

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

commitment to the 40% utilization of small business concerns in the performance of this contract in accordance with PWS paragraph 1.2.1.2.2." (Tab 136 at AR21143.) The PWS echoes this focus on the total percentage, stating that "[t]he contractor shall ensure a minimum of forty percent (40%) of the total acquisition value of the domestic work performed under this contract be subcontracted to small business subcontractors." (Tab 134b1 at AR21078.) The Agency's evaluation of HomeSafe's extensive proposal discussion regarding how HomeSafe will exceed this commitment and HomeSafe's process for ▮▮▮▮▮▮▮▮▮▮ tracks the RFP. (*See* Tab 198q at AR32215-16 (SSEB finding that the HomeSafe proposal and SBCD ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Tab 172b at AR26788, 26814, 26815, 26824, 26826, 26829, 26836.)

CGSL's argument also misstates the evaluation. The Agency reasonably ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ (*See* Tab 198d at AR31517 (▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Tab 198k at AR31866 (▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮); Tab 198q at AR32221 (▮▮▮▮▮▮▮▮▮▮▮▮).) CGSL admits that HomeSafe exceeded the RFP's minimum 40% requirement (even under CGSL's flawed evaluation methodology), thus ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*) The Agency did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. Even at ▮▮▮% commitment, HomeSafe would have ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Tab 264 at AR38132-33.)[17] Thus, even were CGSL correct about how the Agency should have evaluated the offerors, ▮▮▮

---

[17] Notably, the difference between HomeSafe's ▮▮▮% proposal and CGSL's ▮▮▮% proposal would only be ▮▮% , a mere ▮▮▮% change from the gap between HomeSafe's ▮% commitment and CGSL's proposal that the SSAC found "a minimal difference." (Tab 264 at AR38132-33.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████ would remain "roughly equivalent." (Tab 200 at AR34569.) CGSL cannot demonstrate prejudice because HomeSafe would ████████ "roughly equivalent" ██████ to CGSL.

b.    **ARC Errantly Challenges HomeSafe's Subfactor 1 Evaluation.**

ARC disagrees with two elements of the HomeSafe proposal Subfactor 1 evaluation. The Court should deny both arguments.

First, ARC argues that HomeSafe ████████████████████████████████ ██████████████████" because HomeSafe's proposal did not include a discussion of ██████ ██████. (Dkt. 61-1 at 22 (citing Tab 134b1 at AR21083).) ARC demands that the Agency should have found HomeSafe "unacceptable." (*Id.*) ARC is wrong as a matter of law and fact. A proposal need not discuss in detail every single PWS requirement to be found acceptable. And ARC's citation to *Mortg. Contracting Servs. v. United States*, 153 Fed. Cl. 89, 142 (2021) evidences the overreach. Such cases apply only where a deviation exists and it is "material," *i.e.* where there is "more than a negligible impact on the price, quantity, quality, or delivery" of the services.[18] Regardless, HomeSafe's proposal stated that HomeSafe will "comply with ████████ ████████████████" and HomeSafe's ████████████████████████████ ████████████████████████████████████████████████ ████████████████████." (Tab 178b at AR28101-02.) The SSEB and SSA reasonably found HomeSafe's express commitment met the requirement. (Tab 198p at AR32064; Tab 200 at 34336.)

Second, ARC argues that HomeSafe ████████████████████████████ ████████████████████████████████████████████." (Dkt.

---

[18] Moreover, a negative finding of the nature demanded by ARC would have required discussions with HomeSafe, not an unacceptable rating.

████████████████████████████████████
████████████████████████████

61-1 at 22 (citing Tab 134b1 at AR21087).)  The SSEB found HomeSafe's approach acceptable and had no concern that ███████████████████████████████████. (Tab 198p at AR32069.)  ARC essentially argues that because HomeSafe did not quote the PWS requirement regarding ███████████, HomeSafe proposed to █████████████████████████████ ███████████████████████████████████████████████.  This is a nonsensical interpretation of the HomeSafe proposal, which describes its approach to ██████████ ████████████, and states that HomeSafe will "██████████████████████████ ████████████████████████████████."  (Tab 178 at AR28104.)  HomeSafe will ██████████████████████████████████████████.  Nothing in the HomeSafe proposal demands any inference such as the self-serving conclusion drawn by ARC, and no law requires elimination of HomeSafe over this issue as ARC demands.

ARC also cannot prove prejudice because the Agency found <u>ARC</u> met requirements despite ARC ██████████████████████ to the requirements—in other words, where ARC itself committed what it alleges is an "error" in HomeSafe's proposal.  (*See, e.g.*, Tab 198c at AR31444-45 (evaluation showing ARC did not ████████████████ to █████████████).)

**5.    The Agency Reasonably Evaluated ARC Under Subfactor 3.**

ARC challenges the Agency's evaluation of ARC's proposal under Subfactor 3.  ARC's arguments involve errant, mere disagreement.

<u>First</u>, ARC alleges that its approach to ████████████████████████████ ████████████ merited favorable treatment.  ARC's argument ignores both the definition of a strength and precedent.  The Agency employed a two-part analysis for awarding a strength, requiring the proposal feature exceed requirements <u>and</u> do so "in a way that will be advantageous to the Government during contract performance."  (Tab 136 at AR21149.)  The Agency recognized

that ARC proposed ████████████████████████████████████████████. (Tab 198e at AR31557.)   The Agency determined, however, that this proposal feature was "not . . . advantageous to the Government" because "█████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████." (*Id.*) ARC's proposed approach did not provide an advantage to the Agency because ███████████ ██████████████████████████████████████████████████████████ ██████████████████████████████" (Tab 200 at AR34396.)

