Redacted Version

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| CONNECTED GLOBAL SOLUTIONS, LLC ) | |
| ) | |
| and ) | |
| ) | |
| AMERICAN ROLL-ON ROLL-OFF ) | |
| CARRIER GROUP INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:22-cv-00292 |
| v. ) | Judge David A. Tapp |
| ) | |
| THE UNITED STATES, ) | ▆▆▆▆▆▆▆▆▆▆ |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| HOMESAFE ALLIANCE LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## DEFENDANT-INTERVENOR HOMESAFE ALLIANCE LLC'S REPLY IN SUPPORT OF CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Dated:  August 11, 2022

*Of Counsel:*

Stuart W. Turner
Sonia Tabriz
Amanda J. Sherwood
Thomas A. Pettit
Trevor Schmitt
Nicole Williamson
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Craig A. Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5722
Fax:  (202) 942-5999

*Attorney of Record for HomeSafe Alliance LLC*

# TABLE OF CONTENTS

I.   ARGUMENT ................................................................................................. 1

    A.   ARC Lacks Standing To Challenge The HomeSafe Evaluation. ........................... 1

    B.   HomeSafe's Proposal Does Not Contain A Misrepresentation. ............................ 2

        1.   ARC's Strict Liability Misrepresentation Claim Does Not Exist. .............. 2

        2.   HomeSafe's Challenged Proposal Statement is Accurate. .......................... 4

        3.   Regardless, ███████ FedRAMP Status Was Not Material to the Award ................................................................................................... 7

        4.   ARC Cannot Avoid the Lack of Prejudice by Misstating the Remedy. ................................................................................................ 9

    C.   The Agency Conducted A Reasonable And Equal Technical Evaluation. ........... 10

        1.   The Agency's Tradeoff Complied With the Stated Weighting Scheme. ............................................................................................... 10

        2.   The Prior, Flawed Technical Evaluation Is Not Relevant. ...................... 11

        3.   Protesters' Evaluation Disagreements Fail. ............................................ 11

    D.   The Agency Conducted Meaningful And Equal Discussions. ............................. 12

    E.   The Court Should Dismiss Or Deny ARC's Price Evaluation Challenge. ........... 14

        1.   ARC Waived Its Challenge to the Agency's Price Methodology. ............ 14

        2.   The Agency's Price Evaluation Methodology Was Rational. ................... 16

        3.   The Alleged Error Did Not Prejudice ARC. ........................................... 16

    F.   ARC's Responsibility Challenges Fail As A Matter Of Fact And Law. ............... 18

    G.   The Agency Conducted A Proper Best Value Analysis. ..................................... 19

    H.   Neither Offeror Merits Injunctive Or Other Relief. .......................................... 20

II.  CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Allied Tech. Grp., Inc. v. United States,*
    649 F.3d 1320 (Fed. Cir. 2011)..................................................................................3

*Bender Shipbuilding & Repair Co. v. United States,*
    297 F.3d 1358 (Fed. Cir. 2002)...........................................................................18, 19

*Blue & Gold Fleet, LP v. United States,*
    70 Fed. Cl. 487 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007)............................7, 8

*Butterbaugh v. Dep't of Justice,*
    336 F.3d 1332 (Fed. Cir. 2003)................................................................................16

*Christensen v. Harris County,*
    529 U.S. 576 (2000)..................................................................................................16

*Daumont-Colon v. Coopertiva de Ahoro y Credito de Caguas,*
    982 F.2d 20 (1st Cir. 2020).........................................................................................3

*Dell Fed. Sys., L.P. v. United States,*
    906 F.3d 982 (Fed. Cir. 2018)..................................................................................20

*DynCorp Int'l, LLC v. United States,*
    10 F.4th 1300 (Fed. Cir. 2021) ................................................................................16

*E&I Glob. Energy Servs., Inc. v. United States,*
    152 Fed. Cl. 524 (2021) .............................................................................................3

*E.W. Bliss Co. v. United States,*
    77 F.3d 445 (Fed. Cir. 1996)......................................................................................4

*ENGlobal Gov't Servs., Inc. v. United States,*
    159 Fed. Cl. 744 (2022) ...........................................................................................14

*Eskridge & Assoc. v. United States,*
    955 F.3d 1339 (Fed. Cir. 2020)..................................................................................1

*Firebark v. U.S. Dept. of Transp.,*
    555 F.3d 1009 (D.C. Cir. 2009) .................................................................................3

*FreeAlliance.com, LLC,*
    B-420000.3 et al., June 28, 2022, 2022 WL 2785919 ............................................11

*Glenn Def. Marine (Asia), PTE Ltd. v. United States,*
    720 F.3d 901 (2013)....................................................................................................2

ii

*GTA Containers, Inc. v. United States,*
103 Fed. Cl. 471 (2012) ........................................................................................................9

*Huffman Bldg. P, LLC v. United States,*
152 Fed. Cl. 476 (2021) ........................................................................................................3

*HVF West, LLC v. United States,*
846 Fed. App'x 896 (Fed. Cir. 2021) ....................................................................................1

*IAP Worldwide Servs., Inc. v. United States,*
159 Fed. Cl. 265 (2022) ........................................................................................................8

*Info. Tech. & Applications Corp. v. United States,*
316 F.3d 1312 (Fed. Cir. 2003) ...........................................................................................10

*Inserso Corp. v. United States,*
961 F.3d 1343 (Fed. Cir. 2020) ...........................................................................................15

*Mendenhall v. Barber Greene Co.,*
26 F.3d 1573 (Fed. Cir. 1994) ...............................................................................................3

*Mil-Mar Century Corps. v. United States,*
111 Fed. Cl. 508 (2013) ......................................................................................................11

*MSC Indus. Direct Co. v. United States,*
126 Fed. Cl. 525 (2016) ......................................................................................................15

*NetCentrics Corp. v. United States,*
145 Fed. Cl. 158 (2019) ........................................................................................................9

*Oracle Am., Inc. v. United States,*
975 F.3d 1279 (Fed. Cir. 2020) ...........................................................................................18

*Phoenix Mgmt., Inc. v. United States,*
107 Fed. Cl. 58 (2012), *aff'd,* 516 F.App'x 927 (Fed. Cir. 2013) ............................................8