Further, ARC knew of the Agency's position well in advance of its final proposal, as the Agency informed ARC during discussions: "█████████████████████████████████ ██████████████████████████████████████████████████████████ ████████" (Tab 198e at AR31594.)  ARC insists that the Agency should find value in something the Agency told ARC the Agency did not want. The RFP's definition of a strength, however, vests the Agency with discretion to determine what would be beneficial. *See Harmonia Holdings Grp., LLC v. United States*, 153 Fed. Cl. 245, 257 (2021) ("Judgments on the relative merits of a technical proposal, including the assignment of strengths and weaknesses, lie particularly within the discretion of the procuring agency.").[19]  ARC has provided no basis to question the Agency's discretion.

---

[19] ARC additionally argues that the Agency amended the stated evaluation criteria without informing offerors, contending that because the█████████████████████████████████████ ██████████████████████████████████████████████████████. (Dkt. 61-1 at 25.)  ARC reads into the █████████████████ an evaluation criterion where none exists. The RFP ██████████████████; it does not instruct offerors that ████████████████ is advisable or would receive a more favorable evaluation. The Agency advised ARC that it planned to strictly adhere to the██████████████ (Tab 198e at AR31594.)

Regardless, ARC has not established prejudice. ARC argues that ▮▮▮▮▮▮▮▮▮▮▮ "would have led the Agency to find that ARC was even more superior to HomeSafe under ▮▮▮▮▮," and "that superiority would have ▮▮▮▮▮▮▮▮▮▮▮▮▮ under ▮▮▮▮▮." (Dkt. 61-1 at 24.) The Agency rated both HomeSafe and ARC ▮▮▮▮▮ under ▮▮▮▮▮, but concluded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮" (Tab 200 at AR34423.) That is, ARC has already received ▮▮▮▮▮ under ▮▮▮▮▮. (*Id.*) ARC can make no legitimate showing that ▮▮▮▮▮▮▮▮ would have merited a higher rating (much less a ▮▮▮▮▮ premium). In any event, this Court has rejected speculative arguments questioning an agency's consideration of strengths and weaknesses. *See Goldschmitt & Assoc., LLC v. United States*, 149 Fed. Cl. 401, 405-06 (2020) (challenges to number of strengths received is "type of 'minutiae' this Court does not 'second guess'").

### 6.    The Agency Properly and Equally Evaluated ARC Under Subfactor 4.

Under Subfactor 4, ARC alleges that the Agency engaged in disparate treatment by evaluating its proposal more harshly than that of HomeSafe and CGSL in three respects. (Dkt. 61-1 at 25-29.) ARC's arguments find no support in the record or procurement law.

First, ARC argues that during discussions, the Agency required ARC to demonstrate how it would provide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮, but that the Agency "did not require either HomeSafe or CGSL to explain how they would, or could, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," ▮▮▮▮▮▮▮▮▮▮." (*Id.* at 26.) ARC's argument is flawed. ▮▮▮▮▮▮ requires offerors to ▮▮▮▮▮▮▮▮▮▮, and to meet that requirement, ▮▮▮▮▮▮ requires offerors to ▮▮▮▮▮▮▮▮▮▮ Tab 134b1 at AR21078, AR21096), which the Agency

explains includes ███████████ (*see* Tab 198f at AR31616). HomeSafe's proposal explains

how it will provide ██████████████████:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

(Tab 178b at AR28160-61.) Because HomeSafe explained that ████████████████████

███████████████████████████████████" the Agency concluded that HomeSafe met the

requirement ████████████████████. (Tab 198s at AR32307.) The Agency equally

recognized CGSL's intention to ████████████████████████████████████"

(Tab 198m at AR31984-85.) Neither HomeSafe nor CGSL received a downgrade in this area

because their final proposals evinced a clear commitment to ████████████████. By

contrast, the evaluators initially found ARC had not indicated ████████████. (Tab 198f at

AR31644.) *Off. Design Grp.*, 951 F.3d at 1373 (denying disparate treatment claim where

proposals were "substantively distinguishable"). The Agency later found all offerors, including

ARC, met the ██████ requirement, precluding prejudice. (Tab 200 at AR34247-49, AR34425.)

Second, ARC argues that HomeSafe and CGSL ██████████████ for using ████████████

████████████████████, respectively, as █████████████████████████

████████████, but the Agency failed to award ARC ██████████████████████████

████████████████████████. (Dkt. 61-1 at 27 (citing Tab 200 at AR34606).)

The record again demonstrates that the Agency's evaluation reflected legitimate differences in

proposals rather than disparate treatment. The Agency recognized that HomeSafe provided a

detailed explanation of its use of ██████████████ and HomeSafe additionally provided a fulsome

████████████████████████████████████████████████
███████████████████████████████████████████

discussion of its ▮▮▮▮▮▮ in its ▮▮▮▮▮▮. (Tab 198s at AR32306.) This led the Agency to conclude HomeSafe had a "▮▮▮▮ approach and understanding of this PWS requirement." (*Id.*) In contrast, the Agency found ARC provided ▮▮▮▮ on its ▮▮▮▮ ▮▮▮▮. (Tab 198f at AR31616.) Further, ARC did not elaborate on its ▮▮▮▮ through its ▮▮▮▮. (*Id.* at AR31617.) Thus, the Agency determined that ARC evinced an ▮▮▮▮ approach and understanding, ▮▮▮▮▮▮.