*Plan. Rsch. Corp. v. United States,*
971 F.2d 736 (Fed. Cir. 1992) ...............................................................................................9

*QTC Med. Servs., Inc. v. United States,*
132 Fed. Cl. 610 (2017) ......................................................................................................14

*Raytheon Co. v. United States,*
809 F.3d 590 (Fed. Cir. 2015) .............................................................................................15

*Synaptek, Inc. v. United States,*
141 Fed. Cl. 443 (2018) ......................................................................................................18

iii

*Sys. Stud. & Simulation, Inc. v. United States*,
   22 F.4th 994 (Fed. Cir. 2021) .................................................................................................16

*Tech. Innovation, LLC v. United States*,
   149 Fed. Cl. 105 (2020) ...........................................................................................................20

*Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*,
   934 F.3d 607 (D.C. Cir. 2019) .................................................................................................17

*Ultra Elecs. Ocean Sys. Inc. v. United States*,
   139 Fed. Cl. 517 (2018) ...........................................................................................................11

*W. Sound Servs. Grp., LLC*,
   B-406583.2, July 3, 2013, 2013 CPD ¶ 276 ...........................................................................12

*WaveLink, Inc. v. United States*,
   154 Fed. Cl. 245 (2021) ...........................................................................................................18

**Statutes**

5 U.S.C. § 706(2) ............................................................................................................................2

28 U.S.C. § 1491(b)(4) ....................................................................................................................2

**Other Authorities**

48 C.F.R. § 15.404-1(b)(2)(i)........................................................................................................16

Fed. R. Civ. P. 54(b) ........................................................................................................................3

U.S. Court of Federal Claims Rule 54(b) ........................................................................................3

Defendant-Intervenor HomeSafe Alliance LLC ("HomeSafe") submits this Reply in Support of HomeSafe's Cross-Motion for Judgment on the Administrative Record. The United States Transportation Command ("TRANSCOM" or the "Agency") contract award to HomeSafe resulted from an exacting and exhaustive evaluation that complies with applicable legal standards. The Court thus should dismiss or deny the protests filed by Connected Global Solutions, LLC ("CGSL") and American Roll-On Roll-Off Carrier Group Inc. ("ARC").[1]

## I.    ARGUMENT

### A.    ARC Lacks Standing To Challenge The HomeSafe Evaluation.

Among the first things a protester must establish, and this Court must confirm, is standing. (Dkt. 75-1 at 7-8.) ARC—realizing that it came ▮▮▮▮▮▮▮▮▮▮▮▮▮—seeks to trivialize the issue, relegating the standing ARC must prove *first* to an *ipse dixit* half-page at the end of its brief. (Dkt. 78 at 29-30.) ARC never addresses the Federal Circuit's recent *Eskridge & Assoc. v. United States*, 955 F.3d 1339 (Fed. Cir. 2020) and *HVF West, LLC v. United States*, 846 Fed. App'x 896 (Fed. Cir. 2021) decisions. ARC's Amended Complaint allegations, brought to address ARC's standing problem, do not present a serious challenge to ▮▮▮▮▮▮▮▮▮▮▮, amounting to the same speculative and incomplete allegations of convenience rejected in *HVF West*. 846 Fed. App'x at 898-99. And ARC stated before the Government Accountability Office ("GAO") that it ▮▮▮▮▮▮▮▮▮▮▮. (Tab 214 at AR35367.) The Court should disregard ARC's submission of a declaration trying to reverse that unequivocal statement as the untimely, contrived tactic it is. And ARC's assertion that it would have a substantial chance of winning the award because HomeSafe and CGSL should have been "eliminated" (Dkt. 78 at 30) not only lacks merit, but also stretches the bounds of its requested relief, especially as to CGSL (Dkt. 68 at 16-17 (no request

---

[1] For the Court's convenience, HomeSafe has attached an index of the parties' arguments. (Att. A.)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

for CGSL's disqualification); Dkt. 61-1 at 15-16, 38-40 (same). ARC has no standing to challenge (at least) HomeSafe's evaluation as any benefit would ███████████.

## B.    HomeSafe's Proposal Does Not Contain A Misrepresentation.

With its material misrepresentation claim, ARC continues to cast aside the simple fact—agreed upon by every other party to this litigation (HomeSafe, CGSL, and the Agency) and GAO—that ████, the third-party █████████████ solution and lower tier █████████████ vendor proposed by both HomeSafe and CGSL, complies with FedRAMP High requirements. To this date, █████ (arguably the leading provider in the space) continues to make the assertion with its technical specifications on its public website. And a Department of Defense ("DoD") technical expert has affirmed that the statement does not misrepresent ██████ technical capabilities. The latest evolution of ARC's misrepresentation claim fares no better than its previous iterations.

### 1.    ARC's Strict Liability Misrepresentation Claim Does Not Exist.

Bid protests are a procurement tool crafted by Congress to ensure that the <u>procuring agency</u> has acted reasonably: "In a bid protest case, <u>the inquiry is whether the agency's action</u> was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."[2] *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (2013); 5 U.S.C. § 706(2); 28 U.S.C. § 1491(b)(4) ("the court shall review <u>the agency's decision</u>"). ARC advocates for a strict liability proposal misrepresentation standard applicable regardless of what the agency knew or should have known and irrespective of what the offeror knew or intended, with automatic elimination as the only remedy. By its approach, ARC shifts the bid protest inquiry from the actions and decisions of the agency to allegations by the protester about statements of the awardee. No deference to the agency exists in ARC's world, where every

---

[2] All emphasis to quoted material has been added unless otherwise noted.