Third, ARC argues that "the Agency required ARC alone to incur the expense of ensuring that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 61-1 at 27-28.) The Agency assigned ARC ▮▮▮▮ because ARC proposed using ▮▮▮▮ ▮▮▮▮ of ARC's ▮▮▮▮ and issued an Evaluation Notice ("EN") to ARC explaining that "▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮" (Tab 198f at AR31641.) ARC contends the Agency's EN forced ARC to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. (Dkt. 61-1 at 28.)

▮▮▮▮ identifies the applicable ▮▮▮▮ requirements and specifically notes: ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮." (Tab 134b1 at AR21096.) HomeSafe's proposal met these requirements through its proposed ▮▮▮▮. (Tab 178b at AR28157-60.) ARC also proposed a ▮▮▮▮ ▮▮▮▮, but did so through ▮▮▮▮ ▮▮▮▮ ARC's ▮▮▮▮. (Tab 177b at AR27904-08.) Thus,

▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

during discussions, the Agency inquired about the ability of ARC's ████████████ ████████████████████████████████, to meet the ██████████ requirements. At no time did the Agency require that ARC's ██████████████████████ meet the ██████████ ████ requirements. (Tab 134b1 at AR29016.) ARC's business decision to require ██████ ████████████████████████████ does not make the Agency's Subfactor 4 evaluation unreasonable as ARC argues.

### 7. Neither CGSL nor ARC Can Demonstrate Prejudice From the Alleged Technical Protest Arguments. [CGSL Section H]

Both CGSL and ARC also fail against the prejudice requirement necessary for a bid protest sustain. (*See, e.g.*, Dkt. 62 at 36-37; Dkt. 61-1 at 24-25.) The Federal Circuit requires protesters to affirmatively demonstrate prejudice; there is no presumption. *Sys. Stud. & Simulation, Inc.*, 22 F.4th at 998. Even if CGSL or ARC prevails on one of their attacks on the minutiae of the Agency's technical evaluation (which they should not), this Court has no basis to find that the Agency's overall best value decision--supported by a multi-thousand page record--would change. "To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999). This is not the same as proving a minor infraction, or even multiple minor errors in the evaluation; to establish prejudice, the protester must show "that there was a 'substantial chance' it would have received the contract award but for the errors." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (internal quotations omitted); *Harmonia Holdings Grp.*, 152 Fed. Cl. at 110.

Neither protester can demonstrate that ████████████ change would alter the award. (Tab 201 at passim.) Relative to CGSL, the SSA determined that HomeSafe's "superior technical capability ██████████ outweighs the minimal cost difference." (*Id.* at AR34673.) And ARC, due

41

to its massive, "disproportionate price premium" ranked ██████████████. (*Id.* at AR34655.)  The Court should deny the CGSL and ARC technical evaluation protest arguments.

### D.    The Agency Conducted Meaningful And Equal Discussions With ARC And CGSL. [ARC § VI.D; CGSL § C]

After GAO sustained HomeSafe's challenges to the prior discussions, the Agency conducted several rounds of substantive discussions with the offerors.  The Agency issued numerous ENs identifying deficiencies as well as strengths, weaknesses, significant weaknesses and other discussion items. (*See* Tabs 143a-c.)  The Agency then invited offerors to submit revised proposals.  Despite the record evidence of the Agency's meaningful and equal discussions with all offerors, spanning hundreds of pages, both ARC and CGSL errantly demand entitlement to more evaluative feedback than they received.

"There is no requirement that all areas of a proposal which could have a competitive impact be addressed in discussions." *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 371, 394 (2001), *aff'd* 279 F.3d 985 (Fed. Cir. 2002).  "[T]he government need not discuss every aspect of the proposal that receives less than the maximum score or identify relative weaknesses in a proposal that is technically acceptable but presents a less desirable approach than others." *Cube Corp. v. United States*, 46 Fed. Cl. 368, 384 (2000) (quotations and citation omitted).  This Court rejects the "tit for tat approach to discussions" the protesters adopt. *CRAssociates, Inc.*, 102 Fed. Cl. at 715.  The Court, like GAO, should deny the discussions challenges.

### 1.    The Agency Did Not Have to Engage in Comparative Discussions.

First, both protesters claim that the Agency had to discuss the features of their respective proposals that the Agency ultimately found less advantageous than HomeSafe features. (Dkt. 61-1 at 29-30; Dkt. 62 at 23-27.)  Nothing required the Agency to notify ARC or CGSL of its comparative analysis or the discriminators that HomeSafe proposed. *See JWK Int'l*, 49 Fed. Cl. at

42

394 ("The procuring agency does not have to identify every item that might improve an offeror's proposal.") If anything, the FAR prohibits such implicit disclosures of another offeror's technical solution. *See* FAR 15.306(e)(2). The Court should deny these allegations.

ARC argues that the Agency should have disclosed its evaluation findings under ███████████ ██—specifically, that ARC's proposed approach to ████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████. (Dkt. 61-1 at 29-30 (quoting Tab 200 at AR34395.) ARC concedes that the Agency did not characterize the findings as deficiencies, significant weaknesses, or even weaknesses. (*Id.*) Nevertheless, ARC attempts to shoehorn the Agency's findings into the law on discussions simply because the SSA found HomeSafe's approach ██████████████████████ ████████ superior. (Tab 200 at AR34395.)   The law does not require the Agency to alert a disappointed offeror of each instance in which its proposal is less advantageous than the awardee's.

In any event, the record confirms the Agency engaged in discussions with ARC on this very issue. For instance, the Agency asked ARC to explain "████████████████████████ ███████████████████████." (Tab 198d at AR31536-37.) Once ARC confirmed its intent to ██████████████, the Agency reasonably evaluated ARC's approach, concluding that although it would "████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████." (*Id.* at AR31506.) The Agency favorably assessed this ARC proposal feature but found HomeSafe's Approach more effective. (*Id.* at AR31506-08; Tab 200 at AR34395.)