████████████████████████████████████████████████

████████████████████████████████████████

proposal statement is tested by discovery and measured as true or false (not by the agency) but by the Court, sitting as a super-evaluator not of the agency's decision but of the protester's concoctions regarding the underlying proposal. ARC's argument also contradicts precedent that permits agencies to rely on the statements of offerors, and imposes new burdens on agencies and competitors alike to test and verify the statements of every ███████████ relied upon lest a disgruntled competitor challenge the entire procurement based upon statements from a lower-tier vendor. *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330-31 (Fed. Cir. 2011); *see Huffman Bldg. P, LLC v. United States*, 152 Fed. Cl. 476, 485-87 (2021) (applying *Allied* test).[3]

ARC also misunderstands what it casts as "the law of the case," declaring that "HomeSafe's intent is irrelevant" based on preliminary discovery orders of this Court. (Dkt. 78 at 2, 4.) ARC neglects the difference between interlocutory trial court and appellate level law of the case. ARC errantly cites a Federal Circuit appellate court law of the case decision, which rejected application of the doctrine in any event. *Mendenhall v. Barber Greene Co.*, 26 F.3d 1573, 1582-83 (Fed. Cir. 1994). But this is a trial court matter subject to Rule 54(b) (cited by HomeSafe and unaddressed by ARC) permitting revision of any order prior to final judgment. *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 532 (2021) (noting plenary Rule 54(b) authority).[4] Moreover, although the order relied on by ARC did not invite full discovery on intent, the Court recognized that it "must consider the conduct of and information available to an awardee" and that it must

---

[3] In *Allied*, the Federal Circuit stated that an agency may rely on offeror's statements in evaluating a proposal absent proposal contra-indicators, leaving non-compliance to contractual performance. 649 F.3d at 1331. ARC now demands a strict liability rule in which any proposal misstatement requires a protest sustain. ARC asserts that an agency may rely on an offeror's statement <u>only</u> if true. (Dkt. 78 at 3.) The *Allied* rule would not exist were that truism its meaning.

[4] Several appellate courts have held that law of the case does not apply to preliminary district court decisions based on FRCP 54(b). *See, e.g., Firebark v. U.S. Dept. of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (FRCP 54(b) renders law of the case inapplicable); *Daumont-Colon v. Coopertiva de Ahoro y Credito de Caguas*, 982 F.2d 20, 26-27 (1st Cir. 2020) (finding no law of the case).

evaluate evidence "to support a claim of a <u>knowing</u> misrepresentation." (Dkt. 42 at 4-5 (citing *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 702 (2022)).) And the Court permitted discovery regarding "all bases for HomeSafe's representation, position, or view" regarding ▓▓▓ FedRAMP High compliance to test whether the proposal statement regarding ▓▓ was "based on information available . . . at the time." (*Id.* at 6.) The Court's preliminary rulings granting ARC the extraordinary relief of discovery in a bid protest do not somehow restrain the Court in addressing the proper legal standards for misrepresentation when ruling on the merits.[5]

### 2.    HomeSafe's Challenged Proposal Statement is Accurate.

ARC has proffered a series of shifting accusations in an effort to prove that HomeSafe's proposal statement that "▓▓ has achieved FedRAMP High compliance" is false. But accusations are not proof. ARC has not proffered a technology expert to challenge ▓▓ public assertions that users can' configure the technology for FedRAMP High compliance or DoD's expert declaration supporting the statement. Instead, ARC apparently hopes the Court will topple this massive, multi-year procurement based on ARC's legal semantics regarding a single passing statement among thousands of procurement pages. ARC elevates dissecting the "minutiae of the procurement" to a new level. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).

ARC's falsity allegations distill into two categories, each of which fail.

<u>Compliance vs. authorization</u>: ARC alleges that ▓▓ does not comply with FedRAMP High requirements because it does not have an Authority to Operate ("ATO") at High. (Dkt. 68 at ¶ 43; Dkt. 61-1 at 10.) ARC still conflates compliance with authorization. HomeSafe stated in its proposal, and the Agency understood, that ▓▓ <u>complies</u> with FedRAMP High requirements:

---

[5] ARC demands that if intent matters, this Court must direct further discovery. The Court, however, gave ARC discovery where rarely permitted. And the basis for the proposal language is clear. ▓▓ published its capabilities and HomeSafe incorporated aspects of the publication into its proposal. (*See* Ferguson Decl., Tab 239a at ¶ 10.) No further discovery is warranted.

- Consistent with HomeSafe's proposal statement, ▓▓ materials explain that users can configure "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" to meet FedRAMP High pursuant to the listed "▓▓▓▓▓▓▓." (Tab 239a; Dkt. 47-2; *see also* Dkt. 75-1 at 12-13.)[6]

- The evaluators understood that HomeSafe's proposal spoke to "FedRAMP compliance," and did not represent that ▓▓ has a FedRAMP High ATO. (Tab 198s at AR32306.)[7]

- Per the Agency's technology expert: "While ▓▓▓ designation on GSA's FedRAMP website has not changed from Moderate to High, HomeSafe's assertion that ▓▓ has achieved FedRAMP High compliance' is nevertheless a reasonable conclusion." (Tab 268.427 at AR50454; *see also* Tab 238 at AR37378.)

- CGSL independently proposed ▓▓ and noted that ▓▓ maintains a ▓▓▓▓▓▓▓▓ ▓▓▓ (Tab 196 at AR31360.)[8]

- GAO (after considering these precise arguments) confirmed that no misrepresentation occurred. (Tab 251 at AR37535.)

<u>Past vs. future compliance</u>:  ARC also alleges (without evidence) that ▓▓▓ has not "achieved" compliance with FedRAMP High, and instead "has an ability" to achieve FedRAMP High compliance.  (Dkt. 61-1 at 10, 12; *see also* Dkt. 78 at 6-7.)  ▓▓▓, however, provides instructions for users to configure ▓▓▓ product to comply with FedRAMP High and the Agency has confirmed that HomeSafe reasonably asserted that ▓▓▓has achieved FedRAMP High compliance based on DoD's knowledge of the product.  Significantly:

- ARC does not dispute that ▓▓ holds a DoD Impact Level 4 authorization.

- The Agency's technology expert confirmed that "[b]y holding DoD IL4 PA status, ▓▓▓ *exceeds* FedRAMP Moderate security requirements and fundamentally meets the FedRAMP High requirements which are less stringent than the DoD-specific security

---

[6] ARC (realizing that it lacks evidence to counter the technology supplier's statements regarding the capabilities of its product) declares that this runs only to intent.  (Dkt. 78 at 7.)  Although the ▓▓▓ website does establish that neither HomeSafe nor CGSL had any intent to mislead, the website (more importantly) stands as uncontradicted record evidence regarding the ability to configure ▓▓▓ to comply with FedRAMP High.