CGSL raises a similar protest challenge, arguing that the Agency misled CGSL into believing it had fixed two significant weaknesses in its Subfactor 2 proposal. During discussions, the Agency raised two significant weaknesses with CGSL—one for the ██████████████████

resulting from CGSL's proposal to ██████████████████████████████████ ██████████████████████ and another for █████████████████████████ resulting from CGSL's proposal to ███████████████. (*See* Tab 154a2 at AR22988, AR22990.)

CGSL provided additional detail regarding its proposed approach, including that it would require its ██████████████ ███████████████ ██████████████ and that ██████████████ ████████████████████████████████████████████████████████████████

(*Id.* at AR23024-25, AR23027-28.) The Agency concluded CGSL's revisions resolved the concerns. (*See* Tab 198k at AR31872, AR31876.)

As with ARC's proposal, the SSA then considered these features of CGSL's proposal (among all others) as part of the comparative evaluation. The Agency understood that CGSL intended to require that its █████████████████████████████, but concluded that it found more advantageous an approach that █████████████████████████████. (Tab 201 at AR34663 ("██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████.").)[20] As to CGSL's ████████████, the Agency similarly considered CGSL's proposed approach and simply found that HomeSafe's approach was "more advantageous" and thus, would █████████████████████████ (Tab 200 at AR34573; Tab 201 at AR34663-64.)

---

[20] CGSL quibbles with the Agency's use of the ████ ██████ when stating that "the viability of said approach is ██████████████████████████████████████████████████ ██████████." (Dkt. 62 at 25.) CGSL submits that the use of ████████ "confirms the agency did not believe CGSL adequately addressed the perceived weakness." (*Id.*) To the contrary, ████ establishes that the SSA knew CGSL resolved the significant weakness, but found HomeSafe's proposal more advantageous. The law charges the SSA with making such comparative judgments.

██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

The Agency's preference for particular HomeSafe approaches does not mean the SSA considered the ARC or CGSL approaches flawed; it is emblematic of the SSAC and SSA roles to compare proposals and identify the most advantageous one. The FAR does not require the Agency to raise aspects of an offeror's proposal that satisfy the solicitation's requirements, but which may be less advantageous than another offeror's unique approach. *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 385 (2003), *aff'd* 365 F.3d 1345 (Fed. Cir. 2004).

The protesters advocate for a never-ending process whereby a procuring agency conducts its best-value assessment, reopens discussions to identify those areas where each offeror is less advantageous, receives new proposals, conducts another comparative assessment, reopens discussions again and so on. HomeSafe, too, would presumably receive such information, improving its proposal in the areas where the Agency preferred ARC or CGSL. It is not clear where the protesters wish the carousel to stop (each, presumably, at precisely the moment they are found the winner). This is not how discussions or best-value procurements are conducted. And the protesters never meaningfully explain how the Agency's conduct prejudiced them or how they would have altered course. The Agency did not mislead ARC or CGSL in discussions.

## 2.    The Agency Did Not Have to Discuss All ███████ ARC Features.

Second, ARC labels the Agency's discussions unequal because the Agency alerted ARC to "*most*" but not "*all* areas" where it found ARC's approach ██████████ while alerting CGSL of supposed ███████████ at a slightly higher rate. (Dkt. at 61-1 at 30 (emphasis in original); *id.* at 30-33.) This challenge also fails.

The FAR states that "the contracting officer is not required to discuss every area where [an offeror's] proposal could be improved." FAR 15.306(d)(3). ARC has not established why it was entitled to learn of every instance in which the Agency found ARC's proposal to be, in ARC's

words, ▮▮▮▮▮▮ (Dkt. 61-1 at 31.) If a proposal is ▮▮▮▮▮ that means it is not flawed. The Agency also explained that it never purported to identify each instance in which an offeror's proposed approach was ▮▮▮▮▮ (Tab 231 at AR37143.) Instead, the Agency identified specific instances in which an offeror's proposal ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. The RFP warns offerors not to do this. (Tab 7 at AR197.) The Agency explained, however, that it would not consider ▮▮▮▮▮▮ to be deficiencies, weaknesses or significant weaknesses, but as ▮▮▮▮▮▮▮▮▮▮▮▮. (*See, e.g.,* Tab 181b2 at AR29504 (▮▮▮▮▮).) ARC's claim that the Agency misled it into believing the identified PWS sections ▮▮▮▮▮▮ and that it need not attempt to improve how it addressed other PWS requirements that the Agency did not flag as ▮▮▮▮▮ ▮▮▮▮ falls flat, not least because ARC was free to revise whatever sections of its proposal it wished in its final submission.

It was not the Agency's responsibility to direct ARC how to submit the most technically advantageous proposal. *See SupplyCore Inc. v. United States*, Case No. 12-1861C, 2021 WL 6340188, at *13 (Fed. Cl. Dec. 28, 2021) ("Agencies are 'not required to "spoon-feed" offerors in order to have meaningful discussions.'"). ARC's decision to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ reflected its business judgment, not flawed discussions. (Dkt. 61-1 at 32.)