[7] ARC suggests that the evaluation reflects parroting of the HomeSafe proposal, nothing more. (Dkt. 78 at 7.)  ARC has no basis for its assertion that the evaluators did not mean or understand what they said.  And the language makes clear that the evaluators did not attribute a FedRAMP High ATO to ▓▓ or HomeSafe as ARC necessarily believes.

[8] CGSL's proposal contradicts ARC's claim that CGSL's proposal ▓▓▓▓▓▓▓▓ and that ▓▓▓▓▓ is thus derived from ▓▓▓▓▓ ▓▓▓ (*Compare* Dkt. 78 at 8-9 *with* Tab 196a at AR31360.)

5

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

requirements." (Tab 268.427 at AR50454; Dkt. 74 at 34-35 (explaining how DoD Impact Level 4 informs FedRAMP High compliance).)[9]

- ▓▓ materials explain that "▓▓▓▓▓▓▓▓▓▓▓," ▓▓ can also meet FedRAMP High requirements. (Tab 239a at AR37424.)

ARC's latest attempt to recast its theories also lack merit. First, ARC's contention that HomeSafe misrepresented a "past achievement" by ▓▓ rather than ▓▓ ability to comply with FedRAMP High security requirements misreads HomeSafe's actual statement and misunderstands how FedRAMP compliance works. (Dkt. 78 at 7.) HomeSafe drew on materials from ▓▓ website and accurately represented ▓▓ compliance offering, which users can configure to comply with FedRAMP High requirements. (Tab 239a at AR37422.) Whether ▓▓ obtains a FedRAMP High ATO (noted as "in process" per the FedRAMP website) does not negate that ▓▓ provides a solution that users can configure to meet FedRAMP High requirements. ARC has not meaningfully challenged the Agency expert, GAO, CGSL, or ▓▓ on this basic point.

Second, ARC argues that "[i]f HomeSafe was representing something short of actual FedRAMP High authorization, then it would not have also referenced an ATO that it could allegedly 'take advantage of.'" (Dkt. 78 at 7.) Again, ▓▓ website contains a near identical statement disproving ARC's assertion. ▓▓ holds a FedRAMP Moderate ATO and DoD IL4 authorization. ▓▓ website affirms that users can take advantage of ▓▓ ATO and configure the technology to comply with FedRAMP High:



_____

[9] ARC once again disputes the Agency's articulation of both FedRAMP and the DoD Impact Levels. ARC takes a similar tack with HomeSafe's citations to a FedRAMP document that ARC attempted to submit into the record. (Dkt. 78 at 6 n.3.) But ARC's misreading of these materials does not govern this protest. It is the Agency's expertise and judgment that is afforded discretion. And the Agency has articulated that ▓▓ has authorization under DoD Impact Level 4 and fundamentally complies with FedRAMP High.

█████████████████████████████

(Dkt. 47-2 at 14-16 (████████████████████████████).) FedRAMP High requirements build on FedRAMP Moderate requirements, allowing users to leverage ████ Moderate ATO and enable added controls to achieve FedRAMP High compliance. DoD's expert confirmed the accuracy of ████ statement and ARC has offered nothing to prove the contrary.

Third, ARC asserts that "if the term 'compliance' means something different than authorization, it means more, not less." (Dkt. 78 at 7.) This argument is illogical. Compliance means that a system can meet the requirements. https://www.merriam-webster.com/dictionary/compliance. Authorization means that the system can meet requirements as recognized by a formal designation, from a proper authority. https://www.merriam-webster.com/dictionary/authorizing. A company can comply without authorization, but no authorization can exist without compliance.

ARC has not established that HomeSafe's statement that "████ has achieved FedRAMP High compliance" is false. HomeSafe's proposal (Tab 178b at AR28160), ████████ declaration (Tab 239a at AR37422), the discovery (Dkt. 47-2), ████ materials (*see id.*), CGSL's proposal (Tab 196a at AR31360), and the Agency's Program IT Integration Branch Chief (Tab 268.427 at AR50454) all support the accuracy of the ████ and HomeSafe statements, and both the Agency (Tab 238 at AR37377; Dkt. 74) and GAO (Tab 251 at AR37535) have confirmed HomeSafe made no false statement. The Court should deny ARC's baseless assertion.

>        3.      **Regardless, ████ FedRAMP Status Was Not Material to the Award.**

For this Court to find a misrepresentation, ARC must prove that "the [Agency] relied on that false statement in selecting [the awardee's] proposal for the contract award." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007). ████ FedRAMP status did not underpin the Agency's award decision.

████████████████████████████████████████████

███████████████████████████████████

First, the Agency did not mandate FedRAMP compliance or authorization and does not use FedRAMP.[10] (*See* Dkt. 75-1 at 16-17.) ARC contends that because "the Agency incorporated the winning offeror's ████████████████ under the awarded contract. . . . HomeSafe's misrepresentation is essential to it meeting what has become a contract requirement." (Dkt. 78 at 10 (emphasis in original).) But, with this argument, ARC walks straight into the point that HomeSafe has made from the start—whether HomeSafe complies with the statements in its proposal is a matter of contract administration relevant to HomeSafe's future performance, not a basis for protest. *IAP Worldwide Servs., Inc. v. United States*, 159 Fed. Cl. 265, 295-96 (2022).

Second, the Agency's consideration of ██████ compliance with FedRAMP did not materially impact the Agency's Subfactor 4 rating, let alone the award. (Tab 198s at AR32306; Tab 200 at AR34425-27; Tab 268.427 at AR50454-55 (████████████████████████████████ ████████████).) Contrary to ARC's argument (Dkt. 78 at 9), materiality turns on the award decision. *Blue & Gold Fleet*, 70 Fed. Cl. at 495. Even as related to Subfactor 4, the Agency's favorable evaluation of HomeSafe's proposal resulted from ████████████████████████ and HomeSafe's ████████████████, which ████████████████████████████ ████████████████████ (Tab 198s at AR32306-07.) By contrast, ARC received ████████ ████████████ and provided ████████████████████████████ (Tab 200 at AR34424.) The purported misrepresentation did not impact the award. (*Id.* at AR34112; Tab 201 at AR34656-70; Tab 206a1 at AR35242.)