ARC's claim that the Agency treated CGSL better by comparison—a thinly veiled effort to cure its standing defect (*see supra* Section V.A)—is also unavailing and non-prejudicial. That the Agency alerted CGSL of where it ▮▮▮▮▮▮▮▮ slightly more often than the Agency alerted ARC reflects the differences in their respective proposals—specifically, that CGSL more frequently ▮▮▮▮▮▮▮ (*See, e.g.,* Tab 182.2 at

AR29978 (█████████); Tab 182.4 at AR30103 (█████████).)  Tellingly, ARC does not

allege the same unequal discussions as it relates to HomeSafe.  ARC thus has no cognizable

unequal treatment claim.  *See CRAssociates*, 102 Fed. Cl. at 716 ("[T]he requisite quality of

discussions will not be measured according to whether the agency asked each offeror the same

discussion questions; spent an equal amount of time conducting discussions with each offeror; or

discussed the same topics with each offeror.").

### 3.    The Agency Did Not Assign Weaknesses to CGSL's Proposal Meriting Additional Discussions.

CGSL next claims that the Agency afforded CGSL "no chance" to respond to two supposed

"weaknesses" assessed in connection with CGSL's ████████ and its ████████

█████████.  (Dkt. 62 at 23-24.)  This argument too fails.

CGSL once again characterizes as a supposed weakness any feature of its proposal that the

Agency ultimately found to be less advantageous when compared with HomeSafe's proposal.

CGSL alleges that the Agency had to alert CGSL to those supposed weaknesses.  Providing

offerors with material feedback does not mean the Agency undertook discussions "with the goal

of eliminating all weaknesses in each offeror's proposal" or that it had to do so.  (Dkt. 62 at 22.)

As to CGSL's ████████ approach, which is discussed in greater detail above, the Agency

found CGSL's proposal was less beneficial than HomeSafe's because '████████

████████████████████████████████████████

████████████████████████████████████████

████████████████."  (Tab 200 at AR34574; Tab 201 at AR34663.)  As to CGSL's

proposed ████████, the Agency in fact *did* issue a discussion item "with respect to CGSL's

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████

██████████." (Tab 165a2 at AR24718.) After several rounds of discussions, CGSL revised its proposal and resolved the discussion item. (Tab 198k at AR31896-97.) The SSA recognized that CGSL's proposed ████████████ would ████████████████████████████████ ████████," but recognized ████████████████████████████████████ ████████████. (Tab 200 at AR34572; *see also* Tab 136 at AR21149 (defining a weakness or significant weakness as a "flaw" that "increases" or "appreciably increases risk").) After weighing the pros and cons, the Agency found HomeSafe's proposal to "████████████" and ████████████ ████████████████" more favorable. (Tab 198q at AR32220; Tab 200 at AR34572.) These determinations did not require further discussions. The Court should deny these grounds.

### E.    ARC's Price Evaluation Challenge Lacks Merit. [ARC § VI.B]

The Agency conducted a thorough price evaluation documented across roughly 3,000 pages. (Tabs 66-66g, 199-199v.) Consistent with the RFP, the Agency conducted fulsome price reasonableness and unbalanced pricing and risk assessments following every proposal submission, leading the Agency to rationally conclude that ARC, CGSL, and HomeSafe submitted fair and reasonable prices and that ████████████████████████. (Tabs 66, 199.) Yet, ARC challenges the Agency's price analysis because the Agency purportedly (1) calculated price reasonableness and unbalanced pricing benchmarks without adequate price competition; and (2) included technically unacceptable proposals in price benchmark calculations. (Dkt. 61-1 at 17.) ARC's arguments are untimely, meritless, and without prejudice to ARC.

### 1.    ARC Waived Its Challenge to the Agency's Price Methodology.

A challenge to the evaluation methodology applied during corrective action is untimely where "[t]he evaluation methodology has remained unchanged." *MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525, 534 (2016). In *QTC Medical Services, Inc. v. United States*, this Court

found that the protester waived its challenge to the "methodology for determining the benchmarks to evaluate price" because the "plaintiffs were aware that the [agency] would consider the prices proposed by all offerors to determine the benchmarks for price reasonableness long before plaintiff submitted their final proposal revisions" but did not challenge the methodology by pre-award protest. 132 Fed. Cl. 610, 621 (2017). The protesters disputed waiver because the protesters "did not know that other offerors would submit high and non-competitive price proposals until after award of the subject contracts." *Id.* The Court disagreed because the "plaintiffs knew that the [agency]'s methodology for determining the price benchmarks could potentially skew the median for the benchmarks, if very high, or very low, prices were proposed." *Id.*

The Court should reach the same conclusion here. ARC knew from the price analysis produced during HomeSafe's protest challenging the initial award to ARC that the Agency included prices from all ▮▮▮ offerors in its initial price analysis and did not recalculate those benchmarks after establishing the competitive range. (Tab 268.435 at AR50508 ("The price analysis relied on the competitive prices received from ▮▮▮ offerors in response to the solicitation."), AR50514, AR50524, AR50532, AR50541, AR50550, AR50558 (showing price reasonableness threshold of ▮▮▮▮▮▮ remained static).) The time to challenge that methodology was before the proposal submission deadline during corrective action.

ARC also knew or should have known that the Agency included pricing from technically unacceptable proposals in the benchmark calculations and that, under ARC's theory, the Agency lacked adequate price competition because it did not have at least two technically acceptable proposals. ARC knew the Agency included only ▮▮▮ offerors (ARC, HomeSafe, CGSL, and ▮▮▮ ▮▮▮) in the competitive range and evaluated ARC, HomeSafe, and CGSL's initial proposals as technically unacceptable. (Tab 107a at AR18923; Tab 124a at AR19672.) ARC also knew or

should have known that the ▓▓ offerors excluded from the competitive range were also technically unacceptable. The competitive range includes "the most highly rated proposals." FAR 15.306(c)(1). Thus, if any of the ▓▓ offerors excluded from the competitive range submitted technically acceptable proposals, they would have been among the most highly rated offerors and included in the competitive range. By process of elimination, only ▓▓▓▓▓▓▓ could have submitted a technically acceptable proposal (which in fact it did not). ARC therefore knew the Agency included prices from technically unacceptable proposals (including ARC's own proposal) in the price analysis benchmarks and lacked at least two technically acceptable proposals. ARC never challenged this methodology during corrective action and, therefore, waived this ground.