---

[10] On this point, ARC argues that HomeSafe improperly limits misrepresentations to "criteria an agency evaluates pass-fail, rather than qualitatively." (Dkt. 78 at 9.) That is not what HomeSafe said. The misstatement must relate to a specific solicitation requirement. *See, e.g., Phoenix Mgmt., Inc. v. United States*, 107 Fed. Cl. 58, 70 (2012), *aff'd*, 516 F.App'x 927 (Fed. Cir. 2013).

4.    ARC Cannot Avoid the Lack of Prejudice by Misstating the Remedy.

Realizing the lack of prejudice, ARC intertwines its arguments regarding prejudice and remedy. ARC errantly declares elimination as the default remedy for misrepresentation. (Dkt. 78 at 10.) On this basis, ARC demands HomeSafe's exclusion from the competition, glosses over CGSL's treatment, and declares itself the awardee. But prejudice does not ask what may happen in a reopened competition, it asks what would have happened had the supposed error not occurred.

ARC's characterization of *NetCentrics* as establishing the default consequence of any misrepresentation is wrong. The case actually supports agency discretion to address such a misstatement as the agency sees fit. *NetCentrics Corp. v. United States*, 145 Fed. Cl. 158, 174 (2019) (agency reasonably explained its "exercise of discretion"). ARC's continued citation to *Plan. Rsch. Corp. v. United States*, 971 F.2d 736, 741 (Fed. Cir. 1992) as support for its termination argument is vexing for several reasons. Neither the decision nor the page cited invoke termination as the required remedy for misrepresentation. Moreover, the Court makes clear that its partial affirmance rested on the board's findings regarding the awardee's "intent" to mislead (the very thing ARC has disavowed a need to prove) and the agency's extensive involvement in the misconduct. *GTA Containers, Inc. v. United States*, likewise makes no statement regarding the required or ordinary consequence of termination. 103 Fed. Cl. 471, 483 (2012).[11]

Indeed, in the first round of this procurement, ARC misrepresented its foreign corporate ownership and their extensive criminal antitrust history. (*See* Tab 133 at AR20996, AR21000 (recounting history of procurement, including ARC's failure to identify its actual owner and related criminal history issues, noting that during corrective action "ARC explained [following protest

---

[11] Regarding *Planning Research Corp.* and *GTA*, ARC's citations refer to quotes of a 1978 GAO decision. (Dkt. 75-1 at 23 n.13.) Disqualification is not a default outcome at GAO. (*See* Tab 239 at AR37405-18 (internal citation omitted; citing numerous recent GAO decisions on this point).)

allegations] that its SAM registration had <u>erroneously identified</u> WWLAS as its parent company," and going on to find ARC's procurement statement to the contracting officer that its criminally convicted affiliates would have no involvement "<u>at odds with ARC's proposal</u>").) If ARC's strict liability misrepresentation and disqualification rule were the law, the Agency would have had to disqualify ARC long ago.

ARC must show that it had a "substantial chance" to receive the award but for the *alleged* misrepresentation. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Here, the alleged misrepresentation runs to ██████████████████████████ ██████████████████████████████████████████ ). (*See supra* Section I.B.3.) The Agency's comparative assessment was informed by numerous additional considerations. (Tab 200 at AR34424-27.) And the Agency has stated that the issue did not impact the award decision. (Tab 268.427 at AR50455; Tab 231 at AR37118 ("[E]ven if HomeSafe's statement that ████ [has] achieved FedRAMP High compliance' is not found to be accurate, the statement is not material and ARC suffered no damage.").) ARC does not make a contrary showing, but instead errantly presses mandatory disqualification as a prejudice talisman.

**C.    The Agency Conducted A Reasonable And Equal Technical Evaluation.**

The ARC and CGSL continued efforts to upend the Agency's technical evaluation fail.

**1.    The Agency's Tradeoff Complied With the Stated Weighting Scheme.**

CGSL contends that the Agency erred by not giving CGSL's advantages in ██████████ and █ due weight. (Dkt. 62 at 6-12.) CGSL's latest brief pivots from errantly demanding a mathematical, mechanistic evaluation scheme to nitpicking the SSA's tradeoff language. (Dkt. 77 at 1.) CGSL uses fragments of the 20-page SSDD to argue that the Agency over-credited HomeSafe's advantage under ████████ "due to the nature of the *requirements themselves*, rather

10

than *what the offerors proposed*." (*Id.* at 3 (emphasis in original).)   The SSA methodically

evaluated each of the four technical subfactors and found, on balance, HomeSafe's proposal

superior. (Tab 201 at AR34656-71.) The summary need not restate every evaluation finding. *See*

*Mil-Mar Century Corps. v. United States*, 111 Fed. Cl. 508, 559-60 (2013) (denying protest).

### 2.    The Prior, Flawed Technical Evaluation Is Not Relevant.

Next, CGSL uses the wrong standard to argue that the Agency had to explain why technical

evaluation findings differed after corrective action.   CGSL cites to district court cases reviewing

rulemakings and adjudications (Dkt. 77 at 4-8), but fails to identify any bid protest decision

applying this standard. *See Ultra Elecs. Ocean Sys. Inc. v. United States*, 139 Fed. Cl. 517, 531

(2018) (denying similar protest argument).   This Court reviews the evaluation and award decision

post-corrective action; superseded evaluations and decisions have no relevance. *Id.* at 531.[12]

### 3.    Protesters' Evaluation Disagreements Fail.

The remainder of ARC and CGSL's briefing attacking the Agency's technical evaluation

recycles arguments that the Agency and HomeSafe already have addressed. CGSL restates its same

five examples of alleged disparate treatment and incorrectly asserts that two aspects of HomeSafe's

Subfactor 2 proposal were flawed, all of which HomeSafe has rebutted. (*Compare* Dkt. 77 at 15-

23 *with* Dkt. 75-1 at 29-35.)   CGSL parses the voluminous evaluation record seeking alleged

inconsistencies reflective of unequal treatment, but ultimately finds only different proposals. (Dkt.

77 at 15-19.)   Likewise, CGSL seeks supposed errors in the evaluation of HomeSafe's proposal

but, in the process, demonstrates CGSL's own misunderstanding of the technology at issue. (*Id.*

at 19-23).   CGSL's strained implied-in-fact theory, which it premised on the same flawed

arguments, fails for the same reasons. (*Id.* at 24.)   ARC also restates its same objections to the

---

[12] GAO applies the same rule. *See FreeAlliance.com, LLC*, B-420000.3 et al., June 28, 2022, 2022
WL 2785919 (no need to "explain why the evaluation changed").