### 2.    ARC Premises Its Price Argument on a Misreading of the FAR.

The Agency compared submitted prices to determine the price reasonableness benchmarks employed in the GHC competition. (Tab 199 at AR32395-96.) ARC's price challenge rests on the assertion that FAR 15.404-1 states that comparison of proposed prices to determine price reasonableness "is sufficient on its own _only_ when the Government obtains 'adequate price competition.'" (Dkt. 61-1 at 16-17; _see also id._ at 1.) This characterization of the FAR is false.

FAR 15.404-1(b) states "[t]he Government may use various price analysis techniques" and then lists "examples" of acceptable techniques. The first example is:

> Comparison of proposed prices received in response to the solicitation. _Normally,_ adequate price competition establishes a fair and reasonable price (see 15.403-1(c)(1)).

FAR 15.404-1(b)(2)(i).[21]    This is the provision upon which ARC bases its argument, yet ARC, unsurprisingly, never quotes this language in full. ARC's entire price challenge rests on its re-

---

[21] FAR 15.403-1(c)(1) defines "adequate price competition" for purposes of requiring certified cost or pricing data.

interpretation of "normally" to mean "mandatorily, and every time," but the FAR does not say this.

Here, the Agency evaluated the pricing for this commercial item contract by comparing prices of commercial item suppliers bidding on established volume estimates. Commercial item procurements are exempt from cost and pricing data submission requirements under their own exception. FAR 15.403-1(c)(3). Prices in commercial item procurements are credible because they reflect the commercial marketplace, *i.e.* they can reasonably be used without the Part 15 rules surrounding "adequate price competition" for developmental or non-commercial items.

The Agency rationally found HomeSafe, CGSL, and ARC to have submitted reasonable prices based on a detailed comparison of those prices, per FAR 15.404-1(b)(2)(i). All offerors' TEPs reflect the commercial market because they are based on prices from commercial vendors that compete daily in the household goods moving marketplace. ARC seeks to turn this system for assessing the reasonableness of pricing in commercial item procurements on its head by forcing "adequate price competition" and premature technical evaluations into circumstances designed to streamline procurements, not complicate them. The Court should deny this ground.

### 3.    The Alleged Price Evaluation Error Did Not Prejudice ARC.

The protester must prove prejudice. *Sys. Studies & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). ARC claims it ████████████████ and that HomeSafe and CGSL were unawardable because recalculation of the price benchmarks would make their non-TEP prices unreasonably high and their prices unbalanced. Each argument is meritless.

### a.    ARC's Prejudice Claims Are Speculative.

The Agency conducted a pre-competitive range price analysis and narrowed the competitive field by excluding ██████ and ███████ because their "proposals suffer[ed] from not

fair and reasonable pricing." (Tab 20 at AR3574.)[22] If the Agency had not used the price analysis ARC now deems improper, the competitive field would have been larger and pushed the reasonableness threshold even higher. That is because ████'s and ██████'s prices were higher than ARC's. Any insinuation that ████ and ██████ would have materially █████████ during discussions and driven the reasonableness threshold down is total speculation.

### b.    ARC Admitted It ██████████████████████████.

ARC and HomeSafe were evaluated as equal under the non-price factors. (Tab 201 at AR34655.) Thus, to show prejudice, ARC must prove that it would have ████████████ ████████████ HomeSafe's price. *See, e.g., Allied Materials & Equip. Co., Inc. v. United States,* 81 Fed. Cl. 448, 462 (2008) (no prejudice where offerors were technically equal and protester failed to show how it would reduce its price to place it in line for award). The Agency informed ARC <u>five times</u> during this procurement that its TEP was "high." (Tab 54d3 at AR13009; Tab 34a at AR7857; Tab 54d8 at AR13020; Tab 54d10 at AR13023; Tab 57 at AR13293.) To show prejudice, ARC must show that with a sixth notice that its price was high ARC would have ██████████████████████—$██████████████████████████ ██████████. ARC stated it ████████████. (Tab 214 at AR35367 ████████████████ ████████████████████████████████████████████████)

### c.    Unreasonably High Non-TEP Prices Would Not Render the HomeSafe or CGSL Proposals Unacceptable.

ARC argues that a proper price analysis would have resulted in the Agency finding the HomeSafe and CGSL non-TEP prices unreasonably high and, in turn, declaring the HomeSafe and CGSL proposals unawardable. (Dkt. 61-1 at 20.) This is inconsistent with the RFP, which states

---

[22] The Agency excluded a ████ offeror from the competitive range because its price was unreasonably high and its technical proposal was so flawed that it could not be corrected. (*Id.*)

████████████████████████████████████████████████████
████████████████████████████████████████████

that only "the TEP must be determined fair and reasonable" for an offeror "to be considered for award." (Tab 7 at AR138.) Notably, ARC took the opposite position when defending its initial award at GAO. (Tab 129 at AR20805 ("[t]he Solicitation only required that offerors' *TEPs* be fair and reasonable to be eligible for award"); Tab 124b at AR19798 (Agency confirming same).) ARC waived any right to challenge this methodology because ARC did not timely challenge it.

d.    The Unbalanced Pricing Analysis Did Not Prejudice ARC.