Agency's technical evaluation, raising two alleged errors in HomeSafe's Subfactor 1 proposal (Dkt. 78 at 17-19), demanding ███████ the Agency did not think ARC deserved under ███████ for its ███████ (*id.* at 19-20), and challenging three aspects of the Subfactor 4 evaluation (*id.* at 21-22). HomeSafe extensively rebutted these allegations, which have not changed, in its prior briefing. (*See* Dkt. 75-1 at 35-41.) The protesters both refuse to engage with the facts or the parties' counterarguments, largely restating the same points from the initial briefing.[13] Moreover, neither CGSL nor ARC can demonstrate that the miniscule changes in the technical evaluation for which they lobby would have altered the award in the face of the Agency's determination that HomeSafe's "superior technical capability ███████ outweighs the minimal cost difference" with CGSL, and that ARC's "price premium" was "disproportionate" to any benefits it offered. (Tab 201 at AR34673, 34655.) The Court should deny the technical evaluation challenges.

### D.    The Agency Conducted Meaningful And Equal Discussions.

The Court also should deny the protesters' discussions challenges. For its part, ARC continues to push its claim that the Agency failed to alert ARC to "concerns" regarding its ███████ proposal. (Dkt. 78 at 23.) ARC claims that because ████████████ ███████████████████, the Agency had to disclose the features to ARC and permit ARC to revisit its approach. One offeror will always be "deemed inferior" to another in an agency's evaluation. That fact does not necessitate discussions. (Dkt. 75-2 at 42-48.)

ARC strains to support its argument, citing a GAO decision for the proposition that the Agency had to reopen discussions to alert ARC to the Agency's "concerns." Yet in the cited decision, the concerns involved significant weaknesses. *See W. Sound Servs. Grp., LLC*, B-

---

[13] For example, ARC continues to insist that the Agency misled it into offering more than was needed regarding ███████ (Dkt. 78 at 22), but ignores the Agency's proof that ARC's own proposal shows ARC knew of the PWS requirement (Dkt. 74 at 52).

406583.2, July 3, 2013, 2013 CPD ¶ 276. ARC concedes that the supposed concerns here did not constitute weaknesses, let alone significant weaknesses or deficiencies. (Dkt. 61-1 at 29-30.) Regardless, the record confirms that the Agency discussed with ARC the issues it raises. (*See* Dkt. 75-1 at 43.)

ARC's demand that the Agency alert ARC about every ████████ rating contravenes procurement law. (Dkt. 78 at 24; *see also* Dkt. 75-1 at 45-47.) ARC, not the Agency, had to write a compelling proposal. Similarly, ARC offers no substantive rebuttal to support its claim that the Agency treated CGSL better in discussions, instead accusing the Agency of a "hidden agenda." (Dkt. 78 at 24.) Leaving aside the presumption of good faith, the Agency warned CGSL more frequently about ████████████████████ because CGSL did that more frequently. Regardless, the alleged conduct regarding CGSL could not prejudice ARC relative to HomeSafe.

CGSL has alleged that the Agency misled CGSL into believing it had resolved two significant weaknesses in its Subfactor 2 proposal. Not so. The Agency engaged in discussions with CGSL regarding these features of its proposal, CGSL resolved the significant weaknesses, and CGSL is simply disappointed that HomeSafe offered a more advantageous approach. (Dkt. 75-1 at 43-44.) CGSL's color-coded chart is misleading and misses the point. (Dkt. 77 at 10-11.) The record confirms that regarding ██████████████████, the SSA found that CGSL improved its proposal, but HomeSafe still submitted a better proposal. (*See* Tab 200 at AR34650.)[14]

Regarding ██████████████████, the record shows that the Agency told CGSL that ██████████████████, CGSL rejected this view, declined to change, and instead submitted

---

[14] Using ellipses, CGSL omits from its chart final evaluation language showing that the Agency considered how CGSL addressed the discussion items. (*Compare* Dkt. 77 at 10 ("████████████████████████ ██████████████████████████████████████████") *with* Tab 200 at AR34650 (showing that the Agency went on to ████████████████████████████████████████).)

13

██████████████████████████████████████████████████
████████████████████████████████████████████

arguments in favor of its original approach. (*See* Tab 154a2 at AR23027-28; Tab 156a at AR23428.) The Agency's evaluation of CGSL nevertheless fully considered CGSL's discussion response, identified CGSL's advantages and disadvantages, and found that CGSL satisfied the requirement. (*See* Tab 201 at AR34662.) Neither of these circumstances trigger discussion obligations. *See ENGlobal Gov't Servs., Inc. v. United States*, 159 Fed. Cl. 744, 782 (2022).

CGSL errantly declares that the Agency failed to alert CGSL to two additional supposed "weaknesses." The Agency's conclusion (following a comparative assessment) that CGSL's ████████████████████████████████████████████ does not render that feature of CGSL's proposal a significant weakness necessitating discussions. (Tab 77 at 13-14.) CGSL's assertion that the Agency "elect[ed] to raise and resolve *every* weakness with HomeSafe before concluding discussions" results from a false equivalence (Dkt. 77 at 14 (emphasis in original)), as CGSL compares any unfavorable statement in its evaluation (even if not a weakness) with ██████████████████████████████████████████████████████ ███████████████. The Agency treated the offerors equally. (*See* Dkt. 75-1 at 29-31.)

### E.    The Court Should Dismiss Or Deny ARC's Price Evaluation Challenge.

In their prior briefs, HomeSafe and the Agency established that the Agency conducted a proper price evaluation. (Dkt. 75-1 at 48-54; Dkt. 74 at 39-44.) Even CGSL acknowledges that the Agency's price evaluation was rational. (Dkt. 77 at 25-26.) ARC's latest claims similarly fail.

### 1.    ARC Waived Its Challenge to the Agency's Price Methodology.

ARC knew the basis for its price evaluation challenge—i.e., that the Agency calculated price evaluation benchmarks using proposed prices from unacceptable proposals—from agency reports produced during the earlier GAO protests. (Dkt. 75-1 at 48-49.) Yet ARC waited until it lost the corrective action award to complain about this disclosed evaluation methodology. This

renders ARC's protest untimely. *QTC Med. Servs., Inc. v. United States*, 132 Fed. Cl. 610, 621 (2017); *MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525, 534 (2016).