Relative to unbalanced pricing, ARC first claims that, with proper benchmarks, "the Agency would have found that several aspects of HomeSafe's and CGSL's pricing presented greater balanced risk," which would have left "the proposals unacceptable." (Dkt. 61-1 at 20-21.) Not so. FAR 15.404-1(g) is permissive—not mandatory. FAR 15.404-1(g) ("Any bid may be rejected if the prices for any line items or subline items are materially unbalanced."). A proposal in an IDIQ procurement cannot be materially unbalanced if the Agency's estimated quantities are accurate. *Southgulf, Inc. v. United States*, 30 Fed. App'x 977, 978 (Fed. Cir. 2002) ("[The protester] was required to demonstrate that the bid contained inaccurate estimates.").

ARC has not challenged the Agency's quantity estimates and, therefore, cannot show HomeSafe's pricing would be materially unbalanced. (Tab 7b2 at "Domestic Linehaul Data," "Domestic Price Calculation," and "Int'l Price Calculation" Worksheets (providing estimates).) Further, the Agency ███████████████████████████████████████████ ███████████████████████████████████████." (Tab 199 at AR32453-56.) ARC has not challenged this conclusion.

Second, ARC's brief ignores that the Agency also found ███████████████. (*See, e.g., id.* at AR32452.) ARC still further ignores that its own calculations render its pricing ███████████ under the Agency's unbalanced pricing methodology as shown by the different color

bands across subcategory pricing. (Dkt. 61-2 at 69.)[23]  ARC's argument is nothing more than an artifact of litigation convenience and should be dismissed for lack of prejudice.

**F.    The Agency's Best Value Determination Reflects A Reasonable Exercise Of Agency Discretion. [ARC § VI.E and CGSL § F]**

Both protesters take issue with the Agency's best value trade-off, variously arguing that the Agency had to accept the cheapest proposal or to pay the premium associated with a highest rated proposal.  CGSL claims that because the Agency found the technical advantages of the HomeSafe proposal to outweigh the price advantage held by CGSL, this must mean the Agency violated the RFP's equal weighting scheme. (Dkt. 62 at 34-35.)  But the essence of a best value tradeoff is the Agency's discretion to consider the value of the advantages offered under each factor.  The equal weight given the factors here meant that the Agency had to determine whether the HomeSafe advantages merited the extra money.  CGSL's disagreement is irrelevant.  *Tech. Innovation Alliance, LLC v. United States*, 149 Fed. Cl. 105, 160 (2020) (agency has "discretion to determine how much of a price premium it was willing to pay" based on "perceived benefits").

CGSL also attacks the SSA for not grappling with an irrelevant fact, that "▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Dkt. 62 at 35 (emphasis in original).)[24]  The best value is not determined by counting strengths or rotely comparing

---

[23] ARC's own pricing would be ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[24] CGSL does not mention the fact that it received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ratings under the Technical subfactors, while HomeSafe received ▮▮▮. CGSL downplays this fact by stating in its complaint that it received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ compared to HomeSafe's proposal." (Dkt. 1, Complaint ¶ 69.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

adjectival ratings. *Tech. Innovation Alliance*, 149 Fed. Cl. at 163; *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 n.6 (Fed. Cir. 2013); *Coastal Int'l Sec., Inc. v. United States*, 93 Fed. Cl. 502, 550–51 (2010).

For its part, ARC argues that the Agency failed to specifically compare and pick a winner between ARC's ▬▬▬▬▬ rating and HomeSafe's ▬▬▬▬▬ rating. (Dkt. 61-1 at 33-34.) Essentially, ARC asserts that if the Agency had compared ▬▬▬ to ▬▬▬ it would have perceived an overwhelming technical advantage. But ARC did not receive an ▬▬▬▬▬ in ▬▬▬▬. It received a ▬▬▬. The record cannot support ARC's suggestion that if the Agency had found ARC's ▬▬▬ in ▬▬▬▬ to be better in some way than HomeSafe's ▬▬▬ in ▬▬▬▬ the Agency would have suddenly found ARC the winner, worth a ▬▬▬ premium.[25] The Agency performed a reasoned best value determination.

Finally, CGSL and ARC claim the Agency's errors tainted the best-value determination. Because they failed on the merits of those claims, the Court should dismiss these challenges. *Newimar S.A. v. United States*, No. 21-cv-1897, 2022 WL 1592813 at *25 (Fed. Cl. May 12, 2022).

### G.    The Agency Reasonably Considered HomeSafe's Responsibility. [ARC § VI.F]

In its final argument, ARC claims that the Agency's review of HomeSafe's responsibility "disregarded . . . significant national security risks with HomeSafe's ownership." (Dkt. 61-1 at 2.) ARC alleges that the Agency's responsibility determination "shrugged off" a report by Exiger, a third-party contractor engaged by DoD to evaluate a prospective awardee's responsibility. (*Id.* at 37.) ARC cites cherry picked language in Exiger's report to allege that the Agency failed to

---

[25] The SSAC Report contradicts ARC's argument. The SSAC considered each advantage in each subfactor. (Tab 200 at AR34472 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

rationally evaluate "security concerns" related to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓ involving Sun Capital Partners Fund VI ("Fund VI"), an entity within Tier

One's ownership chain. (*Id.* at 35-38.)[26] Yet, ARC's assertions ignore the Contracting Officer's

express responsibility findings, and cannot be reconciled with the record before this Court.

Contracting Officers "are 'generally given wide discretion' in making responsibility

determinations and in determining the amount of information that is required to make a

responsibility determination." *Supreme Foodservice GmbH*, 112 Fed. Cl. at 415. Given this "wide

discretion," this Court will uphold an agency's responsibility determination where such decisions

are rational and supported by the record. *Bender Shipbuilding & Repair Co.*, 297 F.3d 1358, 1362

(Fed. Cir. 2002); *see Synaptek, Inc. v. United States*, 141 Fed. Cl. 443, 454 (2018).