First, ARC attempts to save its argument by claiming that this Court's waiver rule only applies to evaluation methodologies stated in the Solicitation. (Dkt. 78 at 16.) But the dispositive question, per precedent, is whether ARC knew the methodology or issue prior to proposal submission. *Inserso Corp. v. United States*, 961 F.3d 1343 (Fed. Cir. 2020) (applying waiver rule based on information external to the solicitation). ARC indisputably did.[15] ARC next submits that HomeSafe must establish that "ARC understood how the Agency intended to conduct a *new* price analysis after GAO sustained two protests." (Dkt. 78 at 17 (emphasis in original).) Although GAO sustained the protests, GAO affirmed (considering ARC's supportive argument) the Agency's price reasonableness evaluation and methodology. (Tab 133 at AR21004, 21016-17.) Stated otherwise, ARC successfully <u>defended</u> both the Agency's methodology and ARC's then higher price as reasonable. (Tab 129 at AR20836 (ARC stating: ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ ) That it now suits ARC to declare the same methodology improper, and its lower price unreasonably high, does not make the argument timely or proper.

Finally, ARC asserts that "the record is not even clear how the Agency evaluated pricing in its first evaluation because the Agency also asserted that it relied on 'market research' and an internal 'Government ROM'—different price analysis techniques that could independently establish reasonableness." (*Id.*) Again ARC took an opposite position earlier at GAO, stating:

---

[15] ARC cites *Raytheon Co. v. United States*, 809 F.3d 590 (Fed. Cir. 2015), but that case involved a "disparate-information violation" where the agency informed one offeror, but not the other, about certain ground rules of the procurement. *Id.* at 594-98 ("Northrop had no reason to know"). *Raytheon* indicates that a protester cannot waive a challenge about which it is unaware.

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ (Tab 129 at AR20835.) GAO agreed, stating that "the record does not show that the agency used its market research to evaluate the reasonableness of prices." (Tab 133 at AR21004.) The Court should dismiss ARC's waived price evaluation challenge.

### 2.    The Agency's Price Evaluation Methodology Was Rational.

ARC misrepresents the applicable price evaluation requirements. The FAR does not "allow[] agencies to rely on a comparison of proposed prices only when they have obtained adequate price competition." (Dkt. 78 at 11.) Rather, as an example of an acceptable technique, the FAR states: "Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price." FAR 15.404-1(b)(2)(i).[16] HomeSafe is not "responding to a strawman," as ARC alleges. (Dkt. 78 at 12.) The FAR disproves ARC's point.[17] Moreover, the Federal Circuit has rejected efforts to read the price reasonableness rules as ARC demands. *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300 (Fed. Cir. 2021) (agency had broad discretion on method "in the context of an individual procurement").

### 3.    The Alleged Error Did Not Prejudice ARC.

ARC cannot establish that the Agency's chosen price reasonableness evaluation methodology prejudiced ARC in any event. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) (confirming that prejudice is not presumed).

---

[16] ARC again refers the Court to DoD's Contracting Pricing Reference Guide ("CPRG"), but the CPRG's reference to "any offer that you would not consider for contract award" is not synonymous with "unacceptability," as is demonstrated by the fact that HomeSafe, the eventual awardee, was at one point considered "unacceptable" prior to discussions, as was ARC. (Dkt. 78 at 11-13.) The CPRG, a policy document, does not override the FAR. *See, e.g., Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1340 (Fed. Cir. 2003).
[17] HomeSafe's reference to the fact that this is a procurement for commercial services provides further confirmation that ARC's reading is incorrect: FAR 15.404-1(b)(2)(i) defines "adequate price competition" by reference to the requirement to provide certified cost or pricing data, which is inapplicable to commercial item procurements. *See id.* (citing FAR 15.403-1(c)(1)).

████████████████████████████████████████████████████
████████████████████████████████████████████

First, ARC's prejudice arguments demand that evaluating ARC favorably (i.e., concluding that ARC was reasonably priced) caused ARC prejudice and thus make little sense. (Dkt. 75-1 at 51-52.) If, as ARC now claims, ARC's price is ▓▓▓▓▓, the Agency could have excluded ARC from the competition. The Agency excluded two offerors (▓▓▓ and ▓▓▓▓) because their pricing was ▓▓▓▓. (Tab 20 at AR3574.) Finding ARC's price reasonable hardly prejudiced ARC. Moreover, ARC has not established that changing the methodology would have yielded a different result. For instance, changing the methodology could have resulted in a broader competitive pool or a price reasonableness threshold higher above ARC's price. ARC responds that HomeSafe "assumes the Agency would broaden the competitive range, offerors that have been out for two and a half years would return, and they would improve their proposals so significantly that ▓ deficiencies would disappear." (Dkt. 78 at 13.)[18] But it is ARC that asks the Court to make assumptions, HomeSafe is just demonstrating the fallacy of ARC's assumptions.

Second, ARC told GAO it ▓▓▓▓▓▓▓▓, much less ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓. (Dkt. 75-1 at 52.) ARC now claims HomeSafe is "wrong." (Dkt. 78 at 15.) But ARC's earlier protest stated that ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ (Tab 214 at AR35366-67.) The Court should disregard ARC's belated attempt to change its position through a contradicted declaration. (Dkt. 78-1.) Further, ARC's declaration comes too late. *Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*, 934 F.3d 607, 614 (D.C. Cir. 2019) (affidavits submitted with reply brief to prove standing "came too late").[19]

---

[18] Neither offeror received "▓ deficiencies," and the Agency found their deficiencies were "easily correctible." (Tab 18 at AR3543-44.)
[19] Much of the declaration (paragraphs 3-15) ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ ARC, however, has not moved to supplement the record and the Court should strike the statements on that basis as well.