ARC mischaracterizes the record. Exiger never raised significant concerns regarding the

Agency's award to HomeSafe. Rather, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓. (Tab 204c at AR35159.) Therefore, Exiger concluded that HomeSafe did not present

an unacceptable risk for award. (*Id.*) ARC claims—without analysis or support—that the Agency

failed to consider all of the potential foreign-based ownership issues in the Exiger report.[27] But

ARC fails to demonstrate that the Agency's responsibility determination was irrational.

The Agency considered the foreign-based issues identified in Exiger's report and

documented its review of Exiger's risk assessment. (*Id.* at AR35136-52; Tab 204d at AR35213-

---

[26] As discussed, HomeSafe is a joint venture between KBR and Tier One. (Tab 204c at AR35154.)
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
[27] Specifically, ARC asserts that the Agency's responsibility determination regarding foreign ownership, control, and influence failed to consider risk of foreign access to "▓▓▓▓▓▓
▓▓▓▓▓" and "service members' personally identifiable information." (Dkt. 61-1 at 36.) Tellingly, neither Exiger nor ARC analyze or explain how the foreign ownership interests within HomeSafe's ownership chain would have access to such information.

14.) ARC characterizes the Agency's conclusions as "shrugging off" the issues raised by Exiger (Dkt. 61-1 at 37), but the record demonstrates that the Agency meaningfully considered these issues, and arrived at a different determination about these issues than ARC would prefer. USTRANSCOM generated over 45 pages of analysis resulting from the review of over 500 pages of relevant documents and reports. (*See* Tabs 204c, 204d.)[28]

The Agency's responsibility determinations based on this material were rational and complete. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ (Tab 204c at AR35154); and ███████████████████

███████████████████████████████. (*Id.* at AR35174.) In response to these findings, the Agency determined that, even if Sun Capital Partners ███████████████████

███████████████████████████qualified as a principal, the risk identified by Exiger does not impact HomeSafe's responsibility, because there is no nexus of any possible foreign influence:



---

28 The Agency's extensive consideration of HomeSafe's responsibility also included:
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████ (*See generally* AR Tabs 202-204.)

57

████████████████████████████████████████████████████████
████████████████████████████████████████████████

(*Id.* at AR35137.)

ARC further claims the Agency unreasonably ignored the risk that "███████████████████ ██████████████████████████████████████████ . . . ." (Dkt. 61-1 at 38.) ARC misstates the contents of the Exiger report. Exiger found that ██████ ████████████████████████████████████████████████



(Tab 204c at AR35155.) ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ No foreign entity or person has the means to direct Tier One (let alone HomeSafe) to disclose GHC performance information.[29] ████████████████████████████████████████ ████████████████████████████████████████

---

[29] The idea leverage over Tier One would yield leverage over HomeSafe is a similarly empty ARC presumption. (Dkt. 61-1 at 38.) As a JV partner, KBR (one of the largest U.S. defense contractors) has ████ control over HomeSafe and no reason to jeopardize its business. Further, the JV is between KBR and Tier One. ██████████████████████████████████████ Exiger determined that HomeSafe's ownership structure limited any FOCI risk. (*Compare id.* at AR35173 *with id.* at AR35159.)

████████████████████████████████████████
██████████████████████████████████

████████████████████████████████████████████. As the Agency correctly found, the likelihood of such an occurrence is miniscule. Fund VI comprises over ███████████ ███████████████████████████████. ████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████ and neither the Exiger report or anything else in the record suggests that this is likely, or even possible. Exiger does, however, identify ███████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████ (*Id.* at AR35201.)[30]

Thus, there is no indication that these ████████████████████████████████ █████████████████████████████████████████████████████████████. ███████████ ████████████████████████████████ The Court should deny this protest.

---

[30] ██████████████████████ Exiger determined that ████████████████ of Sun Capital Partners, Inc.'s investments are █████████████████████████████████████████████████████████████████. (Tab 204c at AR35194 ("████████████████████████████████████████████████████ █████████████████████ ████████████").) Thus, the concept of ████████████ ██████████████████████████████████. The Agency reasonably concluded that the ████% of non-high-risk jurisdiction investments (████████████████ mitigate any potential foreign-based security risk. (*Id.* at AR 35148.)

████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

### H.    Neither Protester Is Entitled To An Injunction.

As shown, the protesters have not succeeded on the merits, and injunctive relief is therefore improper. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018) ("[P]roving success on the merits is a necessary element for a permanent injunction"). In turn, neither protester has identified irreparable harm and cannot show the public interest favors injunctive relief. *See Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 319-20 (2009) (the "strength or weakness of [the protestor's] merits arguments largely determines the court's view of irreparable injury"); *Chenega Healthcare Servs., LLC v. United States*, 138 Fed. Cl. 644, 657 (2018) (public interest not served where protest failed on merits).

## VI.    CONCLUSION

The Court should deny Plaintiffs' Motions for Judgment on the Administrative Record and grant the United States and HomeSafe Cross-Motions for Judgment on the Administrative Record.

Dated:   June 16, 2022

*Of Counsel:*

Stuart W. Turner
Sonia Tabriz
Amanda J. Sherwood
Thomas A. Pettit
Trevor Schmitt
Nicole Williamson
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Craig Holman_____
Craig A. Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5722
Fax:  (202) 942-5999

*Attorney of Record for HomeSafe Alliance LLC*

60