Regardless, ARC's declaration fails to prove prejudice. "[T]he prejudice inquiry requires a protester to demonstrate a nexus between [the agency error] and the proposal content that the protester would have altered." *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 287 (2021). Broad generalities fail to meet this standard. *Id.* (citing *Aerosage, LLC*, B-415607, Jan. 3, 2018, 2018 CPD ¶ 11). ARC's declaration does not ██████████████████ and lacks specifics about how ARC would overcome the hurdles it detailed to GAO. ARC's declaration also misunderstands prejudice. The declaration states: ████████████████████████████████████ ████████████████████████████████ (Dkt. 78-1 at 5.) Any knowledge ██████████ has ██████ about what ARC might later do is irrelevant. *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1292 (Fed. Cir. 2020) ("subsequent events" irrelevant to prejudice inquiry).

F.    **ARC's Responsibility Challenges Fail As A Matter Of Fact And Law.**

ARC continues to erroneously insist that the Agency's responsibility determination "ignored the Exiger report." (Dkt. 78 at 25-27.) To date, ARC has failed to address the fatal flaw in its claims: the Agency's responsibility determination considered and assessed the foreign-influence concerns in Exiger's report. Indeed, the Agency's responsibility findings directly contradict ARC's responsibility assertions. (Dkt. 74 at 56-58; Dkt. 75-1 at 57-59.) Because the Agency reasonably considered the very information ARC claims went ignored, ARC's claims are meritless. *See Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002); *Synaptek, Inc. v. United States*, 141 Fed. Cl. 443, 454 (2018). ARC's latest filing again leaves these critical points unrebutted. Instead, ARC relies on several record mischaracterizations.

First, ARC claims that the Agency's argument "falls back" on the prior GAO decision. (Dkt. 78 at 25.) Not so. The Agency's argument, and the record upon which it relies, addresses each of ARC's threadbare claims. (*See* Dkt. 74 at 56-58.) GAO confirmed what the record

shows—the Agency ignored nothing, and instead extensively reviewed the Exiger report and prepared a 17-page slide-by-slide analysis of that document. (*See* Tab 204c at AR35136-52.)

Second, ARC claims that, because the Agency did not consider Sun Capital Partners a "principal" of HomeSafe, the Agency "could not simply ignore Exiger's concerns." (Dkt. 78 at 26.) Yet, the Agency did not ignore the Exiger report's discussion of Sun Capital Partners. (*See, e.g.*, Dkt. 74 at 58; Dkt. 75-1 at 57-59.) Rather, the Agency carefully considered the foreign-influence concerns presented in the Exiger report whether or not Sun Capital Partners was a HomeSafe principal. (*See* Tab 204c at AR35142 (reviewing Exiger slide 22 at AR35174).)

Third, ARC takes issue with the Agency's factual statement that this contract does not involve classified information. (Dkt. 78 at 27.) But, as noted, the Agency specifically considered Exiger's concerns. Further, ARC's citation omits that the Agency's assertion was premised on the fact that "this is not a classified contract, and . . . there is no identified risk relating to HSA's ownership." (Dkt. 74 at 58.) ARC's attempt to ignore the Agency's responsibility findings is unavailing. Finally, ARC asserts that Exiger's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is not relevant to the Agency's responsibility determination. (Dkt. 78 at 27.) To the contrary, consideration of Exiger's conclusions regarding the overall risks involved in finding HomeSafe responsible is well within the "wide-discretion" afforded to the agencies in such determinations. *Bender Shipbuilding*, 297 F.3d at 1362. The Court should deny this argument.

   **G.    The Agency Conducted A Proper Best Value Analysis.**

Neither ARC nor CGSL has established that the Agency's best value analysis was improper. ARC's latest brief recycles its prior arguments, with the exception of a new argument that ARC is a viable candidate because the Agency chose ARC's more expensive proposal in the past. (Dkt. 78 at 25.) Not only does this assertion ignore precedent negating the relevance of a

prior procurement (*see supra* Section I.C.2), ARC forgets that its prior award resulted from a flawed technical evaluation. (Tab 90 at AR17175; Tab 133 at AR20999-01.) By contrast, ARC has not advanced a credible argument that the Agency would reverse its award decision in this procurement based upon a new comparison of ARC's ███████████ with HomeSafe's ███ ███████ and massive ██████████. (Dkt. 75-1 at 55.) CGSL reiterates its insistence that the Agency could not find HomeSafe's unique technical offering worth the ███% price premium, and that CGSL should have won merely because ██████████████. (Dkt. 77 at 23-24.) The Solicitation and law say otherwise. (Dkt. 75-1 at 54-55.) The Agency made a proper best value decision. *See Tech. Innovation, LLC v. United States*, 149 Fed. Cl. 105, 160, 163 (2020).

### H.    Neither Offeror Merits Injunctive Or Other Relief.

The protesters have not succeeded on the merits and therefore are not entitled to relief. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018).

## II.    CONCLUSION

The Court should deny Plaintiffs' Motions for Judgment on the Administrative Record and grant the United States and HomeSafe Cross-Motions for Judgment on the Administrative Record.

Dated:   August 11, 2022             Respectfully submitted,

*Of Counsel:*                        ARNOLD & PORTER KAYE SCHOLER LLP

Stuart W. Turner                     /s/ Craig Holman
Sonia Tabriz                         Craig A. Holman
Amanda J. Sherwood                   Arnold & Porter Kaye Scholer LLP
Thomas A. Pettit                     601 Massachusetts Ave., N.W.
Trevor Schmitt                       Washington, D.C. 20001
Nicole Williamson                    Phone:  (202) 942-5722
Arnold & Porter Kaye Scholer LLP     Fax:  (202) 942-5999
601 Massachusetts Ave., N.W.
Washington, D.C. 20001               *Attorney of Record for HomeSafe Alliance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August 2022, I caused a true and correct copy of

the foregoing Reply to be served by electronic delivery on:

Kara M. Sacilotto
Wiley Rein LLP
2050 M Street, N.W.
Washington, D.C. 20036
E-mail: ksacilotto@wiley.law

*Counsel for American Roll-On Roll-Off Carrier Group Inc.*

James Y. Boland
Venable, LLP
8010 Towers Crescent Drive
Suite 300
Vienna, Virginia 22182
E-mail: jyboland@venable.com

*Counsel for Connected Global Solutions, LLC*

Elizabeth Anne Speck
U.S. Department of Justice - Civil Division
Post Office Box 480
Ben Franklin Station
Washington, D.C. 20044
E-mail: elizabeth.speck@usdoj.gov

*Counsel for the United States*

/s/  Craig A. Holman